**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| CLARENCE CARGO, *et al.*, | CIVIL ACTION NO. 05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

Before the Court is Defendant's Motion for Partial Summary Judgment on Plaintiff Abon Ball's Title VII claims (Record Document 184). The motion is grounded in a claim that Ball failed to exhaust his administrative remedies with respect to his Title VII claims because the charge of discrimination he filed did not include the allegations of hostile work environment, failure to train, or retaliation that he claimed in this suit. See id. Plaintiff Ball states in response that he has exhausted his administrative remedies because his claims of hostile work environment, failure to train, and retaliation are like or reasonably related to the Charge of Discrimination and other documents he filed with the EEOC. Record Document 228. For the reasons that follow, Defendant's Motion for Partial Summary Judgment is **GRANTED in part** and **DENIED in part. Ball's Title VII claims of failure to train and retaliation** are **DISMISSED**, and his Title VII claims of discriminatory termination and hostile work environment survive.

**I. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

## II. ANALYSIS

### A. Scope of the Exhaustion Requirement

Employment discrimination plaintiffs must exhaust administrative remedies before they may pursue claims in federal court. Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002). In order to exhaust his or her administrative remedies, a plaintiff must first file a timely charge with the EEOC, and receive a notice of right to sue. Id. A Title VII suit "may be based, not only upon the specific

complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations . . . ." Turner v. St. Luke's Episcopal Health Sys., 2008 WL 706709 at *7 (S.D. Tex. Mar. 14, 2008) (citing Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1992)).

At issue in this case is the scope of the exhaustion requirement, which "has been defined in light of two competing Title VII policies that it furthers." Pacheco v. Mineta, 448 F.3d 783, 788-89 (5th Cir. 2006). As the Fifth Circuit has explained,

> [o]n the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, a less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance . . . . [A]llowing a federal court complaint to proceed despite its loose 'fit' with the administrative charge and investigation is precluded if it would circumvent agency efforts to secure voluntary compliance before a civil action is instituted.

Id. at 789 (internal citations and quotation marks omitted). Accordingly, and keeping both considerations in mind, "this court interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. (citing

Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir. 1970)) (internal quotation marks omitted). In doing so, the Court "engage[s] in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look[s] slightly beyond its four corners, to its substance rather than its label." Id.

As an initial matter, we note that "[a] discriminatory act alleged in a lawsuit but not included in an EEOC charge is not 'like or related to' acts that are alleged in an EEOC charge simply because both are based on the same type of discrimination." Turner, 2008 WL at *8. In order for a particular "alleged discriminatory act to fall within the scope of an EEOC charge, there must be some factual relationship between the act and the acts described in the charge, beyond the fact that both involve the same employer and the same general type of discrimination." Id.

In its efforts to determine which Title VII causes of action Plaintiff has exhausted, Ball urges this Court to look not only to the substance of his administrative charge, but also to: (1) a "Supplemental Intake Questionnaire" he submitted to the EEOC before submitting his Charge of Discrimination, (2) a "Charge Questionnaire" he submitted after submitting his Charge of Discrimination, and (3) the EEOC submissions of co-Plaintiff named Eureka Demery, whom Ball identifies as a witness to his charges of discrimination.

A recent Supreme Court decision held that an EEOC "Intake Questionnaire," constituted a "charge" for the purposes of the Age Discrimination in Employment Act ("ADEA") when "it [could] be reasonably construed as a request for the agency to

take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Fed. Express Corp. v. Holowecki, — U.S. —, 128 S.Ct. 1147, 1158 (2008). Plaintiff Ball urges us to apply Holowecki in this case, despite the fact that the claims at issue in this motion were filed pursuant to Title VII rather than the ADEA. Other federal district courts have done so, most recently the D.C. District Court in Beckham v. Nat'l R.R. Passenger Corp., 590 F. Supp. 2d 82 (D.D.C. 2008). The court in Beckham noted that the Supreme Court had explicitly warned against "importing its holding into other statutory contexts, 'even if the EEOC forms and the same type of definition of charge apply in more than one type of discrimination case.'" Id. at 86 (citing Holowecki, 128 S.Ct. at 1153). However, the Beckham court, following the lead of other courts, concluded that "because of the similarities between the statutory scheme of the ADEA and Title VII concerning exhaustion of administrative remedies," Holowecki's holding concerning the interpretation of "charge" should be applied in the Title VII context. Id. (citing Grice v. Balt. County, Civ. No. 07-1701, 2008 WL4849322, at *4 n. 3 (D.Md. Nov. 5, 2008), and cases cited therein).

In Holoweicki, the Supreme Court implied that a completed Intake Questionnaire, without more, could not be reasonably construed as a request for the agency to take remedial action. See 128 S.Ct. at 1159 ("Were the Intake Questionnaire the only document before us we might agree its handwritten statements do no request action." Id.). The High Court ultimately found that the

Intake Questionnaire constituted a charge, however, because it was "supplemented with a detailed six-page affidavit" asking the agency to "[p]lease force [the defendant] to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment . . . ." Id. at 1159-60.

Only two of the documents Plaintiff Ball submitted to the EEOC and attached to his Opposition to the Motion for Summary Judgment can reasonably be construed as a request for the agency to take remedial action. See Record Document 228-3. Unquestionably, the "Charge of Discrimination" that Ball signed on November 4, 2004, which is his formal administrative complaint, and which states that "he was terminated in violation of Title VII of the Civil Rights Act of 1964," can be construed as a request for the agency to take remedial action. In addition, the EEOC Form 283 "Charge Questionnaire" that Ball signed on January 28, 2005 may also be so construed. Written at the top of the page is: "Amend Original Charge [,] i.e. Disability[,] Other: HWE." Record Document 228-3. Under the heading "PRINCIPAL PURPOSE" at the bottom of the second page, the Charge Questionnaire states that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will ... consider it to be a sufficient charge of discrimination under the relevant statute(s)." See id. It is clear that Ball sought, by filing the Charge Questionnaire, to amend the Charge of Discrimination he had previously filed with the EEOC to include the additional Title VII claim of hostile work environment and an ADA claim. Because the Charge Questionnaire

contains the only timely written statement of such allegations, and because it was filed after and in an apparent effort to amend the Charge of Discrimination, this Court will also construe it as a request for the EEOC to take remedial action. See Beckham, 590 F. Supp. 2d at 87 (holding that a completed Charge Questionnaire was sufficient to constitute a "charge" of discrimination).

This Court will not consider the other documents Ball filed in support of his Opposition. The "Supplemental Intake Questionnaire" that Ball submitted to the EEOC does not include a request for remedial agency action. In addition, because it was submitted on October 9, 2004, before Ball submitted his two administrative charges, any claims it states that are not included in the administrative charges should be considered waived. Regarding Eureka Demery's EEOC submissions, Ball has not identified any authority that would permit this Court to consider those documents as a requests made by Plaintiff Ball for remedial action.

An analysis of each of Ball's Title VII with reference to statements Plaintiff submitted to the EEOC in his Charge of Discrimination and Charge Questionnaire follows.

**A. Discriminatory Termination**

Because Defendant did not move specifically to dismiss Plaintiff Ball's Title VII claim of discriminatory termination, and the parties did not brief the issue, Ball's Title VII discriminatory termination claim survives. See Third Supp. Compl., Record

Document 48, ¶ 36(d)-(e). Accordingly, to the extent Defendant's motion seeks to dismiss Ball's Title VII claim of discriminatory termination, it is **DENIED**.

**B. Hostile Work Environment**

To prevail on such a claim a Title VII hostile work environment claim based on race, a Plaintiff must show that he or she:

> (1) belongs to a protected group; (2) [ ]was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002).

Ball claims in this suit that he "experienced a racially hostile work environment throughout [his] employment, including "unlawful harassment for his entire period[] of employment." Third Supp. Compl., Record Document 48, ¶ 34. Ball further claims that he was "given hostile treatment during [his] initial training period." Id. ¶ 36(g).

The Charge of Discrimination Ball submitted indicates only that he believes he was "discriminated against because of his race and his age," in violation of Title VII, that he was terminated in July of 2004, and that he was informed by another of Defendant's employees that he had been terminated "because [he] made an unsafe move." Record Document 228-3. Handwritten at the top of Ball's Charge Questionnaire, however, is the phrase "Amend Original Charge[—] i[.]e[.,]

Disability[,] Other: HWE." Id. And in the section of that form that prompted Ball to describe any "action taken against him that [he] believe[s] to be discriminatory" and any "harm . . . caused to [him] or others in [his] work situation as a result of that action," Ball stated that "Mrs. Love, Lewis, Duvay, and Walbeck (all white) constantly harassed me: Hostile Environment." Id. When prompted to explain why he "believe[d] this action was taken against him," Ball wrote that "Before [his] dismissal, Clark McClure (white engineer) told me '"they are going to get you. Bryan Boaz[, who is claimed to be a KCS assistant trainmaster] is going to fire you.' Mr. Boaz is bigoted toward black people. I was targeted for dismissal due to black as my color . . . . Hostile Work Environment . . . ." Id.

Based on Ball's statements in the Charge Questionnaire indicating that he was harassed by four white co-workers and his clear intention to add a claim of hostile work environment to his Charge of Discrimination, this Court concludes that the hostile work environment contentions included in his federal court complaint are "like or related to the charge's allegations," See Turner, 2008 WL 706709 at *7, such that an EEOC investigation of the subject matter alleged in Ball's complaint could reasonably be expected to grow out of the allegations in the Charge Questionnaire. Accordingly, Defendant's motion to dismiss Ball's Title VII hostile work environment claim is **DENIED**.

### C. Failure to Train

To prevail on such a claim a Title VII failure to train or promote claim, a Plaintiff must show that he or she:

> 1) . . . is a member of the protected class; (2) . . . sought and was qualified for the position; (3) . . . was rejected for the position; [and that] (4) the employer continued to seek applicants with the plaintiff's qualifications.

Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 354-55 (5th Cir. 2001).

Ball claims in this suit that he "was not afforded the same type and amount of training as were his white co-workers." Third Supp. Compl., Record Document 48, ¶ 36(f).

As noted above, handwritten at the top of Ball's Charge Questionnaire is the phrase "Amend Original Charge[—] i[.]e[.,] Disability[,] Other: HWE." Id. In the section of that form that prompted Ball to describe any "action taken against him that [he] believe[s] to be discriminatory" and any "harm . . . caused to [him] or others in [his] work situation as a result of that action," in addition to the statements quoted immediately above, Ball wrote that "Bryan Boaz, KCS Asst. Trainmaster constructed my dismissal through forcing remedial training of which no one person (hourly and/or management) conducted the training." Id.

Ball's statements in the Charge Questionnaire do not in any way suggest that Defendant failed to train him. On the contrary, Ball states in that submission that

unwanted training was forced upon him. In addition, it appears that Ball mentions training in the Charge Questionnaire as a means of suggesting that he was constructively terminated. The handwritten note at the top of the page suggests that he intends to add "Disability" and "HWE," or hostile work environment claims to his charge of discriminatory termination, but makes no mention of a failure to train claim. As such, the information regarding training that Ball included in his EEOC submission is not "like or related to the charge's allegations," See Turner, 2008 WL 706709 at *7, such that an EEOC investigation of the subject matter alleged in Ball's complaint could reasonably be expected to grow out of the allegations in the Charge Questionnaire. See id. (dismissing claim where EEOC charge did not refer to any of the conduct that Plaintiff alleged in the complaint). Accordingly, Defendant's motion to dismiss Ball's Title VII hostile work environment claim is **GRANTED**.

### D. Retaliation

It appears to the Court that Ball's complaints in this suit do not include any specific claim of retaliation in violation of Title VII. See Record Documents 48, 235. Neither the Charge of Discrimination nor the Charge Questionnaire Ball submitted make any mention of retaliation. In addition, Plaintiff's Opposition Memorandum includes no specific argument or evidence submitted in support of his putative retaliation claim. Accordingly, Defendant's motion to dismiss Ball's Title VII retaliation claim is **GRANTED.**

## III. CONCLUSION

Accordingly, **IT IS ORDERED THAT** the foregoing motion (Record Document 184) be and is hereby **GRANTED in part** and **DENIED in part. Ball's Title VII claims of failure to train and retaliation** are hereby **DISMISSED**, and his Title VII claims of discriminatory termination and hostile work environment survive.

**IT IS FURTHER ORDERED THAT** Plaintiff Ball's request for sanctions is hereby **DENIED**. Nothing in the argument submitted by Plaintiffs' counsel in support of the claim for sanctions (<u>see</u> Record Document 228) leads this Court to believe that Defendant unreasonably multiplied the motion practice and proceedings in this case.

**IT IS FURTHER ORDERED THAT** each party shall bear its own costs with respect to the briefing of the instant motions.

Thus done and signed, in Shreveport, Louisiana, this the 25th day of March, 2009.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE