# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

CLARENCE CARGO, *et al.*,                    CIVIL ACTION NO.  05-2010

VERSUS                                       JUDGE S. MAURICE HICKS, JR.

KANSAS CITY SOUTHERN                         MAGISTRATE JUDGE HORNSBY
RAILWAY CO.

## MEMORANDUM RULING

Before the Court are Defendant's Motions for Summary Judgment on the claims of Plaintiff-Debtors Pamela Smith, Charles Cockerm, Derek Lamette, Geroalyn Clark, Ivory Cooper, and Gerald Williams (Record Documents 176, 170, 174, & 166). Defendant filed for summary judgment on the theories of: (1) judicial estoppel, with respect to each of the aforementioned Plaintiff-Debtors; and (2) lack of standing, with respect certain of the Plaintiff-Debtors who were or had been proceeding under Chapter 7 of the Bankruptcy Code at the time these motions were filed. Plaintiff-Debtors oppose the motions (see Record Documents 219, 220, 221, 222, 223, 224).

For the reasons which follow, Defendant's motions for summary judgment numbered 168 and 172 are **GRANTED in part**, Defendant's motions for summary judgment numbered 166, 170, and 176 are **GRANTED**, and Defendant's motion for summary judgment numbered 174 is **DENIED**. Plaintiff-Debtor Smith and Plaintiff-Debtor Cockerm's claims, which the Bankruptcy Court determined belong to Chapter 7 trustees, are **DISMISSED**. The claims brought by Plaintiff-Debtor Smith, which the Defendant settled with the Chapter 7 Trustee in bankruptcy court, are **DISMISSED with prejudice**. The claims of Plaintiff-Debtor Cockerm, which this Court understands have not yet been settled with the Chapter 7 Trustee in bankruptcy court, are **DISMISSED** for

lack of standing **without prejudice to** the ability of **a Chapter 7 trustee** to reassert the claims. Plaintiff-Debtors Clark, Cooper, and Williams' claims are **DISMISSED with prejudice**. An order consistent with this memorandum ruling shall issue contemporaneously herewith.

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

II.     LAW

    A.     Causes of Action that Must be Disclosed to the Bankruptcy Court

    Under the Bankruptcy Code, substantially all of a debtor's existing assets, "including causes of action belonging to the debtor at the commencement of the bankruptcy case, vest in the bankruptcy estate upon the filing of a bankruptcy petition." Kane v. Nat'l Union Fire Ins. Co. et al., 535 F.3d 380, 385 (5th Cir. 2008) (per curiam) (citing 11 U.S.C. § 541(a)(1)); State Farm Life Ins. Co. v. Swiftt (In re Swift), 129 F.3d 792, 795 (5th Cir. 1997); 5 COLLIER ON BANKRUPTCY § 541.08). A Chapter 7 estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Kane, 535 F.3d at 385. In Chapter 13 cases, the estate also includes legal claims and causes of action that are acquired "after the commencement of the [bankruptcy] case but before the case is closed, dismissed, or converted." 11 U.S.C. § 1306(a)(1) & § 541(a)(1).

    If a case filed under Chapter 13 is converted to a case under another chapter of the Bankruptcy Code, such as Chapter 7, then "the property of the estate in the converted case . . . consist[s] of property in the estate, as of the date of filing the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." 11 U.S.C. § 348(f)(1)(A). However, if it is determined that a debtor has "convert[ed] a case under Chapter 13 . . . to a case under another chapter under [Title 11] in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion." Id. at § 348(f)(1)(B).

    The Bankruptcy Code subjects debtors to a "continuing duty to disclose all pending and potential claims." Kane, 535 F.3d at 384-85. Legal causes of action,

including "possible" causes of action, are assets that must be disclosed in bankruptcy. The Fifth Circuit has held that a "debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may be a possible cause of action, then it is a 'known' cause of action such that it must be disclosed." In re Coastal Plains, 179 F.3d 197, 208 (5th Cir. 1999). The appellate court in Coastal Plains went on to note that "[a]ny claim with potential must be disclosed, even if it is contingent, dependent, or conditional." Id.

## B. Treatment of Undisclosed Legal Claims in the Chapter 7 Context: the Standing Rubric

In a Chapter 7 bankruptcy proceeding, any unscheduled property "'that is not abandoned [by the trustee] under § 554 and that is not administered in the bankruptcy proceedings' . . . 'remains the property of the estate.'" Kane, 535 F.3d at 385 (quoting Parker, 365 F.3d at 1272; 11 U.S.C. § 554(d)); cf. 11 U.S.C. § 554(c). If a debtor does not schedule an asset that he or she is obliged to disclose, such as a pending or potential claim, and the trustee later learns that such an asset exists, he or she may reopen the bankruptcy to administer the claim on behalf of the creditors. Id. (citing 11 U.S.C. § 350(b); 3 COLLIER ON BANKRUPTCY § 350.03[1] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008); In re Miller, 347 B.R. 48, 53 (Bankr. S.D. Tex. 2006)). Moreover, "'[o]nce an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned by the trustee to the debtor pursuant to § 554." Id. (citing Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004); 11 U.S.C. § 554; 5 COLLIER ON BANKRUPTCY § 541.04, 541.08). As a result, "a trustee, as the representative of the bankruptcy estate,

is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed" in Chapter 7 cases. Kane, 535 F.3d at 385.

Just last year, in Kane v. Nat'l Union Fire Ins. Co., a panel of the Fifth Circuit reversed a district court's holding that a Chapter 7 trustee's motion to substitute himself as the real party in interest was moot because the doctrine of judicial estoppel applied to bar debtor-plaintiffs from pursuing a claim. See Kane, 535 F.3d 380. The court's per curiam opinion suggested that "a bankruptcy trustee should be able to pursue a claim on behalf of the creditors that the debtor himself would be judicially estopped from pursuing," and the Kane court cited with approval Judge Easterbrook's statements in Bisek v. Soo Line R.R. Co., 440 F.3d 410, 413 (7th Cir. 2006):

> [The debtor's] nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out [the debtor's claim against the defendant] would complete the job by denying creditors even the right to seek some share of the recovery. Yet the creditors have not contradicted themselves in court. They were not aware of what [the debtor] has been doing behind their backs. Creditors gypped by [the debtor's] maneuver are hurt a second time by the district judge's decision. Judicial estoppel is an equitable doctrine, and using it to land another blow on the victim of bankruptcy fraud is not an equitable application.

Kane, 535 F.3d at 387-88 (citing Bisek, 440 F.3d at 513); see also Wieburg v. GTE Southwest, Inc., 272 F.3d 302, 306 (5th Cir. 2001) (holding that claims that were the property of a Chapter 7 estate and therefore should have been disclosed in the plaintiff's bankruptcy schedules belonged to the Trustee, who was "the real party in interest with exclusive standing to assert them").

Applying <u>Kane</u> and <u>Wieburg</u> to the case at bar, this Court concludes that Plaintiff-Debtors Smith and Cockerm lack standing to pursue their claims in this lawsuit. Such claims belong to their respective bankruptcy estates, and the Chapter 7 Trustee is the only party with standing to pursue such claims in this, or any other court. Because no Chapter 7 trustee has filed a motion to intervene in this litigation, this Court will dismiss the claims of Plaintiff-Debtors Smith and Cockerm without prejudice to a Chapter 7 trustee's right to assert the same claims.

Because the standing analysis disposes of the Plaintiff-Debtor Smith and Cockerm's claims in this litigation and divests this Court of jurisdiction over claims filed by those Plaintiffs, it is not necessary or appropriate for this Court to consider Defendant's judicial estoppel arguments. In addition, the <u>Kane</u> opinion, in the course of distinguishing the Fifth Circuit's holding in <u>In Re: Superior Crewboats, Inc. v. Primary P&I Underwriters, et al</u>, 374 F.3d 330, 334 (5th Cir. 2004), suggests that judicial estoppel may not be warranted in Chapter 7 proceedings unless a debtor-plaintiff stands "to benefit in great disproportion to the estate," which is most likely to occur when, as in <u>Superior Crewboats</u>, a Chapter 7 trustee has "abandoned the claim, . . . [and accordingly is] not the real party in interest and [i]s not entitled to be substituted as such." <u>See</u> <u>Kane</u>, 535 F.3d 380, 387 (holding that judicial estoppel should not apply to claims asserted by a Chapter 7 trustee for wrongs suffered by debtor-plaintiffs, despite the fact that they "st[oo]d to benefit . . . in the event there was a surplus after all debts and fees have been paid."). The <u>Kane</u> court's approach to this issue may have the effect of encouraging debtors to comply with their duty to disclose legal claims in bankruptcy, even as it prevents plaintiff-debtors from "obtaining unfair advantage in a

forum provided for suitors seeking justice," and "playing fast and loose with the courts to suit the exigencies of self interest," the chief evils that judicial estoppel seeks to remedy See In re Superior Crewboats, Inc., 374 F.3d at 334-35 (quoting Scarano v. Cent. R.R. Co., 203 F.2d 510, 513 (3d Cir. 1953).

### C. Treatment of Undisclosed Legal Claims in the Chapter 13 Context: the Judicial Estoppel Rubric

In a Chapter 13 proceeding, however, unlike a Chapter 7 proceeding, "'[e]xcept as provided in a confirmed plan or [an] order confirming a plan, the debtor . . . remain[s] in possession of all property of the estate." 11 U.S.C. § 1306. As a result, a standing analysis does not dispose of claims lodged by plaintiff-debtors proceeding under Chapter 13, and this Court will consider Defendant's arguments that the claims of those debtor-plaintiffs proceeding under Chapter 13 are barred pursuant to the doctrine of judicial estoppel.

Judicial estoppel, a common law doctrine, "prevents a party from assuming inconsistent positions in litigation." Kane, 535 F.3d at 385 (citing In re Superior Crewboats, Inc., 374 F.3d at 334). The doctrine is intended "to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." Id. An equitable doctrine, "judicial estoppel is [usually] invoked where intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." Id. (quoting In re Superior Crewboats, Inc., 374 F.3d at 334-35 (internal quotation marks omitted)).

The Fifth Circuit has identified three elements that must be satisfied in order for judicial estoppel to apply: "(1) the party is judicially estopped only if its position is clearly inconsistent with [its] previous one; (2) [a] court . . . accepted the previous position; and

(3) the non-disclosure [was . . .] not . . . inadvertent." Id. at 384-85 (citing In re Superior Crewboats, Inc., 374 F.3d at 335). "Inadvertence" in this context means that the debtor must either "lack[ ] knowledge of the undisclosed claim *or* ha[ve] no motive for its concealment." Id. (emphasis in original). The Fifth Circuit has held that "[j]udicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." Jethroe v. Omnova Solutions, Inc., 412 F.3d 598, 600 (5th Cir. 2005). Indeed, a motive to conceal legal claims subsists in all bankruptcy cases in which a concealed legal claim would, if disclosed, form part of the bankruptcy estate and the debtor is aware of the claim's monetary value:

> The basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all of one's assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh. Assuming there is validity in [debtor's] present suit, [debtor] has a better plan. Conceal your claims, get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively. [Debtor], having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis.

In re Coastal Plains, 179 F.3d at 213.

With these standards in mind, this Court considers the issues presented by each individual Debtor-Plaintiff's situation.

## III.    FACTS AND ANALYSIS

The facts described below are not in dispute.

## A.    Pamela Smith

Plaintiff-Debtor Pamela Smith ("Smith") was an employee of Defendant from 2000 until 2004. Plaintiff-Debtor filed this multi-plaintiff action against Defendant on January 10, 2005, alleging  that she was subjected to a hostile work environment, that she was harassed, that she was denied training opportunities in 2002, that she was placed on a list of employees to be disciplined on the basis of race and gender in 2003, and that she was terminated in 2004.   The complaint filed by Plaintiff-Debtor Smith sought damages of "not less than $25,000,000.00 (Twenty Five Million Dollars)" to be divided among some 21 plaintiffs in amounts to be established at trial.

Plaintiff-Debtor Smith filed two Chapter 13  petitions for relief in the Western District of Louisiana, the first on July 18, 2001 (Case No. 01-12205), and the second on November 11, 2005 (Case No. 07-13261).   Mrs. Smith's first bankruptcy case was discharged on February 11, 2005, after she completed a Chapter 13 Plan.

Neither of Plaintiff Smith's Chapter 13 petitions disclosed her claims against Defendant.  Defendant presents this Court with several documents[1] filed in connection with Plaintiff-Debtor Smith's most recent Chapter 13 petition.  Schedule B of the Petition required Plaintiff-Debtor Smith to list "contingent and unliquidated claims of every nature" and "[o]ther personal property of any kind and nature not already listed."  See Record Document 169-1, Exh. C-2.   Plaintiff-Debtor Smith swore that there were "[n]one."  Id.  Smith's Petition also included a signed declaration she had "read the [. . .

---

[1]The parties do not appear to dispute that this Court may take judicial notice of the Plaintiffs' bankruptcy proceedings.  See Fed. R. Evid. 201(b)(2); Patterson v. Mobil Oil Co., 335 F.3d 476, 48 n. 1 (5th Cir. 2003).  Certain findings of fact are drawn from this Court's review of the docket sheets and transcripts drawn from the individual Plaintiff-Debtor's bankruptcy proceedings.

bankruptcy] schedules," and that they were "true and correct to the best of [her] knowledge, information, and belief." Record Document 169-1, Exh. C-3. A Statement of Financial Affairs also formed part of the filing. That document asked Plaintiff-Debtor Smith to "[l]ist all suits and administrative proceedings to which [she . . .] was a party within one year immediately preceding the filing of this bankruptcy case." Record Document 169-1, Exh. C-4. Although Plaintiff-Debtor Smith listed a Fair Debt Collection Practices Act proceeding, she failed to disclose this litigation. Id. She also signed a declaration under penalty of perjury affirming that she had "read the answers contained in the foregoing statements of financial affairs . . . and that they [we]re true and correct." Id. On January 7, 2008, pursuant to 11 U.S.C. § 341, the trustee in Plaintiff-Debtor Smith's case placed her under oath and orally examined her regarding the particulars of her bankruptcy case. During the examination, the trustee asked Smith: "Do you have any claims pending where you're suing anyone?". See Record Document 169-1, Exh. C-5. Plaintiff-Debtor Smith responded, "Uh huh. Mmm . . [.] No." Id. The trustee also asked Smith whether she was "involved in any lawsuits," and again Plaintiff-Debtor Smith answered, "No." Id.

On February 5, 2008, Bankruptcy Judge Stephen Callaway accepted Plaintiff-Debtor Smith's representations in her second bankruptcy case and entered an order confirming her Chapter 13 Plan. On May 21, 2008, Defendant filed the instant motion for summary judgment, seeking to dismiss Plaintiff-Debtor Smith's employment discrimination claims on the grounds of judicial estoppel. See Record Document 168. Approximately three weeks after the motion for summary judgment was filed, on or about June 11, 2008, Plaintiff-Debtor Smith sought to account for these pending claims

by attempting to amend her bankruptcy schedules and to file a modified Chapter 13 plan. See *In re Pamela Smith*, Bankr. Pet. No. 07-13261, Record Documents 22-23 (Bankr. W.D. La. June 11, 2008).

On September 2, 2008, and September 16, 2008, Judge Callaway held hearings on Plaintiff-Debtor Smith's attempts to amend her bankruptcy schedules and to have her modified plan confirmed. See id., Record Documents 29-31. At the hearing on September 2, Judge Callaway "sustained" Defendant's objection to Plaintiff-Debtor Smith's "proceed[ing] with this action against Defendant and . . . with this post-confirmation modified plan." See id., Record Document 30, Transcript of 9/02/08 Hearing, 11:7. Judge Callaway concluded that Plaintiff-Debtor Smith acted in bad faith by failing to disclose in bankruptcy her employment discrimination claims against Defendant. Id. At 4: 21-25; 5:1. Accordingly, Judge Callaway concluded that Plaintiff-Debtor Smith's bankruptcy should be converted from a Chapter 13 to a Chapter 7 proceeding, and that the Chapter 7 Trustee should be substituted as the party in interest with respect to Plaintiff-Debtor Smith's employment discrimination claims:

> we have guidelines in Chapter 13 that in this Chapter 13 we have to equal or exceed liquidation analysis in a 7. This [claim against Defendant] was an asset that existed, according to the pleadings which are not disputed, prior to this case being commenced. Not arising after, but prior to. So under 11 U.S.C. Section 348, if I convert this case to a 7, the cause of action will then be the property of the estate which the Chapter 7 trustee would have the right to review and do whatever that person feels would be of best interest to the estate.
> I think the most recent jurisprudence out of the Fifth Circuit indicates that this asset would not be lost to a Chapter 7 trustee.

Id. 5:14-25; 6:1.

The Court has learned that Defendant thereafter settled the claims filed by Plaintiff-Debtor Smith with the Chapter 7 Trustee, the sole party in interest with standing to assert Smith's claims against Defendant. See Kane, 535 F.3d at 385. Accordingly, Defendant's motion for summary judgment on the claims of Plaintiff-Debtor Smith is **DENIED as moot,** and Plaintiff Smith's claims are **DISMISSED with prejudice**.

### B.    Charles Cockerm

Plaintiff-Debtor Charles Cockerm ("Cockerm") and his wife filed a Chapter 13 petition for relief in the Western District of Louisiana on October 16, 2001 (Case No. 01-13277). Plaintiff-Debtor Cockerm filed this multi-plaintiff action against Defendant on September 27, 2005, alleging that he was subjected to discrete acts of discrimination and a hostile work environment, and that he was fired in a discriminatory fashion on February 24, 2004. The complaint that Cockerm filed  sought damages of "not less than $25,000,000.00 (Twenty Five Million Dollars)" to be divided among some 8 plaintiffs in amounts to be established at trial.

The Cockerms did not amend their Chapter 13 bankruptcy schedules and statements to reflect Plaintiff-Debtor Cockerm's claims against Defendant before their Chapter 13 plan was confirmed.

The Cockerms eventually fell behind on their plan payments and the Court issued a default order on May 4, 2006.  On May 18, 2006, the Cockerms filed a motion for hardship discharge, and that motion was opposed.  Instead of discharging the Cockerms from bankruptcy, on July 18, 2006, at Plaintiff-Debtor Cockerm's request, the Bankruptcy Court converted the Cockerms Chapter 13 case to a Chapter 7 proceeding.

On August 23, 2006, the Cockerms filed a "Final Report and Schedule of Post-Petition Debts Pursuant to Bankruptcy Rule 1019." <u>See</u> <u>id.</u>, Exh. A-3.  Under a section of the report entitled "SCHEDULE OF PROPERTY NOT LISTED IN THE FINAL REPORT AND ACCOUNT OF THE CHAPTER 13 TRUSTEE AND ACQUIRED AFTER THE FILING OF THE ORIGINAL PETITION BUT BEFORE ENTRY OF THE CONVERSION ORDER," the Cockerms entered "N/A," despite the fact that, at the time, this suit had been pending for almost a year.  And when the trustee placed the Cockerms under oath and orally examined them regarding the particulars of their bankruptcy case post-conversion, Plaintiff-Debtor Cockerm and his spouse stated under oath that these bankruptcy documents were true and correct and that they had no other assets.  <u>See</u> Record Document 173-1, Exh. A-4.

On November 11, 2006, the Bankruptcy Court, based on the representations the Cockerms made in their bankruptcy schedules and statements, as well as their sworn testimony, granted the Cockerms a "no asset" discharge.  <u>See</u> Record Document 173-1, Exh. A-5.

On June 23, 2008, the Cockerms filed a motion to reopen their bankruptcy proceedings to include any recovery that Plaintiff-Debtor Cockerm obtained from this lawsuit.  <u>See</u> Record Document 220-5.

Thereafter, the Chapter 7 Trustee in Plaintiff-Debtor Cockerm's case filed a *Motion for an Order Declaring Debtor's Conversion from Chapter 13 to Chapter 7 to be in Bad Faith Pursuant to 11 U.S.C. § 348(f)(2) and Declaring that Debtors are Judicially Estopped from Personally Receiving any Proceeds from Legal Actions Commenced Prior to Their Conversion of their Chapter 13 to a Chapter 7*.  Transcript of 5/11/09

Hearing, 2:7-12.  As noted above, if it is determined that a debtor has "convert[ed] a case under Chapter 13 . . . to a case under another chapter under [Title 11] in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion."  11 U.S.C. § 348(f)(1)(B).

Judge Callaway granted the Chapter 7 Trustee's motion, finding that the conversion was in bad faith and that judicial estoppel would apply to bar Plaintiff-Debtor Cockerm's assertion of the claims he filed in this lawsuit and to prevent them from "receiving any benefit" from the lawsuit.  Id. 117:1-9.  The Bankruptcy Court's determination that the proceeding were converted to Chapter 7 in bad faith means that Plaintiff-Debtor Cockerm's claims in this lawsuit, which preexisted the conversion, are property of the Chapter 7 estate.  See 11 U.S.C. § 348(f)(1)(B).

Accordingly, the Chapter 7 Trustee is the property party in interest with sole standing to assert the claims Plaintiff-Debtor Cockerm alleged herein against Defendant.  See Kane, 535 F.3d at 385.  Defendant's motion for summary judgment on Plaintiff-Debtor Cockerm's claims is **GRANTED** to the extent that it seeks to dismiss based on Cockerm's lack of standing, **DENIED as moot** to the extent it seeks to dismiss Cockerm's claims on grounds of judicial estoppel, and Plaintiff Cockerm's claims are **DISMISSED without prejudice to reassertion by a Chapter 7 Trustee.**

### C.   Derek Lamette

Plaintiff-Debtor Derek Lamette ("Lamette") and his wife filed a Chapter 13 petition for relief in the Bankruptcy Court for the Western District of Louisiana on February 22, 2001 (Case No. 01-10472), and a Chapter 13 plan was confirmed in those proceedings later the same year.

Plaintiff-Debtor Lamette filed this multi-plaintiff action against Defendant on September 27, 2005. Lamette alleges that Defendant employed him from May 17, 2004 until October 12, 2004.  Plaintiff-Debtor Lamette further alleges that he was subjected to discrete acts of discrimination and a hostile work environment, and that he was discharged in a discriminatory manner on October 12, 2004.   The complaint that Plaintiff-Debtor Lamette filed sought damages of "not less than $25,000,000.00 (Twenty Five Million Dollars)" to be divided among some 8 plaintiffs in an amount to be established at trial.

On October 12, 2004, Plaintiff-Debtor Lamette and his wife filed a motion asking the Bankruptcy Court to convert his Chapter 13 case to a Chapter 7 proceeding, and the Court granted their request.  <u>See</u> Record Document 175-1, Exh. A-2.  Upon conversion, the Lamettes were ordered to file a schedule of all property not listed in the final report and account of the of the trustee which was acquired after the commencement of the case but before entry of [the] conversion order.  <u>See</u> <u>id.</u>  The Lamettes did not file any reference to his claims against Defendant at that time.

On November 15, 2004, Plaintiff-Debtor Lamette completed a Charge Questionnaire, a Supplemental Intake Questionnaire, and a Charging Party Discharge Questionnaire  for the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant had discriminated against him on the basis of race.

Defendant avers, and Lamette does not dispute, that three days later, on November 18, 2004, the trustee in Plaintiff-Debtor Lamette's case placed Lamette and his spouse under oath and orally examined them regarding the particulars of their bankruptcy case post-conversion. <u>See</u> Record Documents 175-1; 221.  Plaintiff-Debtor

Lamette and his spouse stated under oath that these bankruptcy documents were true and correct and that they had no other assets.  See Record Document 175-1, Exh. A-3.

On March 7, 2005, the Bankruptcy Court, based on the representations the Lamettes made in their bankruptcy schedules and statements, as well as their sworn testimony, granted the Lamettes a "no asset" discharge. See id., Exh. A-4.

Later in 2005, the Lamettes filed a second Chapter 13 petition.  See Record Documents 221, 262.

On February 4, 2006, the Lamettes filed an Amended Schedule B in the Bankruptcy Court referencing this lawsuit.  See Record Document 221-4.  A Chapter 13 plan in this second bankruptcy was confirmed on April 11, 2006.  The plan was subsequently modified, and a new Chapter 13 plan was confirmed by order entered on May 5, 2008.

This Court concludes that Plaintiff-Debtor Lamette is not judicially estopped from asserting the claims he alleges herein.  When Plaintiff-Debtor Lamette first filed for Chapter 13 bankruptcy and the Bankruptcy Court confirmed his Chapter 13 plan in 2001, he had not even begun work for Defendant.  Accordingly, no duty to disclose was triggered at that time, as the cause of action had not accrued before Plaintiff Lamette's plan was confirmed and, accordingly, did not form part of Lamette's first Chapter 13 estate.

Courts have observed that the Bankruptcy Code is somewhat ambiguous regarding whether causes of action that accrue after a debtor's Chapter 13 plan is confirmed but before the case is closed, dismissed, or converted constitute property of the bankruptcy estate.  In the recent case  Woodard v. Taco Bueno Restaurants, Inc.,

2006 WL 3542693 *4-5 (N.D. Tex. 2006), a federal district court in and for the Northern District of Texas collected federal circuit courts' varying approaches to reconciling Section 1306(a)(1) of Title 11, Chapter 13, which, as noted above, provides that the estate includes legal claims and causes of action that are acquired "after the commencement of the [bankruptcy] case but before the case is closed, dismissed, or converted," with section 1327 of the same chapter, which states that "except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor . . . free and clear of any claim or interest of any creditor provided for by the plan." The Woodard Court concluded that although the sections are "facially inconsistent," they could be read harmoniously if

> the term 'vest,' as used in section 1327, . . . mean[t] the granting of an immediate and fixed right in the debtor to enjoy all of the assets of the bankruptcy estate free and clear once he faithfully completes his obligations under the confirmed plan and is entitled to receive a discharge from bankruptcy.

Id. at *5. The Woodard Court adopted that interpretation of "vest," and affirmed the Chapter 13 debtor's "continuing duty to disclose property and earnings acquired after the commencement of the case," noting that, in a post-confirmation context, such a disclosure might affect a creditor's decision about whether to seek a modification. See id. at *10 (the court, however, ultimately declined to judicially bar Woodard from pursuing his employment discrimination claims, concluding that his failure to disclose the cause of action was based on "an honest mistaken belief that he had no duty to disclose it," which in that court's estimation, amounted to inadvertence).

Plaintiff-Debtor Lamette's causes of action are based on events that occurred between May 17, 2004 until October 12, 2004, when he was employed by Defendant.

Lamette's claims should have been disclosed to the Bankruptcy Court as soon as practicable after they accrued. See In re Coastal Plains, 179 F.3d at 208. Had they been disclosed on the same day Lamette was fired and moved to convert his Chapter 13 case, the claims asserted herein would have become considered property of the original Chapter 13 estate, as they would have accrued prior to dismissal, closure, or conversion of Lamette's case. See Woodard, 2006 WL 3542693 at *4-5; 11 U.S.C. § 1306(a) & 541(a)(1).

But Lamette did not disclose his claims when he filed the motion to convert on the day he was fired, and, as explained in greater detail below, there is no evidence that this non-disclosure reveals a motive to conceal the claims from the Bankruptcy Court. As a result of that non-disclosure, these claims were not considered property of the first Chapter 13 estate. Nor are they property of the Chapter 7 estate, because the claims did not exist at the time the first Chapter 13 petition was filed, see 11 U.S.C. § 348(f)(1)(A), and there is no allegation before this Court that Plaintiff-Debtor Lamette moved to convert his case in bad faith. Accordingly, this Court cannot conclude that the claims belong to the Chapter 7 trustee; nor can it conclude that Lamette lacks standing to bring the claims, see id. at § 348(f)(1)(B).

As noted above, on November 15, 2004, Plaintiff-Debtor Lamette completed a Charge Questionnaire, a Supplemental Intake Questionnaire, and a Charging Party Discharge Questionnaire for the Equal Employment Opportunity Commission ("EEOC"), each alleging that Defendant had discriminated against him on the basis of race. The fact that these form are handwritten and contain numerous spelling and grammatical errors suggests that they were prepared by Lamette without assistance from counsel.

Record Document 262-1, Exh. A. The Charging Party Discharge Questionnaire Lamette completed includes a section entitled "SETTLEMENT INFORMATION," which recites:

> Your employer may want to resolve this charge before the Commission issues a determination as to whether or not the law has been violated. Settlement before a termination has been issued does not mean that the law has been violated. The information below will be used by the Commission in attempting to resolve your charge through the negotiated settlement process

Id. at D032088. That questionnaire then prompted Lamette to answer the question "Do you want your job back?", and Lamette responded, "Yes, or it intends [*sic*] on how much time has ela[p]sed." Next, the questionnaire asks Lamette, "Are you employed at this time?", to which Lamette answered, "No." The form proceeds to ask whether Lamette has "applied for other employment," to which he answered "Yes." Finally, the form asks Lamette if "there are any other losses for which he would like to be compensated," and Lamette did not write anything in response on blank provided for a response. The file also includes a typed statement signed by Lamette and addressed to "EEOC," in which Lamette states, "THIS COMPLAINT IS NOT ONLY FOR ME. IT IS FOR THOSE THAT CAME BEFORE ME AND THOSE THAT MAY COME AFTER ME. THIS IS SOMETHING THAT SHOULD SERIOUSLY [*sic*] BE LOOKED INTO." Id. at D032084. Nowhere in any of his submissions does Lamette refer to any claim for monetary damages against Defendant. Indeed the only mention of money in the EEOC filings is found in the Charge Questionnaire, where Lamette expresses difficulty reconciling Defendant's alleged refusal to pay him during mandatory training with Defendant's alleged willingness to pay Lamette after terminating him. See id. at D032062. In

response to the question "Why do you believe this action was taken against you?",

Lamette wrote,

> Because two white males sign a statement on me, so I'm trying to understand during all my days of working why all of a sudden a statement is being submitted now and not beforehand. I really need to talk to someone. They did not pay me for those days and now they want to pay me after they terminated me.

Id.

As noted above, before judicial estoppel can apply in this context, Defendant must prove that Plaintiff-Debtor Lamette's non-disclosure [was . . .] not . . . inadvertent. Kane, 535 F.3d at 384-85 (citing In re Superior Crewboats, Inc., 374 F.3d at 335). "Inadvertence" in this context means that the debtor must either "lack[ ] knowledge of the undisclosed claim *or* ha[ve] no motive for its concealment." Id. (emphasis in original). Based on Plaintiff-Debtor Lamette's statements in his EEOC filings, this Court concludes that Lamette lacked a motive to conceal his undisclosed claim in bankruptcy. The filings suggest that Lamette complained to the EEOC because he was seeking redress, on behalf of himself and others similarly situated, for the indignity of being fired in an allegedly pretextual and illegal fashion, and perhaps because he was seeking to have his position reinstated. There is no indication that Lamette anticipated seeking or receiving monetary damages from Defendant at the time these documents were filed. Indeed, Lamette made no mention of a desire for pecuniary compensation when prompted to list "losses for which he would like to be compensated," and the only reference to money in the filings appears to have been offered as an illustration of the allegedly arbitrary fashion in which Defendant treated him. Accordingly, judicial estoppel cannot apply based on any non-disclosure occurring on or before November

15, 2004, and Defendant presents the Court with no additional evidence that Plaintiff-Debtor Lamette became aware of the value of his claim prior to the no-asset discharge he received in March of 2005.

As noted above, Plaintiff-Debtor Lamette filed this action in September of 2005, filed for Chapter 13 bankruptcy a second time in 2005, and did not update his Chapter 13 schedules to reflect this claim until February of 2006. Although the Lamettes were unquestionably subject to a duty to disclose the existence of this lawsuit once they filed for bankruptcy in 2005, the omission of this claim in that filing does not warrant the dismissal of the claim on grounds of judicial estoppel because the Bankruptcy Court never accepted an inconsistent position: it did not confirm the Lamettes' second Chapter 13 plan until April 11, 2006, after the Lamettes amended their schedules. See Kane, 535 F.3d at 384-85.

Accordingly, Defendant's motion for summary Judgment on Plaintiff-Debtor Lamette's claims is **DENIED**.

### D. Geroalyn Clark

Plaintiff-Debtor Gerolayn Clark ("Clark") was hired by Defendant on June 27, 1997. Plaintiff-Debtor Clark filed this multi-plaintiff action against Defendant on January 10, 2005. In this suit, Plaintiff-Debtor Clark alleges that among other things, on February 28, 2004, Defendant terminated her employment in a discriminatory manner. Plaintiff-Debtor further claims that she was subjected to a hostile work environment and racial discrimination. The complaint that Plaintiff-Debtor Clark filed sought damages of "not less than $25,000,000.00 (Twenty Five Million Dollars)" to be divided among some 21 plaintiffs in an amount to be established at trial.

Plaintiff-Debtor Clark filed a Chapter 13 petition for relief in the Bankruptcy Court for the Western District of Louisiana on August 26, 2003 (Case No. 03-13089). Defendant points out, and Plaintiff-Debtor Clark does not dispute, that many of the incidents "such as comments allegedly made by Barbara Shepherd, Ronnie Vail, and Sharon Scott, occurred prior to the filing of Plaintiff-Debtor Clark's bankruptcy case." Id. Plaintiff-Debtor Clark admits that she contacted the NAACP in October of 2003 regarding racially derogatory remarks. Record Document 219.

The Chapter 13 petition Clark filed did not disclose her claims against Defendant. Nor did Plaintiff-Debtor Clark amend her bankruptcy schedules and statements to disclose the claims she has lodged against Defendant in this suit, which, as noted above, are based in part on her termination, despite the fact that she sought a partial moratorium on her monthly plan payments, requesting additional relief due to her discharge by Defendant.

Defendant presents this Court with several document filed in connection with Plaintiff-Debtor Clark's Chapter 13 petition. Schedule B of the petition required Plaintiff-Debtor Clark to list "contingent and unliquidated claims of every nature" and "[o]ther personal property of any kind and nature not already listed." See Record Document 177-1, Exh. E-2. Plaintiff-Debtor Clark swore that there were "[n]one." Id. Plaintiff-Debtor Clark's petition also includes a signed declaration by Plaintiff-Debtor stating that she had "read the [. . . bankruptcy] schedules," and that they were "true and correct to the best of [her] knowledge, information, and belief." Record Document 177-1, Exh. E-3. Pursuant to 11 U.S.C. § 341, on October 20, 2003, the trustee in Plaintiff-Debtor Clark's case placed her under oath and orally examined her regarding the particulars of

her bankruptcy case. During the examination, the trustee asked Plaintiff-Debtor Clark whether she had "[f]iled any lawsuits?" and whether she "ha[d] any claims against anyone?". <u>See</u> Record Document 177-1, Exh. E-4. Plaintiff-Debtor Clark responded, "No, ma'am," to both questions. <u>Id.</u>

On November 25, 2003, the Bankruptcy Court accepted Plaintiff-Debtor Clark's representations and entered an order confirming her Chapter 13 plan. <u>See</u> <u>id.</u>, Exh. E-5. The Bankruptcy Court subsequently confirmed Amended Chapter 13 plans on November 2, 2004 and August 25, 2005**.** <u>See</u> <u>id.</u>

On October 2, 2004, Plaintiff-Debtor Clark filed a Motion for Partial Moratorium on Plan Payments with the Bankruptcy Court, seeking a reduction of her Chapter 13 monthly payments based on the fact that she had been discharged by Defendant eight months earlier. <u>See</u> <u>id.</u>, Exh. E-6. Although Plaintiff-Debtor Clark specifically alerted the Bankruptcy Court to the fact of her discharge for the purpose of seeking relief from her Chapter 13 plan payments, she failed to disclose the claims she asserted against Defendant, which were based in part on the same termination, until four years later.

On June 17, 2008, Plaintiff-Debtor Clark filed an amended personal property schedule referencing her claims against Defendant. <u>See</u> Record Document 219.

On or about April 29, 2009, Clark filed a motion to convert her case from a Chapter 13 to a Chapter 7, which the Court granted. A motion to reconsider the conversion order, filed by Defendant, is currently pending in Bankruptcy Court.

Plaintiff-Debtor Clark was obliged to disclose the claims alleged in this lawsuit to the Bankruptcy Court in her Chapter 13 proceedings. <u>In re Coastal Plains</u>, 179 F.3d 197, 208 (5th Cir. 1999). The claims were filed on January 10, 2005, half a year before

Plaintiff-Debtor Clark's amended Chapter 13 plan was confirmed on August 25, 2005, and well before Clark filed a motion to convert on April 29, 2009. As such, the claims formed part of Plaintiff-Debtor Clark's Chapter 13 estate pursuant to 11 U.S.C. § 1306, see Woodard, 2006 WL 3542693 at *4-5. The claims may also form part of Plaintiff-Debtor Clark's Chapter 7 estate, pursuant to 11 U.S.C. § 348(f)(1)(B), should Judge Callaway find that the bankruptcy proceedings were converted in bad faith. This Court notes that the question of whether Plaintiff-Debtor Clark converted her case in bad faith is not squarely before it.

Regardless, judicial estoppel applies to bar Clark from litigation the claims she asserts in this lawsuit. Plaintiff-Debtor Clark's failure to disclose this lawsuit in her Chapter 13 bankruptcy proceedings is inconsistent with the position she has taken in this Court. She filed this lawsuit in January of 2005, but did not disclose it to the Bankruptcy Court until over three years later, notwithstanding her obligation to do so. See Kane, 535 F.3d at 384-85; 11 U.S.C. § 1306(a) & 541(a)(1). The Bankruptcy Court accepted Plaintiff-Debtor Clark's previous position by confirming an amended Chapter 13 plan on August 25, 2005. See Jethroe, 412 F.3d at 600. Clark's failure to disclose was not inadvertent, as she knew about the undisclosed claim and she "would certainly have reaped a windfall had [she] been able to recover on the undisclosed claim without having disclosed it to the creditors." Kane, 535 F.3d at 384-85; In re Superior Crewboats, Inc., 374 F.3d at 336.

Accordingly, Defendant's motion for summary Judgment on Plaintiff-Debtor Clark's claims is **GRANTED**, and Plaintiff Clark's claims are **DISMISSED with prejudice**.[2]

---

[2] The Court does not decide the question of whether, in light of the Kane opinion, these claims would be lost to a Chapter 7 Trustee if the Bankruptcy Court were to deem them

### E.    Ivory Cooper

Defendant hired Plaintiff-Debtor Ivory Cooper ("Cooper") as a conductor in 1991. On December 14, 2004, Plaintiff-Debtor Cooper signed a Charge of Discrimination with the EEOC, alleging age and race discrimination that occurred on November 5, 2004. See Record Document 171-1, Exh. A.   Plaintiff-Debtor Cooper first sought to join this multi-plaintiff action against Defendant on October 27, 2005, alleging  that he was subjected to a hostile work environment, racial discrimination, and age discrimination. In particular, Plaintiff-Debtor Cooper claims that Defendant fired him in 2004 in a discriminatory fashion.   The complaint that Plaintiff-Debtor Cooper filed  sought damages of "not less than $25,000,000.00 (Twenty Five Million Dollars)" to be divided among some 13 plaintiffs in an amount to be established at trial.

Plaintiff-Debtor Cooper filed a Chapter 13 petition for relief in the Bankruptcy Court for the Western District of Louisiana on November 27, 2006 (Case No. 06-12545). The Chapter 13 Petition Plaintiff Cooper filed did not disclose his claims against Defendant.   Defendant presents this Court with several documents filed in connection with Plaintiff-Debtor Cooper's Chapter 13 Petition.  Schedule B of the Petition required Plaintiff-Debtor Cooper to list "contingent and unliquidated claims of every nature" and "[o]ther personal property of any kind and nature not already listed."   See Record Document 171-1, Exh. C-2.  Plaintiff-Debtor Cooper swore that there were "[n]one."  Id. Cooper's Petition also includes a signed declaration in which Plaintiff-Debtor Cooper stated that he had "read the [. . . bankruptcy] schedules," and that they were "true and correct to the best of [his] knowledge, information, and belief." Id., Exh. C-3.    A

_____

property of Plaintiff-Debtor Clark's Chapter 7 estate.

Statement of Financial Affairs also formed part of the filing. That document asked Plaintiff-Debtor Cooper to "[l]ist all suits and administrative proceedings to which [he . . .] was a party within one year immediately preceding the filing of this bankruptcy case." Id., Exh. C-4. Plaintiff-Debtor Cooper failed to disclose this litigation. Id. He also signed a declaration under penalty of perjury affirming that he had "read the answers contained in the foregoing statements of financial affairs . . . and that they are true and correct." Id.

On April 24, 2007, the Bankruptcy Court accepted Plaintiff-Debtor Cooper's representations and entered an order confirming his Chapter 13 Plan. See id., Exh. C-5.

On May 19, 2008, Plaintiff-Debtor Cooper filed an amended personal property schedule referencing his claims against Defendant. See Record Document 222.

Judicial estoppel applies to bar Cooper from pursuing the claims he asserts in this lawsuit. Plaintiff-Debtor Cooper's failure to disclose this lawsuit when he filed for Chapter 13 bankruptcy is inconsistent with the position he has taken in this Court. He filed this lawsuit in October of 2005, before he filed for bankruptcy, but did not disclose it to the Bankruptcy Court until more than two and a half years after he filed his bankruptcy petition, notwithstanding his obligation to disclose. See Kane, 535 F.3d at 384-85; 11 U.S.C. § 1306(a) & 541(a)(1). The Bankruptcy Court accepted Plaintiff-Debtor Cooper's inconsistent position by confirming his Chapter 13 plan on April 24, 2007. See Jethroe, 412 F.3d at 600. Cooper's failure to disclose was not inadvertent, as he knew about the undisclosed claim and its potential value, and he "would certainly have reaped a windfall had [he] been able to recover on the undisclosed claim without

having disclosed it to the creditors." Kane, 535 F.3d at 384-85; In re Superior Crewboats, Inc., 374 F.3d at 336.

Accordingly, Defendant's motion for summary Judgment on Plaintiff-Debtor Cooper's claims is **GRANTED**, and Plaintiff Cooper's claims are **DISMISSED with prejudice**.[3]

### F. Gerald Williams

Defendant hired Plaintiff-Debtor Gerald Williams in 1993. On December 12, 2005, Williams signed a Charge of Discrimination with the EEOC, alleging age and race discrimination that occurred between November 1, 2004 and January 28, 2005. See Record Document 166-1, Exh. B. Plaintiff-Debtor Williams joined this multi-plaintiff action against Defendant on February 9, 2005, alleging that he was subjected to a hostile work environment, racial discrimination, and age discrimination. The complaint that Plaintiff-Debtor Williams filed sought damages of "not less than $25,000,000.00 (Twenty Five Million Dollars)" to be divided among some 28 plaintiffs in an amount to be established at trial.

Plaintiff-Debtor Williams and his wife filed a Chapter 13 petition for relief in the Bankruptcy Court for the Western District of Louisiana on September 11, 2006 (Case No. 06-80734).

The Chapter 13 Petition the Williams filed did not disclose Plaintiff-Debtor Williams' claims against Defendant. Defendant presents this Court with several documents filed in connection with the Williams' Chapter 13 Petition. Schedule B of the

---

[3] The Court does not decide the question of whether, in light of the Kane opinion, this claim would be lost to a Chapter 7 Trustee if Plaintiff-Debtor Cooper's case were converted to a Chapter 7 proceeding.

Petition required the Williams to list "contingent and unliquidated claims of every nature" and "[o]ther personal property of any kind and nature not already listed."     See Record Document 166-1, Exh. C-2.   The Williams swore that there were "[n]one."   Id.   The Williams' Petition also includes a signed declaration by Plaintiff-Debtor stating that they had "read the [. . . bankruptcy] schedules," and that they were "true and correct to the best of [their] knowledge, information, and belief."   Record Document 166-1, Exh. C-3. A Statement of Financial Affairs also formed part of the filing.   That document asked the Williams to list all suits and administrative proceedings to which they were a party within one year immediately preceding the filing of that bankruptcy case.   Record Document 166-1, Exh. C-4.   Plaintiff-Debtor Williams failed to disclose this litigation.   Id.   He also signed a declaration under penalty of perjury affirming that he had "read the answers contained in the foregoing statements of financial affairs . . . and that they are true and correct."   Id.   Pursuant to 11 U.S.C. § 341, on October 25, 2006, the trustee in the Williams' case placed them under oath and orally examined the Williams regarding the particulars of their bankruptcy case.   During the examination, the trustee asked the Williams: "Have you filed suit against anybody or a party [*sic*] to any litigation whatsoever?".   See Record Document 166-1, Exh. C-5.   The Williams responded, "No, sir."   Id.

On November 30, 2006, the Bankruptcy Court accepted the Williams' representations and entered an order confirming their Chapter 13 Plan.

On May 27, 2008, the Williams filed an amended personal property schedule referencing Plaintiff-Debtor Williams' claims against Defendant.   See Record Document 224.

Judicial estoppel applies to bar Plaintiff-Debtor Williams from pursuing the claims he asserts in this lawsuit. Plaintiff-Debtor Williams' failure to disclose this lawsuit when he filed for Chapter 13 bankruptcy is inconsistent with the position he has taken in this Court. He filed this lawsuit in March of 2005, before he and his wife filed for bankruptcy, but did not disclose it to the Bankruptcy Court until more than a year and a half after filing the petition, notwithstanding his obligation to disclose. See Kane, 535 F.3d at 384-85; 11 U.S.C. § 1306(a) & 541(a)(1). The Bankruptcy Court accepted the Williams' inconsistent position by confirming his Chapter 13 plan on November 30, 2006. See Jethroe, 412 F.3d at 600. Williams' failure to disclose was not inadvertent, as he knew about the undisclosed claim and its potential value and he "would certainly have reaped a windfall had [he] been able to recover on the undisclosed claim without having disclosed it to the creditors." Kane, 535 F.3d at 384-85; In re Superior Crewboats, Inc., 374 F.3d at 336.

Accordingly, Defendant's motion for summary Judgment on Plaintiff-Debtor Williams' claims is **GRANTED**, and Plaintiff Williams' claims are **DISMISSED with prejudice** to reassertion by Plaintiff Williams.[4]

## IV.    CONCLUSION

For the reasons stated, Defendant's motions for summary judgment numbered 168 and 172 are **GRANTED in part**, Defendant's motions for summary judgment numbered 166, 170, and 176 are **GRANTED**, and Defendant's motion for summary judgment numbered 174 is **DENIED**.    Plaintiff-Debtor Smith and Plaintiff-Debtor

---

[4] The Court does not decide the question of whether this claim would be lost to a Chapter 7 Trustee if Plaintiff-Debtor Williams' case were converted to a Chapter 7 proceeding.

Cockerm's claims, which the Bankruptcy Court determined belong to Chapter 7 trustees, are **DISMISSED**. The claims brought by Plaintiff-Debtor Smith, which the Defendant settled with the Chapter 7 Trustee in bankruptcy court, are **DISMISSED with prejudice**. The claims of Plaintiff-Debtor Cockerm, which this Court understands have not yet been settled with the Chapter 7 Trustee in bankruptcy court, are **DISMISSED** for lack of standing **without prejudice to** the ability of **a Chapter 7 trustee** to reassert the claims. Plaintiff-Debtor Clark, Cooper, and Williams' claims are **DISMISSED with prejudice**.

An order consistent with this memorandum ruling shall issue contemporaneously herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this the 18th day of June, 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE