# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

CLARENCE CARGO, *et al.*,          CIVIL ACTION NO. 05-2010

VERSUS                            JUDGE S. MAURICE HICKS, JR.

KANSAS CITY SOUTHERN              MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is Defendant's Motion for Partial Summary Judgment on Plaintiff Michelle Chauvin's Title VII claims of hostile work environment and retaliation [Record Document 208]. The motion is grounded in a claim that Chauvin failed to exhaust administrative remedies with respect to her Title VII claims because the charge of discrimination she filed did not include the allegations of hostile work environment and retaliation that she claims in this suit. See id. Plaintiff Chauvin states in response that she has exhausted administrative remedies because: (1) her claim of hostile work environment is like or reasonably related to the allegations in the Charge of Discrimination and other documents that she and others filed with the EEOC; and (2) this Court has ancillary jurisdiction to hear a claim of retaliation, even if the claim was not administratively exhausted, because the claim grows out of an administrative charge that is properly before the Court. [Record Document 271]. For the reasons that follow, Defendant's Motion for Partial Summary Judgment is **DENIED**.

# I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

# II. LAW AND ANALYSIS

## A. Scope of Exhaustion Requirement

Employment discrimination plaintiffs must exhaust administrative remedies before they may pursue claims in federal court. Taylor v. Books A Million, Inc., 296

F.3d 376, 378-79 (5th Cir. 2002).  In order to exhaust his or her administrative remedies, a plaintiff must first file a timely charge with the EEOC and receive a notice of right to sue.  Id.  A Title VII suit "may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations . . . ." Turner v. St. Luke's Episcopal Health Sys., 2008 WL 706709 at *7 (S.D. Tex. Mar. 14, 2008) (citing Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1992)).

At issue in this case is the scope of the exhaustion requirement, which "has been defined in light of two competing Title VII policies that it furthers." Pacheco v. Mineta, 448 F.3d 783, 788-89 (5th Cir. 2006).  As the Fifth Circuit has explained,

> On the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally.  On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, a less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance . . . .  [A]llowing a federal court complaint to proceed despite its loose 'fit' with the administrative charge and investigation is precluded if it would circumvent agency efforts to secure voluntary compliance before a civil action is instituted.

Id. (internal citations and quotation marks omitted).  Accordingly, and keeping both considerations in mind, "this court interprets what is properly embraced in review of

a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. (citing Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir. 1970)) (internal quotation marks omitted). In doing so, the Court "engage[s] in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look[s] slightly beyond its four corners, to its substance rather than its label." Id.

As an initial matter, we note that "[a] discriminatory act alleged in a lawsuit but not included in an EEOC charge is not 'like or related to' acts that are alleged in an EEOC charge simply because both are based on the same type of discrimination." Turner, 2008 WL at *8. In order for a particular "alleged discriminatory act to fall within the scope of an EEOC charge, there must be some factual relationship between the act and the acts described in the charge, beyond the fact that both involve the same employer and the same general type of discrimination." Id.

In the instant matter, to determine which Title VII causes of action Plaintiff has exhausted, Chauvin urges this Court to look not only to the substance of her initial administrative charge filed on September 3, 2004, but also to: (1) the "Charge Information Form" submitted with her Charge of Discrimination, (2) an "Intake Questionnaire" and attached statement submitted to the EEOC on November 8, 2007, (3) the substance of the Charges of Discrimination filed against KCS and

Watco Companies, Inc. ("Watco") on December 6, 2007, and (4) the EEOC submissions of co-Plaintiffs Lisa Cloud and Sharon Kennedy.

Only two of the documents submitted to the EEOC by Plaintiff Chauvin and attached to her Opposition to Defendant's Motion for Summary Judgment may properly be considered by this Court. Unquestionably, the Charge of Discrimination filed by Chauvin on September 3, 2004, which is her formal administrative complaint, stating she was discriminated against "in violation of Title VII of the Civil Rights Act of 1964" can be construed as a request for the agency to take remedial action. The question of whether the Charge Information Form may also be construed as such is a close one. Recently, in Fed. Express Corp. v. Holowecki, — U.S. —, 128 S.Ct. 1147, 1158 (2008), the Supreme Court held that a document filed with the EEOC constitutes a "charge" for the purposes of the Age Discrimination in Employment Act ("ADEA") when "it [can] be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Fed. Express Corp. v. Holowecki, — U.S. —, 128 S.Ct. 1147, 1158 (2008). Other federal district courts have extended Holowecki to claims filed pursuant to Title VII rather than the ADEA. See Beckham v. Nat'l R.R. Passenger Corp., 590 F. Supp. 2d 82, 86 (D.D.C. 2008) (holding that "because of the similarities between the statutory scheme of the ADEA and Title VII concerning exhaustion of administrative remedies," Holowecki's holding concerning the interpretation of "charge" should be applied in the Title VII context); see also

Grice v. Balt. County, Civ. No. 07-1701, 2008 WL4849322, at *4 n. 3 (D.Md. Nov. 5, 2008), and cases cited therein.

In Holowecki, the wording of the Intake Questionnaire at issue stated that the form's purpose is to facilitate "pre-charge filing counseling" and to enable the agency to determine whether it has jurisdiction over potential charges." See 128 S.Ct. at 1159. The Supreme Court suggested that such a form, without more, could not be reasonably construed as a request for the agency to take remedial action. See 128 S.Ct. at 1159 ("Were the Intake Questionnaire the only document before us we might agree its handwritten statements do not request action."). The Supreme Court ultimately found that the Intake Questionnaire constituted a charge, however, because it was "supplemented with a detailed six-page affidavit" asking the agency to "[p]lease force [the defendant] to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment . . . ." Id. at 1159-60.

In determining whether Plaintiff Chauvin's Charge Information Form may be construed as a "charge," the Court is mindful of the Supreme Court's suggestion in Holowecki that "handwritten statements" on an EEOC questionnaire, without more, may not constitute a formal request for agency action. See Holowecki, 128 S. Ct. at 1159. However, the Charge Information Form at issue and the circumstances under which it was submitted to the EEOC differ significantly from the Intake Questionnaire referred to in Holowecki. [Doc. 271, Ex. E]. Under the heading

"PRINCIPAL PURPOSE," the Charge Information Form states that "[t]he purpose of this questionnaire is to enable the Commission to avoid the intake of matters not within its jurisdiction." [Doc. 271, Ex. E]. In addition, under the heading "ROUTINE USES," the form provides that:

> Information provided on this form will be used by the Commission employees to determine the existence of facts relevant to a decision as to whether the Commission has jurisdiction over potential charges, complaints or allegations of employment discrimination and to provide such pre-charge filing counseling as is appropriate. Information provided on this form may be disclosed to other state, local and federal agencies as may be appropriate or necessary to carry out the Commission's functions. This would include employment practice laws. Information may also be disclosed to charging parties in consideration of or in connection with litigation.

Id. The Court acknowledges that if the pre-printed form were construed by itself, under Holowecki, it would be insufficient to constitute a "charge" or a "request for remedial action."[1] However, Plaintiff Chauvin signed the Charge Information Form on August 30, 2004, the same date on which she signed her Charge of Discrimination, and presumably submitted the documents to the EEOC simultaneously. [Doc. 208, Ex. A; Doc. 271, Ex. E]. Holowecki recognizes that Title VII sets up a "remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." Holowecki, 128 S. Ct. at 1158 (citing EEOC v.

---

[1] The Charge Information Form at issue here is different than the Charge Questionnaires analyzed in the Court's previous rulings denying Defendant's motions for summary judgment. [See Docs. 380, 340].

Commercial Official Products Co., 486 U.S. 107, 124, 108 S.Ct. 1666 (1988)). "The system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes." Id. Laypersons must be held to a lesser pleading standard and it is thus consistent with the purposes of Title VII that "a charge can be a form, easy to complete, or an informal document, easy to draft." Id.

Under the particular facts and circumstances presented in this case, Plaintiff Chauvin's Charge Information Form should be construed as a request for remedial action.[2] Chauvin provided detailed allegations on the form and submitted it to the EEOC together with her Charge of Discrimination. It can only be assumed that Plaintiff Chauvin believed the Charge Information Form would be used to supplement her charge and that the documents would be construed as one. Applying the rationale in Holowecki and considering the timing and context of Chauvin's Charge Information Form, the Court finds that the scale tips in favor of the complainant. Accordingly, and in an abundance of caution, the Court will consider Plaintiff Chauvin's Charge Information Form when determining whether her claims

---

[2]The Supreme Court in Holowecki limited documents which can be construed as a "charge" to those which can reasonably be "construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and employee." Holowecki, 128 S.Ct. at 1158. This Court does not believe, however, that the form must expressly request remedial action; rather, a "request" may be implied from the information provided on the form—not even the EEOC's official Charge of Discrimination contains an express statement requesting the agency to take remedial action.

of hostile work environment and retaliation are within the scope of her formal administrative complaint to the EEOC.

The other documents Chauvin filed in support of her Opposition will not be considered by the Court. Although the Charges of Discrimination filed on December 6, 2004 are unquestionably requests for the agency to take remedial action, these Charges were not filed until nearly three years after this lawsuit commenced and contain allegations based on events that occurred subsequent to the filing of Chauvin's Complaint. The Court recognizes that Plaintiff Chauvin was allowed to supplement the Complaint to include these allegations so that these Charges and the "Intake Questionnaire" cannot be considered "untimely" or irrelevant to the present lawsuit [See Fourth Supp. Compl., Doc. 235], but there is no evidence in the record that the EEOC has concluded their investigation and issued a statutory notice of right to sue. Hall v. Continental Airlines, Inc., 252 Fed.Appx. 650, *2 (5th Cir. 2007) ("Exhaustion occurs when an individual files a timely complaint with the EEOC, her claim is dismissed by that agency, and the agency informs her of a right to sue in federal court."), citing Taylor v. Books-A-Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2007); see also John v. State of La. (Bd. Of Trustees for States Colleges & Univ.), 757 F.2d 698, 701 (5th Cir. 2008) (dismissing plaintiff's Title VII claim without prejudice because he had not received notice of his right to sue). With regard to the EEOC submissions of co-Plaintiffs Lisa Cloud and Sharon Kennedy,

Chauvin has not identified any authority that would permit this Court to consider those documents as a requests made by Plaintiff Chauvin for remedial action.

An analysis of each of Chauvin's Title VII claims with reference to statements Plaintiff submitted to the EEOC in her Charge of Discrimination and Charge Information Form follows.

### B.  Hostile Work Environment

To prevail on such a claim a Title VII hostile work environment claim based on race, a Plaintiff must show that he or she (1) belongs to a protected group, (2) was subjected to unwelcome harassment, (3) the harassment complained of was based on race, (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.  Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002).

Chauvin claims in this suit that she was subjected to a hostile work environment based on race as a result of the following incidents: (i) she was a witness to discrimination in the workplace and the discriminatory animus of Manager Barbara Sheppard, and she affirmatively supported African-American employees by objecting to discriminatory treatment of all employees; (ii) she was placed on a "hit list" for terminations of employees based on pretextual reasons; (iii) she was placed on the "hit list" so that there would be sufficient White employees terminated to justify the termination of a large number of black employees; (iv) she was selected for

termination because of her history of taking Family and Medical Leave and because of her protected activity of objecting to discriminatory treatment of employees; and (v) she was terminated on February 28, 2004 as a "token White female" in a mass firing of primarily African-American employees. [Third Supp. Compl., Doc. 48, ¶¶ 54-57]. Chauvin argues that her claim of hostile work environment is not exhausted because it is "like or related to" the allegations contained within her administrative charge. However, "THE PARTICULARS" section of Plaintiff's Charge of Discrimination makes no reference to her claims of hostile work environment. It states simply and in its entirety:

> On February 6, 2004, I was discharged.
>
> I was informed that I was discharged for transmitting/storing sexually explicit emails in contrary [sic] to company policy.
>
> I believe that I have been discriminated against because of my race, White, and my gender, Female, in violation of Title VII to the Civil Rights Act of 1964, as amended.

[Charge of Discrimination, Doc. 208, Ex. A].

Chauvin's Charge Information Form, however, contains several allegations that are like or reasonably related to hostile work environment claim:

> ... [M]y name was on a list of names that was broken down into categories of gender and race. Some names on this list were also allegedly in violation of company policy but were not terminated. The person responsible for the list was Barbara Sheppard....
>                          ***

> ... This list was also created to serve as a guideline to terminate those who were not liked or who had families or because of race and/or gender.
>
> ***
>
> During the KCS Railroad Company investigation it was showed [sic] by me a great more of the accusations of breaking company policy or transmitting or storing sexually explicit emails...were valid. Yet the KCS still terminated my employment.

[Charge Information Form, Doc. 271, Ex. E].

Based on Chauvin's statements in the Charge Information Form indicating she was included on a "hit list" of minority employees targeting minorities for dismissal that was prepared by Barbara Sheppard, this Court concludes that the hostile work environment contentions included in his federal court complaint are "like or related to the charge's allegations," See Turner, 2008 WL 706709 at *7, such that an EEOC investigation of the subject matter alleged in Chauvin's complaint could reasonably be expected to grow out of the allegations in the Charge Questionnaire. Accordingly, Defendant's motion to dismiss Chauvin's Title VII hostile work environment claim is **DENIED**.

### C.    Retaliation

Title VII's anti-retaliation provision  makes it unlawful  for an employer to discriminate against any of its employees (1) because she "has opposed any practice made an unlawful employment practice by this subchapter," or (2) because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Crawford v. Metro.

Gov't of Nashville & Davidson, —U.S.—, 129 S.Ct. 846, 850 (2009) (citing 42 U.S.C. § 2000e-3(a).

Plaintiff Chauvin's first retaliation claim is based on the following incidents: (i) she requested Family and Medical Leave, (ii) she "affirmatively supported African-American employees by objecting to discriminatory treatment of all employees," (iii) she was terminated on February 28, 2004, and (iv) the reasons given for her termination "were disparate compared to employees who had not taken Family and Medical Leave and who had not objected to discrimination." [Doc. 48, ¶¶ 53-55, 57]. Her second retaliation claim is based on the following subsequent events: (i) on August 30, 2004, she filed a charge with the EEOC alleging she had been discharged from KCS on the basis of her race and gender [Doc. 208, Ex. A], (ii) thereafter, she resumed employment with KCS until June 2007 when she left to pursue employment as a Marketing Manager for Watco [Doc. 271, Ex. B6], (iii) on September 6, 2007, Allen Roach, the Senior VP of Marketing for Watco, informed Chauvin that he received a call from someone in the marketing department with KCS indicating she was involved in a lawsuit with KCS [Doc. 235, ¶ 19], and (iv) when she admitted to Roach that she was involved in the lawsuit, Roach terminated her employment, telling her that "KCS was one of their biggest customers" and "that it would be a 'conflict of interest'" for her to continue working at Watco [Id.].

Plaintiff's Charge of Discrimination, quoted above, does not refer to Plaintiff's allegation that she was discharged in February 2004 for engaging in a protected

activity—namely, for "objecting to discriminatory treatment of all employees." [See Doc. 48, ¶ 54]. However, Plaintiff's Charge Information Form, which is also quoted above, reveals that she requested a formal investigation upon being accused of transmitting and storing sexually explicit emails and violating company policy. She believed that other individuals were also in violation of company policy or transmitting or stored sexually explicit emails but were not terminated. This contention is sufficiently like or reasonably related to the general retaliation allegation of Plaintiff's Complaint.

Regardless of whether Plaintiff exhausted her administrative remedies as to her second retaliation claim based on her termination from Watco, Plaintiff Chauvin contends this Court has "ancillary jurisdiction" to hear her retaliation claim.

In Gutpa v. East Texas State University, 654 F.2d 411 (5th Cir. 1981), a professor at East Texas State University (ETSU) filed a charge against ETSU with the EEOC alleging he had been discriminated against on the basis of his national origin (India) and religion (Hindu). Id. at 412. After Gupta filed the charge, his contract with ETSU was not renewed and he filed a second charge alleging "various acts of retaliation." Thereafter, the EEOC issued a Right to Sue letter with respect to the first charge and Gutpa filed a lawsuit. The EEOC issued another Right to Sue letter as to the retaliation charge, but these allegations were not made part of the lawsuit. The district court determined it did not have jurisdiction over the retaliation

claims because Gutpa had not received statutory notice of right to sue prior to filing the lawsuit.

On appeal, the Fifth Circuit held that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." Id. at 414. In supporting its decision that a district court may have ancillary jurisdiction over a retaliation claim the Court stated:

> There are several strong practical reasons and policy justifications for this conclusion. It is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case, a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII. We are reluctant to erect a needless procedural barrier to the private claimant under Title VII, especially since the EEOC relies largely upon the private lawsuit to obtain the goals of Title VII. Intertwined with this practical reason for our holding is a strong policy justification. Eliminating this needless procedural barrier will deter employers from attempting to discourage employees from exercising their rights under Title VII.

Id. (internal citations omitted); see also Berle v. Gonzales, 240 Fed.Appx. 622, 2007 WL 1455928 (5th Cir. 2007); Miller v. Southwestern Bell Telephone Co., 51 Fed.Appx. 928, 2002 WL 31415083 (5th Cir. 2002); Barrow v. New Orleans Steamship Assoc., 932 F.2d 473 (5th Cir. 1991).

There is no dispute that the Court has jurisdiction over the allegations of discrimination contained within Plaintiff's Charge of Discrimination filed on September 3, 2004. Because Plaintiff Chauvin's retaliation claim (based on her termination from Watco) stems from these allegations, the court also has ancillary jurisdiction over this claim, regardless of whether she exhausted her administrative remedies. Accordingly, Defendant's motion to dismiss Chauvin's Title VII retaliation claim is **DENIED.**

## III. CONCLUSION

Accordingly, **IT IS ORDERED THAT** the foregoing motion (Record Document 208) be and is hereby **DENIED**.

**IT IS FURTHER ORDERED THAT** Plaintiff Chauvin's request for sanctions is hereby **DENIED**. Nothing in the argument submitted by Plaintiffs' counsel in support of the claim for sanctions leads this Court to believe that Defendant unreasonably multiplied the motion practice and proceedings in this case.

**IT IS FURTHER ORDERED THAT** each party shall bear its own costs with respect to the briefing of the instant motions.

Thus done and signed, in Shreveport, Louisiana, this 16th day of September, 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE