**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| CLARENCE CARGO, *et al.*, | CIVIL ACTION NO. 05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant's Motion for Partial Summary Judgment on Plaintiff Jesse Frank's Title VII claims of hostile work environment and retaliation and his Age Discrimination in Employment ("ADEA") claims. [Record Document 204]. The motion is grounded in a claim that Frank failed to exhaust administrative remedies with respect to his Title VII claims of hostile work environment and retaliation and all of his ADEA claims because these claims were not included in the charge of discrimination he filed with the EEOC on February 12, 2003. See id. Plaintiff Frank states in response that he has exhausted administrative remedies as to his Title VII claims because: (1) his claim of hostile work environment is within the scope of a reasonable investigation of the allegations in his Charge of Discrimination; and (2) this Court has ancillary jurisdiction to hear a claim of retaliation, even if the claim was not administratively exhausted, because the claim grows out of an administrative charge that is properly before the Court. [Record Document 272]. Plaintiff Frank does not, however, state any opposition to Defendant's motion with respect to his ADEA claims. For the reasons that follow,

Defendant's Motion for Partial Summary Judgment is **GRANTED in part** and **DENIED in part**. Frank's **Title VII claim of hostile work environment** and his **ADEA claims** are **DISMISSED,** and his Title VII claim of retaliation survives.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

## II. LAW AND ANALYSIS

### A. Scope of Exhaustion Requirement

Employment discrimination plaintiffs must exhaust administrative remedies before they may pursue claims in federal court. Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002). In order to exhaust his or her administrative remedies, a plaintiff must first file a timely charge with the EEOC and receive a notice of right to sue. Id. A Title VII suit "may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations . . . ." Turner v. St. Luke's Episcopal Health Sys., 2008 WL 706709 at *7 (S.D. Tex. Mar. 14, 2008) (citing Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1992)).

At issue in this case is the scope of the exhaustion requirement, which "has been defined in light of two competing Title VII policies that it furthers." Pacheco v. Mineta, 448 F.3d 783, 788-89 (5th Cir. 2006). As the Fifth Circuit has explained,

> On the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, a less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance . . . . [A]llowing a federal court complaint to proceed despite its loose 'fit'

>       with the administrative charge and investigation is precluded if it would circumvent agency efforts to secure voluntary compliance before a civil action is instituted.

Id. (internal citations and quotation marks omitted). Accordingly, and keeping both considerations in mind, "this court interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. (citing Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir. 1970)) (internal quotation marks omitted). In doing so, the Court "engage[s] in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look[s] slightly beyond its four corners, to its substance rather than its label." Id.

As an initial matter, we note that "[a] discriminatory act alleged in a lawsuit but not included in an EEOC charge is not 'like or related to' acts that are alleged in an EEOC charge simply because both are based on the same type of discrimination." Turner, 2008 WL at *8. In order for a particular "alleged discriminatory act to fall within the scope of an EEOC charge, there must be some factual relationship between the act and the acts described in the charge, beyond the fact that both involve the same employer and the same general type of discrimination." Id.

In the instant matter, to determine which Title VII causes of action Plaintiff has exhausted, Frank urges this Court to look not only to the substance of his administrative charge signed on February 12, 2003, but also to the "Supplemental

Intake Questionnaire" and Affidavit he submitted to the EEOC along with his Charge of Discrimination. [Doc. 272, Ex. B].

A recent Supreme Court decision held that an EEOC "Intake Questionnaire," constitutes a "charge" for the purposes of the ADEA when "it [can] be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Fed. Express Corp. v. Holowecki, — U.S. —, 128 S.Ct. 1147, 1158 (2008); see also Beckham v. Nat'l R.R. Passenger Corp., 590 F. Supp. 2d 82 , 86 (D.D.C. 2008) (noting that "because of the similarities between the statutory scheme of the ADEA and Title VII concerning exhaustion of administrative remedies," Holowecki's holding concerning the interpretation of "charge" should be applied in the Title VII context) (citing Grice v. Balt. County, Civ. No. 07-1701, 2008 WL4849322, at *4 n. 3 (D.Md. Nov. 5, 2008).

In Holowecki, the Supreme Court implied that a completed Intake Questionnaire, without more, could not be reasonably construed as a request for the agency to take remedial action. See 128 S.Ct. at 1159 ("Were the Intake Questionnaire the only document before us we might agree its handwritten statements do no request action." Id.). The Supreme Court ultimately found that the Intake Questionnaire constituted a charge, however, because it was "supplemented with a detailed six-page affidavit" asking the agency to "[p]lease force [the defendant]

to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment . . . ." Id. at 1159-60.

The Supplemental Intake Questionnaire at issue here differs from the Intake Questionnaire the Supreme Court referred to in Holowecki. See id., 128 S. Ct. at 1159. The Intake Questionnaire at issue in Holowecki stated that it was intended for "pre-charge filing counseling," and to assist the agency in determining "whether it had jurisdiction over "potential charges." See id. In contrast, the Questionnaire that Frank submitted to the EEOC states, under the heading "PRINCIPAL PURPOSE" at the bottom of the second page, that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will . . . consider it to be a sufficient charge of discrimination under the relevant statute(s)." [Doc. 272, Ex. B2]. Furthermore, similar to the Intake Questionnaire in Holowecki, the Supplemental Intake Questionnaire at issue here is supplemented with a two-page affidavit describing the facts on which his Title VII claims are based. Accordingly, Plaintiff Frank's Supplemental Intake Questionnaire will be construed as a request for agency action and this Court will consider it.

An analysis of each of Frank's Title VII claims with reference to statements Plaintiff submitted to the EEOC in his Charge of Discrimination and Supplemental Intake Questionnaire follows.

### B. Hostile Work Environment

To prevail on such a claim a Title VII hostile work environment claim based on race, a Plaintiff must show that he or she (1) belongs to a protected group, (2) was subjected to unwelcome harassment, (3) the harassment complained of was based on race, (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002).

Frank claims in this suit that he was subjected to a hostile work environment based on race as a result of the following incidents: (i) during the period 1972-2001, he did not have knowledge of advancement opportunities through job postings, (ii) sometime in 2001, a co-worker told him that KCS was "out to get him," (iii) sometime in 2002, he was told by Jimmy Love, a trainmaster: "You people..." referring to black trainmen, (iv) sometime in 2002, he was told by Love: "Get the fuck out of my office, if you don't like how things are done," (v) sometime in 2005, he was put in a safety hazard situation when Trainmaster Bill Richardson removed a safety device from service aboard Plaintiff's locomotive, and (vi) similarly situated Caucasian workers received less discipline than him. [Third Supp. Compl., Doc. 48, ¶ 48]. Frank argues that his claim of hostile work environment is not exhausted because it is within the scope of a reasonable investigation of his formal administrative charge. However, "THE PARTICULARS" section of Frank's Charge of Discrimination makes no

reference to his claims of hostile work environment. It states simply and in its entirety:

> I began employment with the Respondent, Kansas City Southern Railroad, on July 13, 1972. I have been most recently employed as a locomotive engineer. On December 28, 2002, I had a family emergency and requested leave. As a result, on February 5, 2003, I was charged with a missed call and was suspended for 90 days. Yet, a similarly situated White was granted leave on the same day that my leave was denied. Further, other Whites who were cited for missed calls received less severe discipline.
>
> I was told that I was suspended because I violated company policy.
>
> I believe I was subjected to excessive discipline because of my race, Black, in violation of Title VII.

[Charge of Discrimination, Doc. 204, Ex. A].

Nor does Frank's Supplemental Intake Questionnaire or his Affidavit refer to his claim of hostile work environment. On the Questionnaire, he merely states that he "was [suspended for] 90 days for miss called [sic] and the other engineers did the same thing and got a slap on the risk [sic]." [Doc. 272, Ex. B1]. His affidavit provides more details concerning his employment history with KCS, the 90-day suspension, and the discipline to White employees who were "similarly situated," but it does not include any allegations "like or related to" a claim of hostile work environment. See Turner, 2008 WL 706709 at *7. Rather, the claim of hostile work environment contained in Frank's Complaint involves new and independent

allegations of discrimination that neither grow out of or nor are directly related to the subject matter of his EEOC charge—*i.e.,* suspension. See e.g., Magana v. Tarrant/Dallas Printing, 193 F.3d 517 (5th Cir. 1999). Accordingly, Defendant's motion to dismiss Frank's Title VII hostile work environment claim is **GRANTED.**

C. Retaliation

Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against any of its employees (1) because she "has opposed any practice made an unlawful employment practice by this subchapter," or (2) because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Crawford v. Metro. Gov't of Nashville & Davidson, —U.S.—, 129 S.Ct. 846, 850 (2009) (citing 42 U.S.C. § 2000e-3(a).

Plaintiff Frank alleges "retaliation was a motive for Defendant giving [him] a 90 day suspension without pay" and that "he was retaliated against on the basis of his pending litigation when, on February 14, 2007, he was dismissed from employment for failing a return-to-service drug screen." [Doc. 272, Decl. 2-3]. Plaintiff's Charge of Discrimination, quoted above, does not refer to his allegation that he was suspended for 90 days as a result of having filed an EEOC charge in 1997. [See Doc. 204, Ex. A; Third Supp. Compl., Doc. 48, ¶ 48(b)(i)]. Frank did, however, "check the box" on his Supplemental Intake Questionnaire for having filed an EEOC Charge against KCS in the past. [Doc. 272]. "The Fifth Circuit has

previously noted that by simply checking the box corresponding to the alleged basis for unlawful employment action, a plaintiff sufficiently exhausts her administrative remedies." Pavolini v. City of Pass Christian, 2008 WL 2568156, *5 (S.D.Miss. 2008) (citing Miller v. Sw. Bell Tel. Co., 51 Fed.Appx. 928 (5th Cir. 2002)). Consequently, the Court finds that Frank has exhausted his administrative remedies with respect to his retaliation claim concerning his 90 day suspension.

Regardless of whether Plaintiff Frank exhausted his administrative remedies as to his retaliation claim concerning his February 14, 2007 termination, this Court has "ancillary jurisdiction" to hear this retaliation claim. In Gutpa v. East Texas State University, 654 F.2d 411 (5th Cir. 1981), the Fifth Circuit held that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." Id. at 414. In supporting its decision that a district court may have ancillary jurisdiction over a retaliation claim the Court stated:

> There are several strong practical reasons and policy justifications for this conclusion. It is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case, a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII. We are reluctant to erect a needless procedural barrier to the private claimant under Title VII, especially since the EEOC relies largely upon the private

> lawsuit to obtain the goals of Title VII. Intertwined with this practical reason for our holding is a strong policy justification. Eliminating this needless procedural barrier will deter employers from attempting to discourage employees from exercising their rights under Title VII.

Id. (internal citations omitted); see also Berle v. Gonzales, 240 Fed.Appx. 622, 2007 WL 1455928 (5th Cir. 2007); Miller v. Southwestern Bell Telephone Co., 51 Fed.Appx. 928, 2002 WL 31415083 (5th Cir. 2002); Barrow v. New Orleans Steamship Assoc., 932 F.2d 473 (5th Cir. 1991).

There is no dispute that the Court has jurisdiction over the allegations of race discrimination contained within the Charge of Discrimination submitted by Frank on February 12, 2003. Because his retaliation claim based on his termination from KCS "grows out of" this Charge, the court has ancillary jurisdiction over this claim, regardless of whether he exhausted his administrative remedies. Accordingly, Defendant's motion to dismiss Frank's Title VII retaliation claim is **DENIED.**

### D. ADEA Claims

Plaintiff Frank's has not opposed Defendant's Motion for Partial Summary Judgment as to the ADEA claims. Even if Frank's had offered an opposition, neither Frank's Charge of Discrimination (quoted above), Supplemental Intake Questionnaire, or the attached Affidavit refer to any claim of discrimination, retaliation, or hostile work environment based on age. Accordingly, Defendant's motion to dismiss Frank's ADEA claim is **GRANTED.**

## III. CONCLUSION

Accordingly, **IT IS ORDERED THAT** the foregoing motion [Record Document 204] be and is hereby **GRANTED in part** and **DENIED in part**. Frank's **Title VII claim of hostile work environment** and his **ADEA claims** are **DISMISSED,** and his Title VII claim of retaliation survives.

**IT IS FURTHER ORDERED THAT** Plaintiff Frank's request for sanctions is hereby **DENIED**. Nothing in the argument submitted by Plaintiffs' counsel in support of the claim for sanctions leads this Court to believe that Defendant unreasonably multiplied the motion practice and proceedings in this case.

**IT IS FURTHER ORDERED THAT** each party shall bear its own costs with respect to the briefing of the instant motions.

Thus done and signed, in Shreveport, Louisiana, this 16th day of September, 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE