**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

---

| | |
|---|---|
| CLARENCE CARGO, *et al.*, | CIVIL ACTION NO. 05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN | MAGISTRATE JUDGE HORNSBY |

---

**MEMORANDUM RULING**

Before the Court is Defendant's Motion for Partial Summary Judgment on Plaintiff Lisa Cloud's Title VII claims of discriminatory discipline and retaliation, Americans with Disabilities ("ADA") claims, and Age Discrimination in Employment ("ADEA") claims. [Record Document 192]. The motion is grounded in a claim that Cloud failed to exhaust administrative remedies with respect to her Title VII claims, ADA claims, and ADEA claims because her Charge of Discrimination did not include such allegations. See id. Plaintiff Cloud states in response that she has exhausted administrative remedies because her Title VII claims of discriminatory discipline and retaliation, ADA claims and ADEA claims are like or reasonably related to the allegations in her Charge of Discrimination. [Record Document 240]. For the reasons that follow, Defendant's Motion for Partial Summary Judgment is **GRANTED in part** and **DENIED in part**. Plaintiff's Title VII claim of discriminatory discipline is **DISMISSED WITH PREJUDICE**, and Plaintiff's Title VII claim of retaliation, ADA claims, and ADEA claims survive.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

## II. LAW AND ANALYSIS

### A. Scope of Exhaustion Requirement

Employment discrimination plaintiffs must exhaust administrative remedies before they may pursue claims in federal court. Taylor v. Books A Million, Inc., 296

F.3d 376, 378-79 (5th Cir. 2002). In order to exhaust his or her administrative remedies, a plaintiff must first file a timely charge with the EEOC and receive a notice of right to sue. Id. A Title VII suit "may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations . . . ." Turner v. St. Luke's Episcopal Health Sys., 2008 WL 706709 at *7 (S.D. Tex. Mar. 14, 2008) (citing Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1992)).

At issue in this case is the scope of the exhaustion requirement, which "has been defined in light of two competing Title VII policies that it furthers." Pacheco v. Mineta, 448 F.3d 783, 788-89 (5th Cir. 2006). As the Fifth Circuit has explained,

> On the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, a less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance . . . . [A]llowing a federal court complaint to proceed despite its loose 'fit' with the administrative charge and investigation is precluded if it would circumvent agency efforts to secure voluntary compliance before a civil action is instituted.

Id. (internal citations and quotation marks omitted). Accordingly, and keeping both considerations in mind, "this court interprets what is properly embraced in review of

a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. (citing Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir. 1970)) (internal quotation marks omitted). In doing so, the Court "engage[s] in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look[s] slightly beyond its four corners, to its substance rather than its label." Id.

As an initial matter, we note that "[a] discriminatory act alleged in a lawsuit but not included in an EEOC charge is not 'like or related to' acts that are alleged in an EEOC charge simply because both are based on the same type of discrimination." Turner, 2008 WL at *8. In order for a particular "alleged discriminatory act to fall within the scope of an EEOC charge, there must be some factual relationship between the act and the acts described in the charge, beyond the fact that both involve the same employer and the same general type of discrimination." Id.

Recently, in Fed. Express Corp. v. Holowecki, — U.S. —, 128 S.Ct. 1147, 1158 (2008), the Supreme Court held that a document filed with the EEOC constitutes a "charge" for the purposes of the Age Discrimination in Employment Act ("ADEA") when "it [can] be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Fed. Express Corp. v. Holowecki, — U.S. —, 128 S.Ct. 1147, 1158 (2008). Other federal district courts have extended

Holowecki to claims filed pursuant to Title VII rather than the ADEA. See Beckham v. Nat'l R.R. Passenger Corp., 590 F. Supp. 2d 82, 86 (D.D.C. 2008) (holding that "because of the similarities between the statutory scheme of the ADEA and Title VII concerning exhaustion of administrative remedies," Holowecki's holding concerning the interpretation of "charge" should be applied in the Title VII context); see also Grice v. Balt. County, Civ. No. 07-1701, 2008 WL4849322, at *4 n. 3 (D.Md. Nov. 5, 2008), and cases cited therein.

In Holowecki, the wording of the Intake Questionnaire at issue stated that the form's purpose is to facilitate "pre-charge filing counseling" and to enable the agency to determine whether it has jurisdiction over potential charges." See 128 S.Ct. at 1159. The Supreme Court suggested that such a form, without more, could not be reasonably construed as a request for the agency to take remedial action. See 128 S.Ct. at 1159 ("Were the Intake Questionnaire the only document before us we might agree its handwritten statements do not request action."). The Supreme Court ultimately found that the Intake Questionnaire constituted a charge, however, because it was "supplemented with a detailed six-page affidavit" asking the agency to "[p]lease force [the defendant] to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment . . . ." Id. at 1159-60.

In the instant matter, to determine which Title VII causes of action Plaintiff has exhausted, Cloud urges this Court to look not only to the substance of her initial

administrative charge filed on November 10, 2004, but also to: (1) a letter she wrote to Janice Thompson, an EEOC investigator, (2) a "Charge Questionnaire" she submitted prior to submitting his Charge of Discrimination, and (3) the EEOC submissions of her co-plaintiffs.

Two of the documents submitted to the EEOC by Plaintiff Cloud and attached to her Opposition to Defendant's Motion for Summary Judgment may properly be considered by this Court. Unquestionably, the Charge of Discrimination filed by Cloud on November 10, 2004, which is her formal administrative complaint stating she was discharged because of her race and gender, can be construed as a request for the agency to take remedial action. Plaintiff Cloud's letter to Janice Thompson, an EEOC Investigator, will also be considered by this Court. The first sentence of Cloud's letter states: "I would like to add to my previous claim some important information that I hope you find helpful in your investigation. I would like to add discrimination based on hostile work environment and age." [Doc. 240, Ex. B7]. It is clear that Cloud sought, by writing the letter to Ms. Thompson, to amend the Charge of Discrimination she previously filed with the EEOC to include additional claims of discrimination. Because the letter presumably was filed after and in an apparent effort to amend the Charge of Discrimination, this Court will construe it as a request for the EEOC to take remedial action.

The question of whether to consider Cloud's the EEOC Form 283 "Charge Questionnaire" is a close one. On one hand is the Supreme Court's suggestion in

Holowecki that "handwritten statements" on an EEOC questionnaire, without more, may not constitute a formal request for agency action. See Holowecki, 128 S. Ct. at 1159. However, the Charge Questionnaire at issue here differs from the Intake Questionnaire the Supreme Court referred to in Holowecki. The Intake Questionnaire in that case stated that it was intended for "pre-charge filing counseling," and to assist the agency in determining "whether it had jurisdiction over "potential charges." See id. The Charge Questionnaire that Cloud submitted to the EEOC states, under the heading "PRINCIPAL PURPOSE" at the bottom of the second page, that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will . . . consider it to be a sufficient charge of discrimination under the relevant statute(s)." [Doc. 240, Ex. B2]. However, Plaintiff Cloud's Charge Questionnaire only alleges discrimination based on race and sex, claims which are included within her formal administrative complaint, and therefore does not contain the only timely written statement of her allegations. Consequently, the Charge Questionnaire cannot be construed as a request for agency action and this Court will not consider it. Compare, Beckham, 590 F. Supp. 2d at 87 (holding that a completed Charge Questionnaire was sufficient to constitute a "charge" of discrimination).

With respect to the EEOC submissions of her co-plaintiffs, Cloud has not identified any authority that would permit this Court to consider those documents as a requests made by Plaintiff Cloud for remedial action.

An analysis of each of Cloud's Title VII claims with reference to statements Plaintiff submitted to the EEOC in her Charge of Discrimination and letter to Ms. Thompson follows.

**B.     Retaliation**

Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against any of its employees (1) because she "has opposed any practice made an unlawful employment practice by this subchapter," or (2) because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Crawford v. Metro. Gov't of Nashville & Davidson, —U.S.—, 129 S.Ct. 846, 850 (2009) (citing 42 U.S.C. § 2000e-3(a).

Plaintiff Cloud contends she suffered different treatment "in retaliation for her opposition to discrimination." [See Doc. 48, ¶ 64(g)]. But Plaintiff's Charge of Discrimination makes no reference to Plaintiff's claim of retaliation. It states simply and in its entirety:

> On February 28, 2004 I was discharged from my job as a clerk.
>
> I was discharged for an email policy violation.
>
> I believe that I was discharged because of my race, Native-America,[1] and my gender, female.

---

[1] Plaintiff Cloud's Charge of Discrimination actually stated that she was discharged because of her "race, black," but she drew a line through "black" and wrote "Native-America" in its place. [Doc. 192, Ex. A].

[Doc. 192, Ex. A].

Plaintiff Cloud's letter to Ms. Thompson, however, contains several allegations that arguably support her claim of retaliation:

> One night around Dec. 2003 there was a chemical type odor that was so strong in the office we began to get sick to our stomach. Instead of us receiving medical attention at that time we was moved to a different room and was made to work 5 more hours before receiving medical attention. Several clerks were very ill several days after that incident. If we missed work that was held against us on time lost. I complained about the treatment we received like all the other Pod Leaders did that night. That was held against me by Mrs. Sheppard.
>
> After speaking with every Supervisor I could meet with I called the EAP. I mean with an EAP worker. I explained to him the problems I was having at work. I had to go through Human Resources to set up this appointment. The next week I was dismissed. The appointment had to go through the Human Resources to get set up.
>
> * * *
>
> I feel that the above action was taken on me out of retaliation for taking up for what was fair and right. I didn't want special treatment for me or anyone. We only wanted to be treated with respect.

[Doc. 240, Ex. B8]. Plaintiff specifically stated in her letter that she believes certain actions were taken against her in "retaliation" for complaining to KCS supervisors. An EEOC investigation concerning her claim of retaliation would "reasonably be expected to grow" out of these allegations. See Pacheco v. Mineta, 448 F.3d 783, 788-89 (5th Cir. 2006). Accordingly, Defendant's motion to dismiss Cloud's Title VII retaliation claim is **DENIED.**

## C. Discriminatory Discipline

To establish a claim of discriminatory discipline, Plaintiff Cloud "must show that white employees were treated differently under circumstances nearly identical to [hers]." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995). Plaintiff Cloud's discriminatory discipline claim is based on the following: (1) she began working for KCS on February 9, 1995 and had satisfactory or better performance, (2) her name was placed on a "hit list" of employees analyzed by race and gender, (3) a supervisor, Marty Jones, told her Barbara Sheppard was looking for a reason to fire her, (4) she was fired on February 28, 2004 for pretextual reasons surrounding her use of company email, and (5) white employees received more favorable treatment despite being found guilty of the same or more egregious violations of email policy. [See Doc.48, ¶ 64].

In this lawsuit, Plaintiff Cloud alleges separate claims of "discriminatory discharge" and "discriminatory discipline." However, reviewing Plaintiff's allegations, it appears the only discipline she complains of is her termination on February 28, 2004. Plaintiff's discriminatory discipline claim is therefore duplicative and cumulative of her discriminatory charge. Accordingly, Defendant's motion to dismiss Plaintiff's discriminatory discipline claim is **GRANTED.**

## D. ADA Claim

The ADA incorporates by references the powers, remedies, and procedures set forth in Title VII, which requires employees complaining of discrimination to file

a charge with the EEOC. See Dao v. Auchan Hypermarket, 96 F.3d 787, 788 (5th Cir. 1996), and cases cited therein. In this lawsuit, Plaintiff claims she "suffered from a disability of anxiety disorder and panic attacks in 2003 and 2004," "she was discriminated against on the basis of her disability or perceived disability," and "was denied reasonable accommodation of her disabilities." [See Doc. 48, ¶ 64]. Although Plaintiff Cloud's Charge of Discrimination, quoted above, does not make a reference to this claim, her letter to Ms. Thompson states:

> My former job was a Pod Leader in which it is a supervisor with clerk status in which we oversee several other clerks. This job has a lot of responsible [sic] in different areas of customer services and transportation needs. When the job first came to be I wasn't interested due to the stress of the job. My job was then abolished given me no other choice but to take the Pod Leader Job for the specific shift and days off that I needed. Management didn't want me on that job due to the fact that I had been ill and had spent several days in the hospital. I assured them that I would try my best abilities to assume the duties of this job. My head supervisor Barbara Sheppard began to put more and more duties on this job after I was placed on it. She grew very hostile with me in the office (in front of other clerks). She would yell at me in front of the whole office. I asked for an informal meeting with her but that was never met. I did meet with Jen Fussell. That meeting was no help and things continue to get worst [sic].
>
> I asked for me to be put on FMLA for my heath problems due to the stress of my job. I was told by Marty Jones my shift supervisor that FMLA wouldn't protect me because Barbara was going to find a way to get rid of me. I never filed FMLA due to that reason.
>
> * * *

> If you need a statement from my doctor that was treating me at the this time he will be happy to provide a statement.

[Doc. 48, Ex. B7].

The Court does not believe these statements alone are sufficient to allege disability or discrimination on the basis of a disability. Nevertheless, the Supreme Court in Holowecki recognized that Title VII, the ADA, and the ADEA set up a "remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." Holowecki, 128 S. Ct. at 1158 (citing EEOC v. Commercial Official Products Co., 486 U.S. 107, 124, 108 S.Ct. 1666 (1988)). *Pro se* litigants have no detailed knowledge of the relevant statutory mechanisms and must be held to a lesser pleading standard. Id. With that principle in mind, it can be assumed that an EEOC investigator would have inquired as to the type of illness Plaintiff suffered, why she was required to stay in the hospital, why she requested FMLA, and the type of treatment her doctor provided during this time. In other words, Plaintiff's claim of discrimination based on disability could reasonably be expected to grow out of the allegations contained within her letter. Accordingly, Defendant's motion to dismiss Plaintiff Cloud's ADA claim is **DENIED.**

### E. ADEA Claim

As discussed above, Plaintiff Cloud's letter to Ms. Thompson stated that she "would like to add [a claim of] discrimination based on hostile work environment and age." [Doc. 240, Ex. B7]. There can be no doubt that Plaintiff Cloud sought to

amend her Charge of Discrimination and specifically allege a claim of discrimination based on age. Accordingly, Defendant's motion to dismiss Plaintiff Cloud's ADEA claim is **DENIED.**

## III. CONCLUSION

Therefore, **IT IS ORDERED THAT** the foregoing motion (Record Document 192) be and is hereby **GRANTED in part** and **DENIED in part**. Plaintiff's **Title VII claim of discriminatory discipline** is **DISMISSED WITH PREJUDICE**, and Plaintiff's Title VII claim of retaliation, ADA claims, and ADEA claims survive.

**IT IS FURTHER ORDERED THAT** Plaintiff Cloud's request for sanctions is hereby **DENIED**. Nothing in the argument submitted by Plaintiffs' counsel in support of the claim for sanctions leads this Court to believe that Defendant unreasonably multiplied the motion practice and proceedings in this case.

**IT IS FURTHER ORDERED THAT** each party shall bear its own costs with respect to the briefing of the instant motions.

Thus done and signed, in Shreveport, Louisiana, this 16th day of September, 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE