UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CLARENCE CARGO, *et al.*, | CIVIL ACTION NO. 05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant's Motion for Partial Summary Judgment on Plaintiff Dennis Mitchell's Title VII claim of hostile work environment. [Record Document 206]. The motion is grounded in a claim that Mitchell failed to exhaust administrative remedies with respect to this claim because the Charge of Discrimination he filed with the EEOC did not include the allegations of hostile work environment that he claims in this suit. See id. Plaintiff Mitchell states in response that he has exhausted administrative remedies because his claim of hostile work environment is like or reasonably related to the allegations in the Charge of Discrimination and other documents that he filed with the EEOC. [Record Document 277]. For the reasons that follow, Defendant's Motion for Partial Summary Judgment is **GRANTED**.

**I. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

## II. LAW AND ANALYSIS

### A. Scope of Exhaustion Requirement

Employment discrimination plaintiffs must exhaust administrative remedies before they may pursue claims in federal court. Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002). In order to exhaust his or her administrative remedies, a plaintiff must first file a timely charge with the EEOC and receive a notice of right to sue. Id. A Title VII suit "may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of

discrimination like or related to the charge's allegations . . . ." Turner v. St. Luke's Episcopal Health Sys., 2008 WL 706709 at *7 (S.D. Tex. Mar. 14, 2008) (citing Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1992)).

At issue in this case is the scope of the exhaustion requirement, which "has been defined in light of two competing Title VII policies that it furthers." Pacheco v. Mineta, 448 F.3d 783, 788-89 (5th Cir. 2006). As the Fifth Circuit has explained,

> On the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, a less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance . . . . [A]llowing a federal court complaint to proceed despite its loose 'fit' with the administrative charge and investigation is precluded if it would circumvent agency efforts to secure voluntary compliance before a civil action is instituted.

Id. (internal citations and quotation marks omitted). Accordingly, and keeping both considerations in mind, "this court interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. (citing Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir. 1970)) (internal quotation marks omitted).

In doing so, the Court "engage[s] in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look[s] slightly beyond its four corners, to its substance rather than its label." Id.

As an initial matter, we note that "[a] discriminatory act alleged in a lawsuit but not included in an EEOC charge is not 'like or related to' acts that are alleged in an EEOC charge simply because both are based on the same type of discrimination." Turner, 2008 WL at *8. In order for a particular "alleged discriminatory act to fall within the scope of an EEOC charge, there must be some factual relationship between the act and the acts described in the charge, beyond the fact that both involve the same employer and the same general type of discrimination." Id.

In the instant matter, to determine which Title VII causes of action Plaintiff has exhausted, Mitchell urges this Court to look not only to the substance of his administrative charge filed on January 26, 2005, but also to the charge questionnaires he submitted to the EEOC on the same date. [Doc. 277, Exs. B1-B4].

A recent Supreme Court decision held that an EEOC "Intake Questionnaire," constituted a "charge" for the purposes of the ADEA when "it [could] be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Fed. Express Corp. v. Holowecki, — U.S. —, 128 S.Ct. 1147, 1158 (2008). Other federal district courts have extended Holowecki to claims filed

pursuant to Title VII rather than the ADEA. See Beckham v. Nat'l R.R. Passenger Corp., 590 F. Supp. 2d 82, 86 (D.D.C. 2008) (holding that "because of the similarities between the statutory scheme of the ADEA and Title VII concerning exhaustion of administrative remedies," Holowecki's holding concerning the interpretation of "charge" should be applied in the Title VII context); see also Grice v. Balt. County, Civ. No. 07-1701, 2008 WL4849322, at *4 n. 3 (D.Md. Nov. 5, 2008), and cases cited therein.

In Holowecki, the wording of the Intake Questionnaire at issue stated that the form's purpose is to facilitate "pre-charge filing counseling" and to enable the agency to determine whether it has jurisdiction over potential charges." See 128 S.Ct. at 1159. The Supreme Court suggested that such a form, without more, could not be reasonably construed as a request for the agency to take remedial action. See 128 S.Ct. at 1159 ("Were the Intake Questionnaire the only document before us we might agree its handwritten statements do not request action."). The Supreme Court ultimately found that the Intake Questionnaire constituted a charge, however, because it was "supplemented with a detailed six-page affidavit" asking the agency to "[p]lease force [the defendant] to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment . . . ." Id. at 1159-60.

In ruling on Defendant's Motion for Partial Summary Judgment as to Plaintiff Michelle Chauvin's Title VII claims of hostile work environment and retaliation, this

Court recognized that Plaintiff Chauvin submitted her Charge Information Form to the EEOC on the same date as her Charge of Discrimination, thus the circumstances under which her Charge Information Form was submitted to the EEOC differed significantly from the Intake Questionnaire referred to in Holowecki. Plaintiff Chauvin's Charge Information Form, however, contained detailed factual allegations that were intended to supplement her Charge of Discrimination. In contrast, Plaintiff Mitchell's "Charge Questionnaire"[1] and "Supplemental Intake Questionnaire"[2] merely restate the allegations contained in his Charge of Discrimination, see infra, and provide no additional information that could be used to supplement his charge or further aid the EEOC in their investigation of his charge. [Doc. 277, Ex. B1-B4]. Furthermore, neither Plaintiff's Mitchell's Charge Questionnaire nor his Supplemental Intake Questionnaire include a request for remedial agency action. [Doc. 277, Exs. B1-B4]. Consequently, the Court may not properly consider Mitchell's charge questionnaires and must look only to the substance of his Charge of Discrimination to determine whether Mitchell exhausted his administrative remedies as to his Title VII claim of hostile work environment.

---

[1] Plaintiff Mitchell stated he was discharged after he ran through a switch, and that he believed this action was taken against him because of "[his] race." [Doc. 277, Ex. B3-B4].

[2] Plaintiff Mitchell simply stated that the reason for his discharge was because "A.J. and Thornell do not like Black" [sic]. [Doc. 277, Ex. B1].

### B. Hostile Work Environment

To prevail on such a claim a Title VII hostile work environment claim based on race, a Plaintiff must show that he or she (1) belongs to a protected group, (2) was subjected to unwelcome harassment, (3) the harassment complained of was based on race, (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002).

Plaintiff argues that his claims of hostile work environment is not exhausted because it is "like or related to" the allegations contained within his administrative charge. However, "THE PARTICULARS" section of Plaintiff's Charge of Discrimination makes no reference to his claim of hostile work environment. It states simply and in its entirety:

> I. On January 12, 2005, I was suspended without pay from my position as an Engineer earning $260.00 per day. On January 21, 2005, I was discharged from the same above position. I had been employed with the above Respondent since October 16, 2000. The Respondent employs more than 100 employees.
>
> II. Ed Laughlin (White) Investigating Officer informed me that I was being suspended pending a formal investigation to ascertain the facts and to determine if I was responsibility [sic] for allegedly permitting my train to run through the Copoly Switch in the Baton Rouge Yard resulting in track damages. On January 21, 2005, I was discharged for the same above violation (code of operating rules).

> III. I believe that I have been discriminated against based under Title VII of the Civil Act of 1964, as amended, based on my race, Black. I believe that my race was the factor in my suspension and discharge because myself, Willie J. Turner and William D. Bates all worked on the same crew on that day and we were all suspended for the same above reason. However, after the in house investigation, William D. Bates who is of the White race only receive forty-five (45) suspension days with a return work date of February 25, 2005, and myself along with Willie J. Turner was discharged.

[Charge of Discrimination, Doc. 206, Ex. A]. In addition, under the heading "DISCRIMINATION BASED ON," Plaintiff checked only the box labeled "Race." Id.

The Court finds that the investigation which could reasonably be expected to grow out of the plain language of Plaintiff's EEOC Charge—alleging merely discriminatory discharge—would not include an investigation of a claim of hostile work environment. Mitchell's claim of discrimination based on race arises from a single isolated incident—his discharge on January 21, 2005. See e.g., Esukpa v. John Eagle Sports City Toyota, 2006 WL 2371329, *2 (N.D. Tex. Aug. 15, 2006) (finding that the investigation that can reasonably be expected to grow out of a charge alleging only discriminatory discharge based on race and age would not include an investigation of claims of failure to promote, retaliation, harassment, or hostile work environment); Chambers v. Principi, 2006 WL 2255261, *3 (S.D. Miss., Aug. 7, 2006) (stating that "where the EEOC alleges only one theory of discrimination," "a plaintiff cannot advance additional grounds of discrimination in her court action related to that charge"). Accordingly, the Court finds that Plaintiff

Mitchell failed to exhaust his administrative remedies as to his Title VII claim of hostile work environment.

## III. CONCLUSION

Therefore, **IT IS ORDERED** that the foregoing motion [Record Document 206] be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED THAT** Plaintiff Mitchell's request for sanctions be and is hereby **DENIED**. Nothing in the argument submitted by Plaintiffs' counsel in support of the claim for sanctions leads this Court to believe that Defendant unreasonably multiplied the motion practice and proceedings in this case.

**IT IS FURTHER ORDERED THAT** each party shall bear its own costs with respect to the briefing of the instant motions.

Thus done and signed, in Shreveport, Louisiana, this 16th day of September, 2009.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE