**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| CLARENCE CARGO, *et al.*, | CIVIL ACTION NO. 05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant's Motion for Partial Summary Judgment on Plaintiff Willie J. Turner's Title VII claims of hostile work environment and discriminatory discipline. [Record Document 199]. The motion is grounded in a claim that Turner failed to exhaust administrative remedies with respect to these claims because the charge of discrimination he filed did not include the allegations of hostile work environment and discriminatory discipline that he claims in this lawsuit. See id. Plaintiff Turner states in response that he has exhausted administrative remedies because his claims of hostile work environment and discriminatory discipline are like or reasonably related to the allegations in the Charge of Discrimination and other documents he filed with the EEOC. [Record Document 245]. For the reasons that follow, Defendant's Motion for Partial Summary Judgment is **DENIED**.

**I. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

## II. LAW AND ANALYSIS

### A. Scope of Exhaustion Requirement

Employment discrimination plaintiffs must exhaust administrative remedies before they may pursue claims in federal court. Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002). In order to exhaust his or her administrative remedies, a plaintiff must first file a timely charge with the EEOC and receive a notice of right to sue. Id. A Title VII suit "may be based, not only upon the specific

complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations . . . ." Turner v. St. Luke's Episcopal Health Sys., 2008 WL 706709 at *7 (S.D. Tex. Mar. 14, 2008) (citing Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1992)).

At issue in this case is the scope of the exhaustion requirement, which "has been defined in light of two competing Title VII policies that it furthers." Pacheco v. Mineta, 448 F.3d 783, 788-89 (5th Cir. 2006). As the Fifth Circuit has explained,

> On the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, a less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance . . . . [A]llowing a federal court complaint to proceed despite its loose 'fit' with the administrative charge and investigation is precluded if it would circumvent agency efforts to secure voluntary compliance before a civil action is instituted.

Id. (internal citations and quotation marks omitted). Accordingly, and keeping both considerations in mind, "this court interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. (citing Sanchez v. Standard

Brands, Inc., 431 F.2d 455, 463 (5th Cir. 1970)) (internal quotation marks omitted). In doing so, the Court "engage[s] in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look[s] slightly beyond its four corners, to its substance rather than its label." Id.

As an initial matter, we note that "[a] discriminatory act alleged in a lawsuit but not included in an EEOC charge is not 'like or related to' acts that are alleged in an EEOC charge simply because both are based on the same type of discrimination." Turner, 2008 WL at *8. In order for a particular "alleged discriminatory act to fall within the scope of an EEOC charge, there must be some factual relationship between the act and the acts described in the charge, beyond the fact that both involve the same employer and the same general type of discrimination." Id.

In the instant matter, to determine which Title VII causes of action Plaintiff has exhausted, Turner urges this Court to look not only to the substance of his initial administrative charge filed on January 26, 2005, but also the "Charge Questionnaire" and "Supplemental Intake Questionnaire" he signed on January 25, 2005 and submitted to the EEOC.

Recently, in Fed. Express Corp. v. Holowecki, — U.S. —, 128 S.Ct. 1147, 1158 (2008), the Supreme Court held that a document filed with the EEOC constitutes a "charge" for the purposes of the Age Discrimination in Employment Act ("ADEA") when "it [can] be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute

between the employer and the employee." Fed. Express Corp. v. Holowecki, — U.S. —, 128 S.Ct. 1147, 1158 (2008).  Other federal district courts have extended Holowecki to claims filed pursuant to Title VII rather than the ADEA.  See Beckham v. Nat'l R.R. Passenger Corp., 590 F. Supp. 2d 82, 86 (D.D.C. 2008) (holding that "because of the similarities between the statutory scheme of the ADEA and Title VII concerning exhaustion of administrative remedies," Holowecki's holding concerning the interpretation of "charge" should be applied in the Title VII context); see also Grice v. Balt. County, Civ. No. 07-1701, 2008 WL4849322, at *4 n. 3 (D.Md. Nov. 5, 2008), and cases cited therein.

In Holowecki, the wording of the Intake Questionnaire at issue stated that the form's purpose is to facilitate "pre-charge filing counseling" and to enable the agency to determine whether it has jurisdiction over potential charges." See 128 S.Ct. at 1159.  The Supreme Court suggested that such a form, without more, could not be reasonably construed as a request for the agency to take remedial action.  See 128 S.Ct. at 1159 ("Were the Intake Questionnaire the only document before us we might agree its handwritten statements do not request action.").  The Supreme Court ultimately found that the Intake Questionnaire constituted a charge, however, because it was "supplemented with a detailed six-page affidavit" asking the agency to "[p]lease force [the defendant] to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment . . . ." Id. at 1159-60.

Only two of the documents submitted to the EEOC by Plaintiff Turner and attached to his Opposition to Defendant's Motion for Summary Judgment may properly be considered by this Court. Unquestionably, the Charge of Discrimination filed by Turner on January 26, 2005, which is his formal administrative complaint, can be construed as a request for the agency to take remedial action. In addition, the EEOC Form 283 "Charge Questionnaire" that Turner signed on January 25, 2005 may also be so construed. The EEOC received the Charge Questionnaire on January 26, 2005, on the same date it received Turner's Charge of Discrimination. [Doc. 245, Ex. B2-3]. Under the heading "PRINCIPAL PURPOSE" at the bottom of the second page, the Charge Questionnaire states that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will ... consider it to be a sufficient charge of discrimination under the relevant statute(s)." See id. Holowecki recognizes that Title VII sets up a "remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." Holowecki, 128 S. Ct. at 1158 (citing EEOC v. Commercial Official Products Co., 486 U.S. 107, 124, 108 S.Ct. 1666 (1988)). "The system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes." Id. Therefore, because the Charge Questionnaire was submitted to the EEOC simultaneously with the Charge of Discrimination and contains detailed factual allegations that are intended to supplement the conclusory allegations contained in his Charge, see infra, the Court

will construe it as a request for the EEOC to take remedial action. See Beckham, 590 F. Supp. 2d at 87 (holding that a completed Charge Questionnaire was sufficient to constitute a "charge" of discrimination).

This Court will not consider the "Supplemental Intake Questionnaire" that Turner filed in support of his Opposition. Although the Supplemental Intake Questionnaire was signed by Turner and received by the EEOC on the same date as the Charge of Discrimination and Charge Questionnaire, it does not include a request for remedial agency action and does not provide any factual allegations other than those alleged in Turner's charge. Consequently, the Court will refer only to Turner's Charge of Discrimination and Charge Questionnaire to determine whether his exhausted his administrative remedies as to his Title VII claims of hostile work environment and discriminatory discipline.

**B. Hostile Work Environment**

To prevail on such a claim a Title VII hostile work environment claim based on race, a Plaintiff must show that he or she (1) belongs to a protected group, (2) was subjected to unwelcome harassment, (3) the harassment complained of was based on race, (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002).

Turner claims in this suit that "[o]n or about December 2003, he was systematically observed and criticized for the work performance of black trainmen (engineers, conductors, brakemen). A.J. Sonnier, superintendent at KSCR, began to subject more severe punishment to blacks than whites creating a hostile work environment." [Third Supp. Compl., Doc. 48, ¶ 88(e)].

"THE PARTICULARS" section of Plaintiff's Charge of Discrimination makes no reference to his claims of hostile work environment. It states simply and in its entirety:

> On January 21, 2005, I was discharged from my job as a brakeman. I was hired by the Respondent on December 22, 2002.
>
> Ed Laughlin (WM), investigator, discharged me for an incident on January 11, 2005 which involved a train running through a switch causing damage to the track in the Baton Rouge yard.
>
> I believe that I was discharged because of my race, black. I was discharged along with another black employee and another white employee involved in the same incident. The white employee has been reinstated to his job and I was not offered reinstatement. On January 17, 2005, another incident occurred involving white remote control operators who caused thousands of dollars of damage and they were not disciplined at all.

[Charge of Discrimination, Doc. 245, Ex. A].

In his Charge Questionnaire, however, he made several allegations that are like or reasonably related to hostile work environment claim:

> 1. Constant threats of losing job.

> 2. Constantly having to look over my shoulders in fear that someone in management is there watching, and later calling you in their office to grill you about something or write you up on some minor safety violation.
>
> 3. Incidents adding up on you by management because your crew may have been involved in an accident, which was not caused by your actions, you still get disciplined and are in fear of losing your job.
>
> 4. Performing work duties according to company work orders and later being called in and told you did not perform duties right, when in fact you did, and when management find out that they made a mistake, never an apology, but they were about to suspend you.

[Charge Questionnaire, Doc. 245, Ex. B2-3].

Based on Turner's statements in the Charge Questionnaire alleging he was constantly threatened with losing his job and that he was in constant fear of being disciplined, the Court concludes that the hostile work environment contentions included in his federal court complaint are "like or related to the charge's allegations," See Turner, 2008 WL 706709 at *7. Accordingly, Defendant's motion to dismiss Turner's Title VII hostile work environment claim is **DENIED**.

### C.     Discriminatory Discipline

To establish a claim of discriminatory discipline, Plaintiff Turner "must show that white employees were treated differently under circumstances nearly identical to [his]." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995). Plaintiff Turner's discriminatory discipline claim is based on the following: (1) he was discriminatorily suspended in August 2003 for 90 days for alleged rule violations, (2)

on January 11, 2005, he was removed from service pending an investigation after his crew ran through the "Brake Line Switch" causing minimal damage, and (3) he was discriminatorily terminated on January 21, 2005]. [Doc.48, ¶ 88].

In this lawsuit, Plaintiff Turner alleges separate claims of "discriminatory discharge" and "discriminatory discipline" as a result of his termination on January 21, 2005 and his suspension in August 2003. Based on Turner's statements in the Charge Questionnaire, see supra, alleging he was in constant fear of being disciplined, the Court concludes that the discriminatory discipline contentions included in his federal court complaint are "like or related to the charge's allegations," See Turner, 2008 WL 706709 at *7. Accordingly, Defendant's motion to dismiss Turner's Title VII discriminatory discipline claim is **DENIED**.

## III.  CONCLUSION

Accordingly, **IT IS ORDERED THAT** the foregoing motion [Record Document 199] be and is hereby **DENIED**.

**IT IS FURTHER ORDERED THAT** Plaintiff Turner's request for sanctions be and is hereby **DENIED**. Nothing in the argument submitted by Plaintiffs' counsel in support of the claim for sanctions leads this Court to believe that Defendant unreasonably multiplied the motion practice and proceedings in this case.

**IT IS FURTHER ORDERED THAT** each party shall bear its own costs with respect to the briefing of the instant motions.

Thus done and signed, in Shreveport, Louisiana, this 16th day of September, 2009.

                                                      S. MAURICE HICKS, JR.
                                        UNITED STATES DISTRICT JUDGE