**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| CLARENCE CARGO, *et al.*, | CIVIL ACTION NO. 05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant's Motion for Partial Summary Judgment on Plaintiff Cory Walker's Title VII claims of hostile work environment, failure to promote, and retaliation. [Record Document 187]. The motion is grounded in a claim that Walker failed to exhaust administrative remedies with respect to his Title VII claims of hostile work environment, failure to promote, and retaliation because these claims were not included in the Charge of Discrimination that he filed with the EEOC on November 21, 2004. See id. Plaintiff Walker states in response that he has exhausted administrative remedies because his Title VII claims are "like or reasonably related" to the allegations in his Charge of Discrimination and the other documents that he filed with the EEOC. [Record Document 231]. For the reasons that follow, Defendant's Motion for Partial Summary Judgment is **GRANTED in part** and **DENIED in part.** Plaintiff Walker's Title VII claim of failure to promote is **DISMISSED**, and his Title VII claims of hostile work environment and retaliation survive.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

## II. LAW AND ANALYSIS

### A. Scope of Exhaustion Requirement

Employment discrimination plaintiffs must exhaust administrative remedies before they may pursue claims in federal court. Taylor v. Books A Million, Inc., 296

F.3d 376, 378-79 (5th Cir. 2002). In order to exhaust his or her administrative remedies, a plaintiff must first file a timely charge with the EEOC and receive a notice of right to sue. Id. A Title VII suit "may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations . . . ." Turner v. St. Luke's Episcopal Health Sys., 2008 WL 706709 at *7 (S.D. Tex. Mar. 14, 2008) (citing Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1992)).

At issue in this case is the scope of the exhaustion requirement, which "has been defined in light of two competing Title VII policies that it furthers." Pacheco v. Mineta, 448 F.3d 783, 788-89 (5th Cir. 2006). As the Fifth Circuit has explained,

> On the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, a less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance . . . . [A]llowing a federal court complaint to proceed despite its loose 'fit' with the administrative charge and investigation is precluded if it would circumvent agency efforts to secure voluntary compliance before a civil action is instituted.

Id. (internal citations and quotation marks omitted). Accordingly, and keeping both considerations in mind, "this court interprets what is properly embraced in review of

a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. (citing Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir. 1970)) (internal quotation marks omitted). In doing so, the Court "engage[s] in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look[s] slightly beyond its four corners, to its substance rather than its label." Id.

As an initial matter, we note that "[a] discriminatory act alleged in a lawsuit but not included in an EEOC charge is not 'like or related to' acts that are alleged in an EEOC charge simply because both are based on the same type of discrimination." Turner, 2008 WL at *8. In order for a particular "alleged discriminatory act to fall within the scope of an EEOC charge, there must be some factual relationship between the act and the acts described in the charge, beyond the fact that both involve the same employer and the same general type of discrimination." Id.

A recent Supreme Court decision held that an EEOC "Intake Questionnaire," constitutes a "charge" for the purposes of the ADEA when "it [can] be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Fed. Express Corp. v. Holowecki, — U.S. —, 128 S.Ct. 1147, 1158 (2008); see also Beckham v. Nat'l R.R. Passenger Corp., 590 F. Supp. 2d 82, 86 (D.D.C. 2008) (noting that "because of the similarities between the statutory scheme

of the ADEA and Title VII concerning exhaustion of administrative remedies," Holowecki's holding concerning the interpretation of "charge" should be applied in the Title VII context) (citing Grice v. Balt. County, Civ. No. 07-1701, 2008 WL4849322, at *4 n. 3 (D.Md. Nov. 5, 2008).

In Holowecki, the Supreme Court implied that a completed Intake Questionnaire, without more, could not be reasonably construed as a request for the agency to take remedial action. See 128 S.Ct. at 1159 ("Were the Intake Questionnaire the only document before us we might agree its handwritten statements do no request action." Id.). The Supreme Court ultimately found that the Intake Questionnaire constituted a charge, however, because it was "supplemented with a detailed six-page affidavit" asking the agency to "[p]lease force [the defendant] to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment . . . ." Id. at 1159-60.

In the instant matter, to determine which Title VII causes of action Plaintiff has exhausted, Walker urges this Court to look not only to the substance of his administrative charge signed on November 21, 2004, but also to: (1) the letter he sent to Greg Juge on September 16, 2004, (2) the "Supplemental Intake Questionnaire" he submitted to the EEOC on January 3, 2005, and (3) a document titled "Irregularities that Need Special Attention." [Doc. 231, Exs. B, C].

Only two of these documents can reasonably be construed as a request for the agency to take remedial action. Plaintiff's letter addressed to Greg Juge at the

EEOC, signed on September 16, 2004, states: "I, Cory Denard Walker, Sr., hereby file a formal charge of discrimination against [KCS]."  [Doc. 231, Ex. B]. Unquestionably, Walker was attempting to assert a claim of discrimination against KCS by filing this letter and it may be construed as a request for the EEOC to take remedial action.  Walker's Supplemental Intake Questionnaire may also be so construed.  Written on the facsimile cover letter is: "Please Add to Original Claim." [Doc. 231, Ex. C1].  On the top of the first page of the Supplemental Intake Questionnaire, Walker wrote: "Please amend [sic] to my claim." [Doc. 231, Ex. B2]. The questionnaire includes detailed factual allegations that were not previously made known to the EEOC through his letter or his Charge of Discrimination.  See id. It is clear that Walker sought, by filing the Supplemental Intake Questionnaire, to amend the Charge of Discrimination he previously filed with the EEOC to include additional Title VII claims of discrimination.  Thus, because the Supplemental Intake Questionnaire was filed after and in an apparent effort to amend the Charge of Discrimination, this Court will also construe it as a request for the EEOC to take remedial action.  See Beckham, 590 F. Supp. 2d at 87 (holding that a completed Charge Questionnaire was sufficient to constitute a "charge" of discrimination).

This Court will not consider the other document Walker filed in support of his Opposition.  The document titled "Irregularities that Need Special Attention" is unsigned, undated, and in no way indicates either the addressee or the recipient of the document.  Moreover, the document does not contain a request for the agency

to take remedial action. Consequently, this document will not be considered as this Court determines whether Plaintiff Walker exhausted his administrative remedies as to his Title VII claims of hostile work environment, failure to promote, and retaliation.

An analysis of each of these claims with reference to statements Plaintiff submitted to the EEOC in his Charge of Discrimination, letter to Greg Juge, and Supplemental Intake Questionnaire follows.

**B.    Hostile Work Environment**

To prevail on such a claim a Title VII hostile work environment claim based on race, a Plaintiff must show that he or she (1) belongs to a protected group, (2) was subjected to unwelcome harassment, (3) the harassment complained of was based on race, (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002).

Walker claims in this suit that he was subjected "to a hostile work environment based on race including, but not limited to the following incidents": (i) he was subjected to an excessive number of random drug tests that white employees were not subject to, and (ii) he was subjected to racially hostile demeanor by Brian Boaz, Tom Hadel, and Mark Redd, all in KCSR's and KCS's control or management. [No. 06-572, Doc. 51, ¶ 104]. Walker argues that his claim of hostile work environment

is not exhausted because it is like or reasonably related to the allegations contained his charge and the other documents he filed with the EEOC.

Neither Walker's letter to Greg Juge nor his formal Charge of Discrimination makes a reference to his claim of hostile work environment. In the letter, Walker alleges only that he "was terminated from the company on February 8, 2004 based on [his] race." [Doc. 231, Ex. B3]. "THE PARTICULARS" section of Walker's Charge of Discrimination states simply and in its entirety:

> On February 8, 2004 I was discharged from my job as an engineer.
>
> I was discharged for the following rule violations:
> 1.13 - Reporting and complying with instructions,
> 1.5 - Drugs and Alcohol use or possession,
> 1.6 - Insubordinate conduct, and,
> 1.15 - Duty Reporting or Absence.
>
> I believe that I was discharged because of my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended. A white employee, Brady Alsup, was in the same situation which led to my discharge and he was not discharged.

[Charge of Discrimination, Doc. 231, Ex. A].

On Walker's Supplemental Intake Questionnaire, however, in the space provided to mark which categories he believed the discrimination related to, he placed a check mark next to "Race," "Age," and "Other." [Doc. 231, Ex. C3]. In the space provided to explain his choices, Walker wrote: "Hostile Work Environment." In addition, Walker also wrote that "[t]here seems to be a pattern of discrimination."

Based on this questionnaire and Walker's express reference to a hostile work environment, the Court conduces that an EEOC investigation regarding a claim of hostile work environment could reasonably be expected to grow out of the allegations in his Supplemental Intake Questionnaire. Accordingly, Defendant's motion to dismiss Walker's Title VII hostile work environment claim is **DENIED**.

### C. Failure to Promote

To establish a prima facie case of discrimination based on failure to promote, Plaintiff must show that: (1) he belongs to a protected class, (2) he was qualified for the job he sought, (3) despite his qualifications, he was rejected, and (4) after his rejection, the position remained open and the employer continued to seek applicants from persons of Plaintiff's qualifications. Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 324 (5th Cir. 2002) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d. 668 (1973), Bennett v. Total Minatome Corp., 138 F.3d 1053, 1060 (5th Cir. 1998)).

In this lawsuit, Walker claims he "was denied opportunity for promotion from 1994 to the present." [No. 06-572, Doc. 51, ¶ 101]. Walker's letter to Greg Juge and his Charge of Discrimination, quoted above, make no reference to his claim of failure to promote. Nor does Walker's Supplemental Intake Questionnaire contain any allegations that are like or reasonably related to a claim of failure to promote. The only statement that makes a reference to a promotion (or lack thereof) is on the second page of the document, where Walker wrote: "1994 - I was promoted to a

foreman - After 4 days they took it from me and gave it to another white male." [Doc. 231, Ex. C3]. However, the Court finds this statement is contrary to Plaintiff's claim because he states that he was *promoted* in 1994. Any EEOC investigation that could reasonably be expected to grow from this allegation would inquire as to the reasons given for his demotion; it would not include an investigation into a claim of *failure to promote* when he was in fact *promoted*. Accordingly, Defendant's motion to dismiss Walker's Title VII failure to promote claim is **GRANTED.**

### D. Retaliation

Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against any of its employees (1) because he "has opposed any practice made an unlawful employment practice by this subchapter," or (2) because he "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Crawford v. Metro. Gov't of Nashville & Davidson, —U.S.—, 129 S.Ct. 846, 850 (2009) (citing 42 U.S.C. § 2000e-3(a).

Plaintiff Walker asserts "a cause of action for discrimination based on a protected activity"—namely, that he was retaliated against for filing an EEOC charge in 1998 after he was accused of falsifying time. [No. 06-572, Doc. 51, ¶ 101]. Neither Walker's letter to Greg Juge nor his Charge of Discrimination, quoted above, reference his claim of retaliation. However, on his Supplemental Intake Questionnaire, Walker wrote: "Hostile Work Environment - Prior EEOC filing in 1998 under false pretenses. . . ." [Doc. 231, Ex. C3]. On the next page, Walker also

wrote: "1999 I did file an EEOC claim, no action was taken due to the fact that I was allowed to return to work." Based on these statements, the Court concludes that an EEOC investigation regarding a claim of retaliation could reasonably be expected to grow out of the allegations in his Supplemental Intake Questionnaire. Accordingly, Defendant's motion to dismiss Walker's Title VII retaliation claim is **DENIED**.

## III. CONCLUSION

Accordingly, **IT IS ORDERED THAT** the foregoing motion [Record Document 187] be and is hereby **GRANTED in part** and **DENIED in part.** Plaintiff Walker's Title VII claim of failure to promote is **DISMISSED**, and his Title VII claims of hostile work environment and retaliation survive.

**IT IS FURTHER ORDERED THAT** Plaintiff Walker's request for sanctions be and is hereby **DENIED**. Nothing in the argument submitted by Plaintiffs' counsel in support of the claim for sanctions leads this Court to believe that Defendant unreasonably multiplied the motion practice and proceedings in this case.

**IT IS FURTHER ORDERED THAT** each party shall bear its own costs with respect to the briefing of the instant motions.

Thus done and signed, in Shreveport, Louisiana, this 16th day of September, 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE