UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CLARENCE CARGO, *et al.*, | CIVIL ACTION NO. 05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN RAILWAY COMPANY | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

Before this Court is Defendant's Motion for Partial Summary Judgment on Plaintiff Derek Lamette's ADA claims, ADEA claims, and Title VII claims of hostile work environment, failure to train, retaliation and discriminatory discipline. [Record Document 478]. The motion is grounded in a claim that Lamette failed to exhaust administrative remedies with respect to these claims because the charge of discrimination he filed did not include the allegations of hostile work environment, failure to train, retaliation or discriminatory discipline that he claims in this lawsuit. See id. In response, Plaintiff Lamette concedes there was no exhaustion as to his ADA claims, ADEA claims, or Title VII claims of retaliation, but argues his Title VII claims of hostile work environment, failure to train, and discriminatory discipline are like or reasonably related to the allegations in the Charge of Discrimination and other documents he filed with the EEOC. [Record Document 480]. For the reasons that follow, Defendant's Motion for Partial Summary Judgment is **GRANTED in part** and **DENIED in part.**

**I. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

## II. LAW AND ANALYSIS

### A. Scope of Exhaustion Requirement

Employment discrimination plaintiffs must exhaust administrative remedies before they may pursue claims in federal court. Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002). In order to exhaust his or her administrative remedies, a plaintiff must first file a timely charge with the EEOC and receive a notice of right to sue. Id. An employment discrimination suit "may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations . . . ." Turner v. St. Luke's Episcopal Health Sys., 2008

WL 706709 at *7 (S.D. Tex. Mar. 14, 2008) (citing Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1992)).

At issue in this case is the scope of the exhaustion requirement, which "has been defined in light of two competing Title VII policies that it furthers." Pacheco v. Mineta, 448 F.3d 783, 788-89 (5th Cir. 2006). As the Fifth Circuit has explained,

> On the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, a less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance . . . . [A]llowing a federal court complaint to proceed despite its loose 'fit' with the administrative charge and investigation is precluded if it would circumvent agency efforts to secure voluntary compliance before a civil action is instituted.

Id. (internal citations and quotation marks omitted). Accordingly, and keeping both considerations in mind, "this court interprets what is properly embraced in review of [Title VII, ADA, and ADEA claims] somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. (citing Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir. 1970)) (internal quotation marks omitted). In doing so, the Court "engage[s] in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look[s] slightly beyond its four corners, to its substance rather than its label." Id.

As an initial matter, we note that "[a] discriminatory act alleged in a lawsuit but not included in an EEOC charge is not 'like or related to' acts that are alleged in an EEOC charge simply because both are based on the same type of discrimination." Turner, 2008 WL at *8. In order for a particular "alleged discriminatory act to fall within the scope of an EEOC charge, there must be some factual relationship between the act and the acts described in the charge, beyond the fact that both involve the same employer and the same general type of discrimination." Id.

In Fed. Express Corp. v. Holowecki, 542 U.S. 389, 402, 128 S.Ct. 1147, 1158, 170 L.Ed.2d 10 (2008), the Supreme Court held that a document filed with the EEOC constitutes a "charge" for the purposes of the Age Discrimination in Employment Act ("ADEA") when "it [can] be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Other federal district courts have extended Holowecki to claims filed pursuant to Title VII and the ADA. See Beckham v. Nat'l R.R. Passenger Corp., 590 F. Supp. 2d 82, 86 (D.D.C. 2008) (holding that "because of the similarities between the statutory scheme of the ADEA and Title VII concerning exhaustion of administrative remedies," Holowecki's holding concerning the interpretation of "charge" should be applied in the Title VII context); see also Grice v. Balt. County, Civ. No. 07-1701, 2008 WL4849322, at *4 n. 3 (D.Md. Nov. 5, 2008), and cases cited therein.

In Holowecki, the wording of the Intake Questionnaire at issue stated that the form's purpose is to facilitate "pre-charge filing counseling" and to enable the agency to determine whether it has jurisdiction over potential charges." See 128 S.Ct. at 1159. The Supreme Court suggested that such a form, without more, could not be reasonably construed as a

request for the agency to take remedial action. See 128 S.Ct. at 1159 ("Were the Intake Questionnaire the only document before us we might agree its handwritten statements do not request action."). The Supreme Court ultimately found that the Intake Questionnaire constituted a charge, however, because it was "supplemented with a detailed six-page affidavit" asking the agency to "[p]lease force [the defendant] to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment . . . ." Id. at 1159-60.

In the instant matter, to determine which causes of action Plaintiff has exhausted, Lamette urges this Court to look not only to the substance of his initial administrative charge filed on February 25, 2005, but also the "Charge Questionnaire" and the "Charging Party Discharge Questionnaire" he signed and submitted to the EEOC on November 15, 2004, as well as the undated, type-written letter he purportedly submitted to the EEOC on that same date. See Record Document 480, Exhibits 2 and 3. But even if the Court were to assume *arguendo* that the additional documentation contained the necessary factual allegations to support Title VII claims of hostile work environment, failure to train, and discriminatory discipline, the additional documentation submitted to the EEOC and attached to his Opposition to Defendant's Motion for Summary Judgment cannot be properly considered by this Court. Each of these documents were submitted three months prior to Lamette's formal administrative charge; thus, any claims stated therein that were not included in the administrative charge, or that cannot reasonably be expected to grow out of the charge, must be considered waived. See Novitsky v. American Consulting Engineers, L.L.C., 196 F.3d 699, 702 (7th Cir. 1999) (stating that under Title VII, "it is the

charge rather than the questionnaire that matters.  Only the charge is sent to the employer, and therefore only the charge can affect the process of conciliation.").

The Court acknowledges that the Charge Questionnaire submitted to the EEOC by Lamette states, under the heading "PRINCIPAL PURPOSE" at the bottom of the second page, that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will . . . consider it to be a sufficient charge of discrimination under the relevant statute(s)."   [Record Document 480, Exhibit 3].  However, Plaintiff Lamette's Charge Questionnaire simply alleges he was discharged because of his race, the same claim which is alleged on his formal administrative complaint.  See id.  Consequently, because the Charge Questionnaire does not contain the only timely written statement of his allegations and thus cannot be construed as a request for agency action, the Court may look only to the substance of Lamette's formal administrative Charge of Discrimination in determining whether Lamette exhausted his administrative remedies as to his Title VII claims of hostile work environment, failure to train, and discriminatory discipline.  Compare, Beckham, 590 F. Supp. 2d at 87 (holding that a completed Charge Questionnaire was sufficient to constitute a "charge" of discrimination).

B.   **Plaintiff's Charge of Discrimination**

Plaintiff argues he has exhausted his administrative remedies as to his claims of hostile work environment, failure to train, discriminatory discipline, and discriminatory discharge because his charge can be construed to encompass all claims arising out of his entire 60-day probationary period. [Record Document 480]. "THE PARTICULARS" section of Plaintiff's Charge of Discrimination states, in its entirety:

> On October 10, 2004, I was discharged from my Conductor position. Prior to my discharge, I was given five days of remedial training but was not paid for those days.
>
> I was given five days of remedial training for an incident in Vicksburg. Upon completion of my training, I was discharged allegedly for being unsafe.
>
> I believe that I was denied pay for remedial training and discharged because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended, in that Whites in similar situations were not treated in this manner.

[Record Document 482, Exhibit 4].

Unlike some of Lamette's co-plaintiffs, Layette's claims of racial discrimination do not arise from a single isolated incident; rather, he refers to "an incident in Vicksburg," "remedial training," denial of pay, and to his October 10, 2004 discharge. Compare Record Document 450 (wherein the Court found that the investigation which could reasonably be expected to grow out of Plaintiff Johnson's EEOC Charge—which merely alleged that he was discharged because of his race on February 28, 2004—would not include an investigation of claims of hostile work environment or retaliation); Record Document 453 (wherein the Court found that the investigation which could reasonably be expected to grow out of Plaintiff Melder's EEOC Charge—which merely alleged that he was discharged because of his race on January 21, 2005—would not include an investigation of a claim of hostile work environment); Record Document 455 (wherein the Court found that the investigation which could reasonably be expected to grow out of Plaintiff Sterling's EEOC Charge—which merely alleged that he was suspended because of his race on January 5, 2005—would not include an investigation of claims of hostile work environment or

retaliation); Record Document 461 (wherein the Court found that the investigation which could reasonably be expected to grow out of Plaintiff Wilson's EEOC Charge—which included only allegations of failure to promote in May 2004 and discriminatory suspension in November 2004—would not include an investigation of claims of hostile work environment, retaliation, or denial of transfer). Thus, the investigation which would be expected to grow out of the plain language of Plaintiff Lamette's EEOC charge could not reasonably be limited to his October 10, 2004 discharge.

Ordinarily, the scope of a reasonable investigation does not encompass all potential claims of an employee during his entire term of employment. Here, however, Plaintiff's entire term of employment with KCS was limited as his employment never extended beyond his initial 60-day probationary period. Under these circumstances, and recognizing that Plaintiff's allegations are not limited to a single, isolated incident, the Court finds that Plaintiff's Title VII claims of hostile work environment, failure to train, discriminatory discipline, and discriminatory discharge are inextricably intertwined and within the scope of the investigation which could reasonably be expected to grow from his EEOC Charge.

### III. CONCLUSION

Accordingly, finding Plaintiff has exhausted his administrative remedies as to his Title VII claims of hostile work environment, failure to train, and discriminatory discipline,

**IT IS ORDERED** that the Defendant's Motion for Partial Summary Judgment on Plaintiff Derek Lamette's ADA claims, ADEA claims, and Title VII claims of hostile work environment, failure to train, retaliation and discriminatory discipline [Record Document 478] be and is hereby **GRANTED in part** and **DENIED in part.**

**IT IS FURTHER ORDERED** that Plaintiff Lamette's ADA claims, ADEA claims, and Title VII claim retaliation be and are hereby **DISMISSED WITH PREJUDICE.** Plaintiff Lamette's Title VII claims of hostile work environment, failure to train, and discriminatory discipline remain.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 13th day of July, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE