# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| CLARENCE CARGO, *et al.*, | CIVIL ACTION NO.  05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN RAILWAY COMPANY | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment on Plaintiff Charlie Stinson's remaining employment claims (Record Document 498) filed by Defendant Kansas City Southern Railway Company ("KCS").  The motion is grounded in the argument that "Stinson's claims are preempted by the Railway Labor Act, barred by the statutes of prescription and limitations, and/or fail on substantive grounds." See id.  Plaintiff Stinson states in response that his "claim boils down to a hostile work environment claim." [Record Document 521 at 1].  From this Court's review of Plaintiff's responsive pleadings, Plaintiff has conceded his state law claims, his claims under the Louisiana Employment Discrimination Law, and his Section 1981 claims for failure to promote, retaliation, disparate treatment and disparate impact.  See Record Document 521-1.  Instead, Plaintiff argues that "the evidence clearly points to a pervasive pattern of a hostile work environment of racial discrimination recurring over his work life culminating in the year he retired." [Record Document 521 at 1].  For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED.**  Plaintiff Stinson's state law claims, his claims under

the Louisiana Employment Discrimination Law, and his Section 1981 claims for failure to promote, retaliation, disparate treatment, hostile work environment and disparate impact are **DISMISSED**.

## FACTUAL BACKGROUND

Charlie Stinson ("Stinson") is an African-American male. [Record Document 498-2 at 1]. He began working for KCS on July 1, 1969 as a switchman. [Record Document 498-2 at 2]. On January 15, 1979, Stinson transferred to New Orleans and was promoted to engineer trainee. [Record Document 498-2 at 3]. According to Stinson's personnel file, he was promoted to locomotive engineer on July 13, 1979. [Record Document 498-5 at 51]. It appears Stinson was never a conductor. From the briefs submitted, the position of engineer is a step above a conductor in terms of work placement. Stinson held the position of engineer from that time until he retired on November 30, 2002. [Record Document 498-2 at 5]. Stinson filed suit with a number of other KCS employees on September 27, 2005, alleging KCS committed various discriminatory acts during the Plaintiffs' employment. See Docket Sheet 05-cv-4298 (EDLA–Ball v. Kansas City Southern Railway Co.). On December 21, 2005, Stinson and the other Plaintiffs in the Ball matter were added as Plaintiffs in this present action. [Record Document 48]. Subsequently, after preliminary motion practice, the Plaintiffs were broken into 19 trial groups. [Record Document 492]. The pairing was based on the Plaintiffs' respective claims. Stinson was placed in Group 2 with Jesse Frank and Dennis Mitchell because all three worked as engineers on the train crew in New Orleans. [Record Document 492].

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  Quality Infusion Care, Inc. v. Health Care Serv. Corp., — F.3d —, No. 09-20188, 2010 WL 5188825, at *2 (5th Cir. Dec. 23, 2010).  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).  If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## LAW AND ANALYSIS

### A.    Statute of Limitations

According to the Defendant, "'hostile work environment, wrongful termination, and failure-to-transfer' claims were not available until after the Civil Rights Act of 1991 was enacted, and therefore, such claims are governed by the four-year statute of limitations.

---

[1]The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

See Jones [v. R.R. Donnelley & Sons Co.,] 541 U.S. [369,] at 383 [(2004)]." [Record Document 498-1 at 17].   However, "KCSR respectfully requests that the Court enter summary judgment in its favor with regard to any claims arising prior to September 27, 2001." Id. at 17.

Stinson retired from KCSR on November 30, 2002. [Record Document 498-5 at 69].

Stinson alleges *inter alia* that:

> 6.   The hostile work environment continued to the very day I retired in November 2002.
> 7.   The custom of the railroad was to let retirees go home early on the day they retired.
> 8.   The last day I worked was with Jake Baraco and Jack Pinnero, both white men who were told they could leave after working four hours, from 8:00 a.m. until 12:00 p.m.
> 9.   Baraco and Pinnero told me they did not ask for the time off early.
> 10.  I was told by some white guys on the radio that they were released early.
> 11.  The lady who took over the yardmaster shift said, "Stinson, you mean to tell me, as long as you have been out here and how you work for these people, that's the way they going to do you and they let other people's work go home."  Next, the lady that took over on that shift came to me and said, "Stinson, you mean to tell me you still out here?"  She said, "Go home.  Put that engine up and go home.  If anything happens, I'll take responsibility for it."

[Record Document 521-2 at 2-3].  Therefore, Stinson has properly alleged an instance of a hostile act occurring within the four-year statute of limitations.  Consequently, this Court is bound to follow the standard established by the United States Supreme Court in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  In Morgan the Court stated:

> It is precisely because the entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as have some of the Circuits, that the plaintiff may

not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct. The statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability. And the statute does not contain a requirement that the employee file a charge prior to 180 or 300 days "after" the single unlawful practice "occurred." Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.

Id. at 117.[2]  Therefore, this Court finds that an alleged act occurred within the applicable statute of limitations, and this Court will review Stinson's entire thirty-two year career with KCSR to determine if a hostile work environment based on race existed.[3]

### B.    Hostile Work Environment

To establish his claim for a hostile work environment, Stinson must show that:

1) he belongs to a protected class; 2) he was subjected to unwelcome harassment; 3) the harassment was based on race; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action.

Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir.2005). Furthermore, he must show that the conduct was "severe or pervasive." Id.  The alleged discrimination must have

---

[2]In the Fifth Circuit, courts use the same standard to analyze hostile work environment claims brought under § 1981 as they do when they are brought under Title VII. Lawrence v. University of Texas Med. Branch, 163 F.3d 309, 311 (5th Cir. 1999).

[3]According to the employment records provided by KCSR and undisputed by Plaintiff, Charlie Stinson, Stinson began working at KCSR on July 1, 1969.  See Record Document 498-5 at 47.

"created an environment that a reasonable person would find hostile or abusive." Id. Courts in this Circuit determine hostile environment considering the totality of the circumstances. Factors to consider include: "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." Id .; see Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Although "[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive" to support evidence of a Title VII violation, DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir.1995), "simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges" that can survive summary judgment. Hockman v. Westward Communications, LLC, 407 F.3d 317, 328 (5th Cir.2004). A plaintiff's own subjective beliefs, however genuine, cannot form the basis of judicial relief. Nichols v. Lewis Grocer, 138 F.3d 563 (5th Cir.1998); Little v. Republic Refining Co., 924 F.2d 93, 95 (5th Cir.1991).

The Court has reviewed Charlie Stinson's deposition testimony and his sworn declaration that was attached to his opposition to the present Motion for Summary Judgment.[4] [Record Documents 498-4 and 521-2]. The jurisprudence of this Circuit establishes a very high burden for a plaintiff advancing a claim for a hostile work environment on racial grounds. From this Court's review of the total record, Stinson has failed to meet that burden. During Stinson's thirty-two year career with KCSR he only

---

[4]This sworn declaration is the subject of a pending Motion to Strike. [Record Document 544]. For purposes of this Motion, and out of an abundance of caution, this Court will consider the allegations contained within the sworn declaration.

mentions two specific instances where a racial epithet was used in his presence.  See Record Document 498-4 at 41-44.  The deposition is unclear as to whether or not any epithet was directed at him.  Of interest to the Court is when Stinson brought the second episode to the attention of his superiors, the offending party was counseled and never uttered another epithet. [Record Document 498-4 at 42-43].  Stinson also alleges, that one day while he was eating lunch in the "Beanery," a company official, A.J. Sonnier, entered and spoke with Caucasian employees but not to him. [Record Document 498-4 at 18].  Stinson confronted him on this and the official responded to him that he did not want to disturb his lunch.  Id.

Stinson states in his sworn declaration that "incidents of discrimination and hostility in the work environment were both severe and pervasive and resulted in an abusive working environment." [Record Document 521-2 at 2].   Even assuming Stinson's allegations to be true, they fail to rise to the required level of "severe or pervasive."

Stinson's first alleged incident of perceived harassment dates back to his first day at KCSR when "Mr. Hicks told me he was hiring me for one reason, that was when he hired a white man, he had to hire a black because the federal government had this rule." Id. The total record is devoid of any other interactions between Stinson and Hicks during his  thirty-two year career with KCSR.  Even his last day of work allegedly was hostile because on his last day two Caucasian males (Jake Baraco and Jack Pinnero) were allowed to leave work at noon and he had to keep on working. [Record Document 521-2 at 2].  Upon further reading, his sworn declaration reveals that a yardmaster let him leave early on his last day. [Record Document 521-2 at 2-3].  His descriptions of incidents attempt to paint racial animus but the Court cannot find racial animus.  ("The Supervisor told me I did not

appreciate my job, implying that I would lose my job if I did not return to work," and an incident involving the transportation of rocket motors and a dispute over who could use the main line the dispatcher said to Stinson "I know what happened."  See Record Document 521-2 at 5 and 7]).  Further, Stinson indicates that African-American workers were not allowed off for holidays, but Caucasian workers were. [Record Document 521-1 at 3]. Again, under further exploration this former practice was changed through the grievance process involving his union.  Id.

This Court also notes that in Stinson's resignation letter describing his time at KCSR, he states, "For me, it has been an enjoyable experience because of all the people that I have worked for and with throughout the years.  They are the best anywhere, and I am going to miss them very much.  I consider them my second family."[5]

Stinson also alleges unfair discipline procedures but Stinson's file is completely clear for the last thirteen years before he retired.  In KCSR's Statement of Material Facts they lay out Stinson's entire disciplinary record:

> During his lengthy tenure with KCSR, Stinson received only eight disciplinary actions: (1) a reprimand in October 1970 for failing to show up for his assigned shift; (2) a two-day suspension in December 1970 for failing to secure a handbrake, which resulted in a derailment; (3) a three- day suspension in December 1971 for violating a transportation rule; (4) a reprimand in March 1972 for failing to show up for his assigned shift; (5) a five-day suspension in September 1978 for failing to show up for his assigned shift; (6) a fifteen-day suspension in June 1982 for violating Section O of KCSR Timetable No. 1; (7) a reprimand in June 1983 for failing to

---

[5]Stinson attempts to discount the tenor and language of this letter in his sworn declaration by stating he copied the letter and by the time he retired he was "so used to working within KCSR's racist system that [he] automatically went along with whatever was recommended to [him]." [Record Document 521-2 at 9].

show up for his assigned shift; and (8) a five-day suspension
in November 1989 for failing to check the locomotives, which
caused damage to the wheels of both locomotives. (Personnel
Record Files, attached as Ex. 7; Discipline Bulletin No. 39,
attached as Ex. 8; Letter dated 11/6/89, attached as Ex. 9;
Devenney Aff., ¶¶ 79, 83, attached as Ex. 3.)

[Record Document 498-2 at 5].  Plaintiff does not controvert this.

Finally, in 2002, while an engineer Stinson derailed a train. [Record Document 521-2
at 7].  Stinson alleges that he was treated in a discriminatory manner because he was the
only member of his crew to be drug tested. [Record Document 521-2 at 7-8].  KCS, in line
with its written policy on drug testing, tested him.  He passed the test and there was no
reference to this incident placed in his record.

However, even taking all of the allegations in totality, they still do not rise to the level
of "severe or pervasive."  Additionally, the record based on Stinson's account reflects a
company that worked to address racial issues when presented with them.  Stinson's sworn
declaration amounts to nothing more than an individual who subjectively felt wronged;
however, the Fifth Circuit has made clear that Stinson's subjective beliefs regardless of how
genuine cannot form the basis of judicial relief.  Stinson's thirty-two year career does
evidence some isolated racial impropriety on the part of his coworkers, but to prevail on a
hostile work environment claim Stinson must show this Court more than a few isolated
incidents spread over thirty-two years of service.  While Plaintiff's sworn declaration
attempts to suggest a steady barrage of harassment, the record taken as a whole is devoid
of such evidence.

Stinson has failed to establish a racially hostile work environment.

## CONCLUSION

Accordingly, **IT IS ORDERED THAT** the foregoing motion [Record Document 498] be and is hereby **GRANTED.**   Plaintiff Stinson's state law claims, his claims under the Louisiana Employment Discrimination Law, and his Section 1981 claims for failure to promote, retaliation, disparate treatment, hostile work environment and disparate impact are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED THAT** Defendant's Motion to Strike Portions of the Declaration of Plaintiff Charlie Stinson [Record Document 544] be and is hereby **DENIED** as **MOOT**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

Thus done and signed, in Shreveport, Louisiana, this 1st day of April, 2011.


_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE