UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CLARENCE CARGO, *et al.*,  CIVIL ACTION NO. 05-2010

VERSUS  JUDGE S. MAURICE HICKS, JR.

KANSAS CITY SOUTHERN  MAGISTRATE JUDGE HORNSBY
RAILWAY COMPANY

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment on Plaintiff Dennis Mitchell's remaining claims (Record Document 500) filed by Defendant Kansas City Southern Railway Company ("KCS"). The motion is grounded in the argument that "Mitchell's claims are preempted by the Railway Labor Act, barred by the statutes of limitations, were not administrative[ly] exhausted, and/or fail on substantive grounds." See id. Plaintiff opposes the motion. [Record Document 513]. Upon review of Plaintiff's Opposition (Record Document 513) in conjunction with Plaintiff's Response to Defendant's Statement of Material Facts (Record Document 513-3), it is apparent that Plaintiff has conceded all but his claims for discriminatory discharge, and hostile work environment. Put another way, "Mitchell has conceded his state law, LEDL [Louisiana Employment Discrimination Law], and disparate impact claims." [Record Document 541]. This Court agrees.

For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED**. Plaintiff Mitchell's state law claims, his claims under the Louisiana Employment Discrimination Law, his claims for discriminatory discharge, his claims hostile work environment and disparate impact are **DISMISSED**.

**FACTUAL BACKGROUND**

Dennis Mitchell ("Mitchell") is an African-American male. [Record Document 500-2 at 1]. Mitchell began working for KCS in October 2000 as a conductor trainee. [Record Document 500-2 at 2]. In January 2001, Mitchell was promoted to the position of conductor in New Orleans. [Record Document 500-2 at 2]. Not long after, in February 2002, Mitchell was promoted to the position of engineer. [Record Document 500-2 at 2]. On January 21, 2005, Mitchell was discharged from KCS for violating operating rule 8.15 (running through a switch). [Record Document 500-2 at 15]. Ultimately, the discharge was upheld by the Public Law Board, but he was reinstated. [Record Document 500-2 at 16-17]. Then in May 2006, after three formal hearings, Plaintiff was informed that he was again discharged. [Record Document 500-2 at 20-21]. This discharge was predicated on three violations: exceeding the proper speed limit as engineer, failing to sound the whistle at a private grade crossing, and failing to secure his train. [Record Document 500-2 at 21]. The Public Law Board upheld the discharge and did not recommend reinstatement. [Record Document 500-2 at 22]. Mitchell joined with a number of other KCS employees and filed suit against KCS alleging discrimination. He joined the present action as a Plaintiff in the Supplemental Complaint filed in the above-captioned matter on November 18, 2005. [Record Document 4]. Subsequently, after preliminary motion practice, the Plaintiffs were broken into 19 trial groups. [Record Document 492]. The pairing was based on the Plaintiffs' respective claims. Mitchell was placed in Group 2 with Jesse Frank and Charlie Stinson because all three worked as engineers on the train crew in New Orleans. [Record Document 492].

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Quality Infusion Care, Inc. v. Health Care Serv. Corp., — F.3d —, No. 09-20188, 2010 WL 5188825, at *2 (5th Cir. Dec. 23, 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

**LAW AND ANALYSIS**

**A.    Discriminatory Discharge**

Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination "against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e-2(a)(1).

---

[1]The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

The Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), created a burden-shifting framework for Title VII discrimination claims which rely on circumstantial evidence. The factors necessary to establish a *prima facie* case include: (1) membership in a protected class; (2) qualification for the position at issue; (3) subjection to an adverse employment action; and (4) treatment that was less favorable than similarly situated persons outside the protected class. Bryan v. McKinsey & Co., Inc., 375 F.3d 358, 360 (5th Cir.2004). Once a *prima facie* case has been established, the burden shifts to the employer to provide a non-discriminatory reason for the discharge-the employer's burden is one of production, not persuasion. Patrick v. Ridge, 394 F.3d 311, 317 (5th Cir.2004). The plaintiff can still prevail if he can demonstrate that the proffered reason was a pretext for the discriminatory motive, Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), or if the employer had "mixed motives" for the adverse action, one of which was discriminatory, Smith v. Xerox Corp., 602 F.3d 320 (5th Cir.2010). To show pretext, a plaintiff may prove that the reason proffered by the employer for termination is unworthy of credence, or that the employer's decision was more likely motivated by discriminatory reasons. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 257, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Importantly, "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir.1995)

    i.    January 2005

It is undisputed that on January 21, 2005, Mitchell was discharged from KCS for violating operating rule 8.15 (running through a switch). [Record Document 500-2 at 15].

Specifically, Mitchell, an engineer, allowed his train to run through a switch on January 11, 2005, which resulted in track damage.[2] [Record Document 500-2 at 13]. Mitchell appealed his discharge all the way to the Public Law Board.[3] At each stage, Mitchell's discharge was upheld. While the Public Law Board found Mitchell's actions to be "negligent," and the Board found discharge was warranted, it nonetheless reinstated Mitchell. [Record Document 500-6 at 112]. The Public Law Board made it clear "this is undoubtedly Claimant's [Mitchell's] last chance to resume his career." Id. Mitchell has never disputed that he ran through that switch or the other eight infractions in his disciplinary record to that point.

Mitchell contends that his discharge was discriminatory and merely the result of his race. From this Court's review of the competent summary judgment evidence, Plaintiff satisfies the first three elements of the McDonnell Douglas evidentiary framework (he is African American, he was an engineer, and he was discharged). On the fourth element, Plaintiff's claim flounders. Though, to successfully present a *prima facie* case, he must demonstrate to this Court that he was treated less favorably than someone similarly situated outside of his protected class.

---

[2]"Lining a switch" is a successful adjustment of the tracks so that the train may travel in its intended direction. The failure to line a switch properly could result in a run through switch, a derailment, a sideswipe, occupation of the main track without authority, a head on collision or a rear-end collision. [Record Document 500-2 at 12].

[3]As explained in McNeill v. Atchison, Topeka & Santa Fe Ry. Co., 878 F.Supp. 986, 988 (S.D.Tex.1995), Public Law Boards were created by Congress, pursuant to 45 U.S.C. § 153, "to assume exclusive jurisdiction over disputes arising from the employment relationship." Each panel is made up of a representative of the carrier, the union and a neutral arbiter.

Plaintiff cannot prove the fourth element of the <u>McDonnell Douglas</u> framework.  In Mitchell's opposition to Defendant's Motion for Summary Judgment, he identifies six (6) comparators, all Caucasians who were allegedly treated more favorably than Plaintiff: Samuel J. Conzonere, Gerard Huber, Dale E. Burns, Charles Dougherty, Matthew Duet, Ronnie Bates and Paul Dawson.  <u>See</u> Record Document 513.[4]  Plaintiff, in his brief, alleges a total of approximately fifty (50) disciplinary entries for these various comparators.  Unfortunately for Plaintiff, he fails to present this Court with competent summary judgment evidence to support the bare allegations in his brief.  According to Fed. R. Civ. P. 56(c)(1):

> Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Plaintiff has provided only two disciplinary entries for Paul Dawson (Record Document 513-1 at 18) and Grady Courtney (Record Document 513-1 at 19), but

---

[4]This Court would be well within its discretion to refuse to consider any of the additional comparators except Ronnie Bates since they were not disclosed until Plaintiff's opposition, which was filed well beyond the discovery deadlines.  However, out of an abundance of caution this Court will consider them as comparators.

not their entire disciplinary records. As a result this Court is unable to determine if they even qualify as comparators of the Plaintiff.

Interestingly enough, until Plaintiff's opposition, KCS was aware of only one individual, Ronnie Bates, as a possible comparator. [Record Document 541 at 5-6]. There also appears to be some confusion over the true identity of "Ronnie Bates." KCS's records indicate no Ronnie Bates in New Orleans. [Record Document 541 at 6 n.8]. A "William Bates" worked in New Orleans as a conductor during the relevant time period, so for this motion this Court will assume Plaintiff meant to refer to William Bates. It is uncontroverted that William Bates is a conductor and was a conductor during Mitchell's employment as an engineer at KCS. [Record Document 500-2 at 26]. A conductor is not comparable to an engineer. They are different jobs with different responsibilities an engineer is a step above a conductor in KCS's work placement scheme. Therefore, Plaintiff has failed to come forward with a comparator, supported by admissible summary judgment evidence, who was treated more favorably than him. Mitchell has failed to establish a *prima facie* case of discriminatory discharge.

Even assuming, *arguendo*, Mitchell successfully presented a single comparator, he has failed to rebut KCS's legitimate non-discriminatory reason for discharging him. Plaintiff does not dispute he had numerous violations and he does not dispute that he ran through the switch that gave rise to his 2005 discharge from KCS; however, Plaintiff presents this Court with an e-mail from Kathleen Alexander, the Director of Labor Relations for KCS, sent on July 15, 2005 to J.R. Thornell in which she states:

> I have appeals on these men. They were involved in running through a switch that resulted in only $100 track damage. Bates, who is white and the foreman of the job, received 45

> actual and the other two, both black were dismissed. I realize that the discipline records of Mitchell and Turner are not as good as Bates; however, running through a switch, even with their records, dismissal cannot be upheld.
>
> In addition, both Mr. Mitchell and Mr. Turner are a part of the EEOC group lawsuit. It would be my strong suggestion that you approve my extending leniency to these two individuals.

[Record Document 513-1 at 1]. J.R. Thornell, Alexander's boss, replied:

> Incident of run through switch was a repeat offense in a short period for both, Bates record did not warrant dismissal, the other two meet or exceeded the criteria of our current discipline policy and were dismissed. Depending a switch and/or location is a failure to stop short of, which in itself could result in any number of life threatening offenses, impact, sideswipe, injury or death. If our discipline policy is not what LR can support, then a decision will have to [be] made as to use it or trash it, EEOC is not taken into consideration when discipline is issued only [on] the facts.

Id. Subsequently, Alexander issued a letter on the issue where she stated in pertinent part, "[t]here is no dispute that Claimant [Mitchell] ran through a switch. The only question is the measure of discipline. Mr. Mitchell has a horrendous past discipline record. It is one that shows an indifference to his duties." [Record Document 513-1 at 2]. Nowhere in any correspondence or e-mails, does KCS state Mitchell was dismissed for anything other than his conduct. Plaintiff, despite the e-mail from Alexander, has failed to call into question KCS's legitimate non-discriminatory reason for discharging Mitchell.

      ii.      May 2006[5]

No one disputes that on January 29, 2006, Mitchell failed to secure his train.[6] Furthermore, it is undisputed that Plaintiff failed to sound his whistle at a private grade crossing on March 11, 2006. [Record Document 500-2 at 17]. Also, on May 2, 2006, Plaintiff violated rules by operating his train in excess of the established speed limit. [Record Document 500-2 at 17]. In these three instances, Plaintiff did not waive the formal process of investigation, so hearings were held. He failed to attend the formal hearing to address his charge of violating the speed limit. [Record Document 500-2 at 17]. He did, however, attend the subsequent hearing to address his "failure to secure a train" charge. [Record Document 500-2 at 17]. At the hearing, he asserted the Fifth Amendment[7] each time a question was posed to him. [Record Document 500-2 at 17]. Another formal hearing was convened that same day to address his failure to blow the whistle charge. [Record Document 500-2 at 17]. Again, each time he was addressed, he asserted the Fifth Amendment. [Record Document 500-2 at 17]. Mitchell was dismissed for each violation

---

[5]Plaintiff argues that he has plead a claim for discriminatory discharge in relation to his May 2006 discharge. KCS disputes this. However, this litigation has been going on for over five years. The Court will consider this claim out of an abundance of caution. While this is at best a claim for retaliation, Plaintiff characterizes it as a claim for discriminatory discharge, so this Court will evaluate it as such.

[6]The "failure to secure a train" is the failure to apply the manual brake on the train. [Record Document 500-2 at 18].

[7]"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V.

in May 2006. [Record Document 500-2 at 21]. The Public Law Board upheld the dismissal noting the seriousness of the charge (he only appealed the "failure to secure a train" charge) and Mitchell's disciplinary history. [Record Document 500-10 at 43-44]. Mitchell contends that he "was disciplined disparately and more harshly based on his race, African American, than were Caucasian employees." [Record Document 513-4 at 1].

Turning back to the familiar McDonnell Douglas evidentiary framework, it appears Mitchell's claim for discriminatory discharge in May 2006 must fail for the same reason as his January 2005 claim. In his response, he points to no comparators with similar records and infractions. It must therefore fail because Mitchell fails to demonstrate "treatment that was less favorable then similarly situated persons outside the protected class." Bryan, 375 F.3d at 360.

The Court notes that with respect to his March 11, 2006 infraction for failing to blow the train's whistle at a private grade crossing, Mitchell advances a claim for disparate efficiency testing in regards to him not blowing the whistle. [Record Document 513 at 20-21]. He claims "[h]e has established a *prima facie* case because the conductor, Mr. Temple was equally responsible to sound the horn, and went undisciplined. He is Caucasian." [Record Document 513 at 21]. This argument must also fail. It is uncontroverted that "Ashanti Temple, who is African-American and was a member of Mitchell's crew, received a reprimand for failing to sound the whistle at the private grade crossing." [Record Document 500-2 at 21]. This claim also fails.

**B.      Hostile Work Environment**[8]

To establish his claim for a hostile work environment, Stinson must show that:

> 1) he belongs to a protected class; 2) he was subjected to unwelcome harassment; 3) the harassment was based on race; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action.

Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir.2005). Furthermore, he must show that the conduct was "severe or pervasive." Id. The alleged discrimination must have "created an environment that a reasonable person would find hostile or abusive." Id. Courts in this Circuit determine hostile environment considering the totality of the circumstances. Factors to consider include: "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." Id .; see Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Although "[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive" to support evidence of a Title VII violation, DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir.1995), "simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges" that can survive summary judgment. Hockman v. Westward Communications, LLC, 407 F.3d 317, 328 (5th Cir.2004).  A plaintiff's own subjective beliefs, however genuine, cannot

---

[8]In the Fifth Circuit, courts use the same standard to analyze hostile work environment claims brought under § 1981 as they do when they are brought under Title VII. Lawrence v. University of Texas Med. Branch, 163 F.3d 309, 311 (5th Cir. 1999).

form the basis of judicial relief. <u>Nichols v. Lewis Grocer</u>, 138 F.3d 563 (5th Cir.1998); <u>Little v. Republic Refining Co.</u>, 924 F.2d 93, 95 (5th Cir.1991).

In Mitchell's deposition, he lays out the following allegations to support his claim for a hostile work environment:

> I'm alleging that they treated us very hostile; they disciplined us [African-Americans] harder than they did caucasion [sic] members; that they would ride the African-Americans way harder in an intimidating factor. When they talked to you they would talk down to you. Mr. A.J. Sonnier hisself (sic) told me to remember your place.
> . . .
> And Mr. Thornell hisself (sic) had told another gentleman–it was–it was Thornell and another gentleman in KCS, who I never met before–I assume he was some big-shot, vice president or something before. And a gentleman called–called the gentleman by his name, and Thornell told him, "You call him Mister." And I was there to witness that.
> . . .
> He [A.J. Sonnier] to me to remember my place.
> . . .
> [h]e has cursed me before, he has, like I said, been on my back pretty hard several times.

[Record Document 513-2 at 57-58]. Mitchell has testified that he reported A.J. Sonnier's abuse behavior to a KCS company official–Rich Vendetti. [Record Document 513-2 at 49]. Further, he alleges that "Mr. Love" attempted to set him up to take the fall for a train derailment at one point during his career with KCS. [Record Document 513-2 at 62]. "Mr. Mitchell testified that the disciplinary hearings at KCS were discriminatory because A.J. Sonnier and J.R. Thornell made decisions before the hearings were held." [Record Document 513 at 21]. Finally, Mitchell alleges that expense checks were withheld from African-American employees by Mr. Love, a Caucasian male. <u>Id.</u>

Taking all of these subjective allegations in totality, they do not rise to the level of "severe or pervasive." Mitchell's deposition and sworn answers to interrogatories paint an individual who subjectively felt wronged; however, the Fifth Circuit has made clear that Mitchell's subjective beliefs regardless of how genuine, cannot form the basis of judicial relief. To prevail on a race-based hostile work environment claim Mitchell must prove more than a few isolated incidents spread over six years of less-than-distinguished term of service as a train engineer with KCS. The majority of Mitchell's allegations are devoid of any racial animus. While Plaintiff's deposition and briefs suggest and allege race-based harassment, the evidentiary record taken as a whole fails to prove a hostile work environment. Mitchell has failed to establish a *prima facie* case for a hostile work environment.

## CONCLUSION

Accordingly, **IT IS ORDERED THAT** the foregoing motion [Record Document 500] be and is hereby **GRANTED.** Plaintiff Mitchell's state law claims, his claims under the Louisiana Employment Discrimination Law, his claims for discriminatory discharge, his claims hostile work environment and disparate impact are **DISMISSED WITH PREJUDICE**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

Thus done and signed, in Shreveport, Louisiana, this 1st day of April, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE