UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CLARENCE CARGO, *et al.*, | CIVIL ACTION NO. 05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN RAILWAY COMPANY | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment on Plaintiff Jesse Frank's remaining claims (Record Document 499) filed by Defendant Kansas City Southern Railway Company ("KCS"). The motion is grounded in the argument that "Frank's claims are barred by the doctrine of res judicata, preempted by the Railway Labor Act, barred by the statues of limitations, were not administrative[ly] exhausted, and/or fail on substantive grounds." See id. Plaintiff opposes the motion. [Record Document 527]. Upon review of Plaintiff's Opposition (Record Document 527) in conjunction with Plaintiff's Response to Defendant's Statement of Material Facts (Record Document 574), it is apparent that Plaintiff has conceded all but his claims for discrimination, retaliatory discipline and retaliatory discharge. Put another way, "Frank conceded his state law, Louisiana Employment Discrimination Law ('LEDL'), failure to promote, hostile work environment, and disparate impact claims." [Record Document 545 at 1]. This Court agrees.

For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED.** Plaintiff Frank's claims for discrimination, retaliatory discipline, retaliatory discharge, state law, Louisiana Employment Discrimination Law ("LEDL"), failure to promote, hostile work environment, and disparate impact claims are **DISMISSED**.

## FACTUAL BACKGROUND

Jesse Frank is an African-American male. [Record Document 499-2 at 1]. Frank began working for KCS on July 13, 1972 as a brakeman. [Record Document 499-2 at 1]. In 1976, Frank was promoted to conductor. [Record Document 499-5 at 6]. Subsequently, in July 1980, Frank passed the engineer exam and was promoted to the position of engineer. [Record Document 499-5 at 6]. According to KCS disciplinary records, on June 17, 1997, Frank failed a Breathalyzer administered under the KCS Reasonable Cause testing. [Record Document 499-6 at 16]. His first blow registered a blood alcohol level of .042. [Record Document 499-6 at 16]. A second blow revealed a blood alcohol level of .034. [Record Document 499-6 at 16]. As a result, he was dismissed from KCS on June 27, 1997 after a formal investigation. [Record Document 499-6 at 16]. However, on January 6, 1998, Frank was allowed to return to work. [Record Document 499-6 at 18]. This return to work was conditioned on Frank signing a "Return to Work Agreement" that among other things included clauses that read:

> 3. I agree to remain free from all mood-altering drugs.
> 4. I agree if I fail to comply with any portion of this agreement it may result in termination of my employment.

[Record Document 499-6 at 18]. Frank signed another even more strict agreement with KCS that stated:

> Mr. Frank must not violate the Carrier's Rule 1.5 [KCS's drug and alcohol policy] during the remainder of his employment with the Carrier.
> In connection with the aforementioned conditions, it is further understood and agreed that should Mr. Frank fail to comply with <u>any part</u> of such conditions during the period specified, such failure on his part constitutes a waiver of his rights to a formal investigation, as required under the Collective

>Bargaining Agreement, with the understanding he will be removed from service and will be considered as having resigned from the service of the Carrier; however, this will not serve to prevent Mr. Frank and the Organization from progressing a claim as a result of Mr. Frank's removal from service and under the provisions of this Return to Work Agreement.

[Record Document 499-6 at 20].

On February 12, 2003, Frank filed a claim for race discrimination arguing:

>On December 28, 2002 I had a family emergency and required leave. As a result, on February 5, 2003 I was charged with a missed call and was suspended for 90 days. . . Yet a similarly situated White was granted leave on the same day that my leave was denied.

[Record Document 499-10 at 62]. Plaintiff appealed the suspension. Upon review, the Public Law Board[1] found:

>Claimant was called at 2208 to work but did not respond. An investigation was timely set, following which Claimant was suspended ninety days.
>
>There really is no controversy about Claimant missing a call. He may have had a family emergency, but he readily admits that no one gave him authority to be off.
>
>. . .
>
>The Board does find, however, that a 90 day suspension was too harsh. Claimant's discipline is reduced to 45 days . . . .

[Record Document 499-8 at 29].

---

[1]As explained in McNeill v. Atchison, Topeka & Santa Fe Ry. Co., 878 F.Supp. 986, 988 (S.D.Tex.1995), Public Law Boards were created by Congress, pursuant to 45 U.S.C. § 153, "to assume exclusive jurisdiction over disputes arising from the employment relationship." Each panel is made up of a representative of the carrier, the union and a neutral arbiter.

Sometime in January 2007, Frank was released by his doctor to return to work after shoulder surgery. [Record Document 499-2 at 22]. As a condition of returning to work after an injury, Frank was required to pass a physical and a drug screen. On February 9, 2007, Frank was informed that the drug screen was positive for propoxyphene. [Record Document 499-2 at 24]. Frank did not have a prescription for propoxyphene. [Record Document 499-2 at 24]. Subsequently, Frank was discharged after he failed to prove he had a prescription for propoxyphene and for violating the conditions of his "Return to Work Agreement." [Record Document 499-2 at 27]. Frank appealed and the Public Law Board upheld his dismissal. [Record Document 499-10 at 59].

After Frank was discharged, he filed a claim for retaliation with the EEOC arguing:

> I previously filed a charge of employment discrimination against respondent, and the EEOC issued a determination that discrimination had occurred.
>
> I believe that Respondent's refusal to allow me to return to work was retaliation for my prior protected EEO[C] activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

[Record Document 499-10 at 106].

Frank joined as a Plaintiff in the above-captioned matter alleging discrimination by KCS. [Record Document 5]. Subsequently, after preliminary motion practice, the Plaintiffs were broken into 19 trial groups. [Record Document 492]. The pairing was based on the Plaintiffs' respective claims. Frank was placed in Group 2 with Charlie Stinson and Dennis Mitchell because all three worked as engineers on the train crew in New Orleans. [Record Document 492].

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Quality Infusion Care, Inc. v. Health Care Serv. Corp., — F.3d —, No. 09-20188, 2010 WL 5188825, at *2 (5th Cir. Dec. 23, 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## LAW AND ANALYSIS

### A.     Racial Discrimination

Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination "against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e-2(a)(1). Because

---

[2]The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

claims brought pursuant to Title VII and § 1981 are "governed by the same evidentiary framework," such that the analyses under both statutes are substantively the same, we analyze Frank's Title VII and § 1981 claims together. Pegram v. Honeywell, Inc., 361 F.3d 272, 281 n. 7 (5th Cir.2004).

The Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), created a burden-shifting framework for Title VII discrimination claims which rely on circumstantial evidence. The factors necessary to establish a *prima facie* case include: (1) membership in a protected class; (2) qualification for the position at issue; (3) subjection to an adverse employment action; and (4) treatment that was less favorable than similarly situated persons outside the protected class. Bryan v. McKinsey & Co., Inc., 375 F.3d 358, 360 (5th Cir.2004). Once a *prima facie* case has been established, the burden shifts to the employer to provide a non-discriminatory reason for the discharge-the employer's burden is one of production, not persuasion. Patrick v. Ridge, 394 F.3d 311, 317 (5th Cir.2004). The plaintiff can still prevail if he can demonstrate that the proffered reason was a pretext for the discriminatory motive, Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), or if the employer had "mixed motives" for the adverse action, one of which was discriminatory, Smith v. Xerox Corp., 602 F.3d 320 (5th Cir.2010). To show pretext, a plaintiff may prove that the reason proffered by the employer for termination is unworthy of credence, or that the employer's decision was more likely motivated by discriminatory reasons. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 257, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Importantly, "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir.1995).

**B.      Res Judicata**

KCS argues that it is "entitled to summary judgment on Frank's claims that were part of or could have been part of the EEOC lawsuit because those claims are barred by the doctrine of res judicata." [Record Document 499-1]. KCS refers this Court to an EEOC complaint that was filed on his behalf and other KCS employees in the Eastern District of Louisiana on July 27, 2005 and captioned as "Equal Employment Opportunity Commission v. The Kansas City Southern Railway Company, Civil Action No: 05-2668." See Record Document 499-11 at 5. According to the opening line of the Amended Complaint, "This action is brought under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race (Black) and retaliation, and to provide appropriate relief to the following individuals, as well as any others in like and related circumstance: . . . (2) Jesse J. Frank ('Frank') . . . ." [Record Document 499-11 at 5]. This Complaint alleges on Frank's behalf "[o]n or about February 5, 2003, Defendant [KCS] suspended Frank for 90 days on the basis of his race (Black), in violation of Title VII." [Record Document 499-11 at 7]. During the course of the litigation, it was consolidated with Turner v. Kansas City Southern Railway Company. 622 F. Supp.2d 374, 378 n.1 (E.D. La. 2009). On May 19, 2009, the court entered a memorandum ruling granting KCS's motion for summary judgment and dismissing the EEOC's claims. Id. The Court after a thorough review of Frank's and his fellow coworkers' claims the Court found:

> Plaintiffs are unable to establish a *prima facie* case of discrimination and/or retaliation in violation of Title VII. Furthermore, even if Plaintiffs were able to establish a *prima facie* case, they are unable to rebut the legitimate, nondiscriminatory and nonretaliatory reasons articulated by KCS for each of the disciplinary actions at issue.

Id. at 396. KCS argues that this ruling should, through the doctrine of res judicata (claim prelcusion), preclude Frank from relitigating the issue of discrimination in regards to his 90-day suspension in 2005.

Frank counters by first arguing he "filed his private lawsuit before the EEOC filed its public enforcement action." [Record Document 527 at 9]. This is undisputed and irrelevant. "Therefore, when two suits are pending based on the same claim or issue, the first final judgment rendered becomes conclusive in the other action." Vines v. University of Louisiana at Monroe, 398 F.3d 700, 712 (5th Cir. 2005); see also Ellis v. Amex Life Ins. Co., 211 F.3d 935, 937 (5th Cir. 2000).

Therefore the Court must turn its attention to a res judicata analysis under federal law. The preclusive effect of a prior federal court judgment is controlled by federal res judicata rules. See Agrilectric Power Partners, Ltd. v. General Electric Co., 20 F.3d 663, 664 (5th Cir.1994); Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc., 870 F.2d 1044, 1045 (5th Cir.1989). Res judicata is appropriate if: 1) the parties to both actions are identical (or at least in privity); 2) the judgment in the first action is rendered by a court of competent jurisdiction; 3) the first action concluded with a final judgment on the merits; and 4) the same claim or cause of action is involved in both suits. See United States v. Shanbaum, 10 F.3d 305, 310 (5th Cir.1994).

From this Courts review of all of the briefs there appears to be no dispute over elements two (2) through four (4). The main area of contention and dispute appears to be over whether or not the parties to both actions are identical (or at least in privity). This Court has found two cases that discuss this issue at some length. In Vines, the Fifth Circuit's interpretation and application of the Anti-Injunction Act required them to determine whether or not res judicata applied to the private action that was being pursued in state court. 398 F. 3d 700. According to the Fifth Circuit:

> Federal courts have consistently held that a non-party to an action is still bound by and entitled to the benefits of a judgment as though it were a party if it was represented in the original action. See Meza v. Gen. Battery Corp., 908 F.2d 1262, 1266-67 (5th Cir.1990). It is well-settled precedent that a judgment in an action in which a government agency represents private individuals is binding on those individuals. See Heckman v. United States, 224 U.S. 413, 445-46, 32 S.Ct. 424, 56 L.Ed. 820 (1912). The EEOC is an agency expressly invested by law with the authority to represent the interests of individuals in civil actions against employers to recover damages for discriminatory practices. 42 U.S.C. § 2000e-5 (2004).

Id. at 706; see also Jones v. Bell Helicopter Co., 614 F.2d 1389, 1391 (5th Cir.1980) (upholding dismissal of charging party's suit following EEOC suit based on federal res judicata principles even though the party "did not deserve to be penalized by the E.E.O.C.'s failure to provide decent governmental process"), abrogated on other grounds by United States v. Popovich, 820 F.2d 134 (5th Cir.1987). Admittedly Vines primarily focused on the Age Discrimination in Employment Act, which has a different enforcement regime, but the Fifth Circuit's general discussion is instructive. The Fifth Circuit established a test for courts:

> Therefore, the EEOC is not always to be considered the representative of individuals on whose behalf it brings an ADEA action. For example, the EEOC's role differs when it seeks to enjoin discrimination against an entire class or attempts to protect a broader interest than simply that of the individual plaintiff. In a situation where there is a clear divergence of interests between the EEOC and the aggrieved individual, we must determine in each case whether privity exists.

Id. at 707. Adapting this test, the Court must determine if there was a divergence of interests between the EEOC and Frank in the EEOC action. From this Court's review of the original EEOC complaint and the court's memorandum ruling granting KCS's motion for summary judgment, it does not appear that their interests diverged. The EEOC, using much of the same evidence as is being presented here, sought to prove discrimination on the part of KCS in regards to Frank's 90-day suspension. The EEOC failed to satisfy their burden of proof. This Court finds that the EEOC and Frank were in privity for the purposes of determining whether res judicata applies in this action.

Therefore, Frank's claim for discrimination based on his 90-day suspension in 2005 is barred by the doctrine of res judicata.[3]

**B.  Retaliation**

    i.  Discipline

Frank alleges a new charge of retaliation in his Opposition to KCS's Motion for Summary Judgment. See Record Document 527 at 25. According to Frank:

---

[3]Even if Frank's claim were not barred by res judicata, it would fail. This Court has reviewed the evidence and, like the district court before us, finds that Frank is unable to present a *prima facie* case of discrimination, and even if he were to satisfy that hurdle, the evidence presented does not controvert KCS's legitimate non-discriminatory reason for suspending him for 90-days.

> On the eve of Mr. Frank's lawsuit, after EEOC had issued a "reasonable cause" finding in response to his Charge of Discrimination, Mr. Frank received a 30-day suspension for allegedly failing to inspect his train in response to a track-side warning detector. Mr. Frank testified, however, that Trainmaster Bill Richmond "had unplugged the [trackside warning] detector" and as result it did not give Mr. Frank's crew the necessary reading when they past it.
>
> Defendant's procedures for testing trainmen regarding compliance with Trackside Warning Detectors explicitly states "**Never disable a detector system**." General testing instructions further provide that "[t]ests must not be conducted in violation of operating rules" and "[t]esting supervisors must not condone or participate in violations of the rules."
>
> Defendant's deviation from its written procedures, in combination with its prior discriminatory treatment of Mr. Frank, is evidence of pretext. See, e.g., Machinchick v. PB Power, Inc., 398 F.3d 345, 354, n. 29 (5th Cir. 2005). It is irrelevant that a non-minority was also affected by the deviation from policy, as the impact for a new employee with a fresh disciplinary record would be significantly different from the impact on Mr. Frank, who already had a 90-day suspension in his disciplinary history due to Defendant's pretextual allegations in 2003.

[Record Document 527 at 25] (internal citations omitted).

Retaliation claims are also subject to the McDonnell Douglas framework. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "To establish a *prima facie* case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir.2007).

For purposes of a *prima facie* case, the timing of the adverse decision and its proximity to protected activity can establish an inference of causal connection. Gee v.

Principi, 289 F.3d 342, 346 n. 3 (5th Cir.2002); see also Evans v. City of Houston, 246 F.3d 344, 356 (5th Cir.2001) (five day proximity can establish *prima facie* evidence of causal connection for retaliation claim). The Court is dubious of Frank's claim. Frank filed his private action on January 10, 2005. [Record Document 1]. It is uncontroverted that Frank was notified of the infraction on January 6, 2005. [Record Document 499-2 at 20]. Unless KCS was endowed with precognition, there appears to be no connection between the filing of the lawsuit and the rule violation. However, it is uncontroverted that Frank's 30-day suspension was set on January 12, 2005. [Record Document 499-2 at 20]. Since Frank is pursuing retaliatory discipline, this Court assumes *arguendo* that Frank therefore established a *prima facie* case of retaliatory discipline by alleging the 30-day suspension was issued two days after he filed his discrimination lawsuit. Once an employer produces evidence of a valid reason for the adverse action, however, the Fifth Circuit's decision in Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 808 (5th Cir.2007), makes clear that a plaintiff cannot rely solely on suspicious timing to carry his burden at the pretextual stage of the burden-shifting framework. In the face of evidence of a non-retaliatory reason for the adverse action, a plaintiff must show that retaliatory motives were the "but-for cause" of that action. Id.

Upon review of the uncontroverted Statements of Material Facts, it appears that Plaintiff has conceded that claim. According to the following *inter alia* Statements of Material Fact, which Plaintiff did not contradict or contest, it appears as if Plaintiff has waived his claim:

> 142. On or about January 6, 2005, Frank, Sterling and Karl Magner, a Caucasian male, received a letter from Steve Dupont requesting their presence at a formal

> investigation to determine their responsibility for failing to inspect their train on January 5, 2005. (Pl.'s Dep. at 244:8-245:11, attached as Ex. 1; Letter from S. Dupont dated 1/6/05, attached as Ex. 58.)
> 143. On January 12, 2005, Frank signed a statement waiving his right to a formal investigation for failing to inspect his train on January 5, 2005, admitting his responsibility for the incident, and agreeing to a thirty-day suspension. (Pl.'s Dep. at 248:4-17, attached as Ex. 1; Frank Statement dated 1/12/05, attached as Ex. 59.)
> 144. Frank signed the waiver voluntarily without coercion from anyone at KCSR. (Pl.'s Dep. at 253:7-10, attached as Ex. 1.)

[Record Document 499-2 at 21]. Since Frank admitted his responsibility by signing the waiver and not contesting it or attempting to controvert this material fact, his claim for retaliation must fail.

### ii. Discharge[4]

Frank was discharged from KCS on January 24, 2007 for failing a drug test. [Record Document 499-10 at 106]. Subsequently, he filed an EEOC complaint for retaliation alleging:

> I previously filed a charge of employment discrimination against respondent, and the EEOC issued a determination that discrimination had occurred.
>
> I believe that Respondent's refusal to allow me to return to work was retaliation for my prior protect EEO[C] activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

[Record Document 499-10 at 106].

---

[4]Plaintiff argues that he has plead a claim for retaliatory discharge in relation to his January 2007 discharge. KCS disputes this. However, this litigation has been going on for over five years. The Court will consider this claim out of an abundance of caution.

Retaliation claims are also subject to the McDonnell Douglas framework.  411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  "To establish a *prima facie* case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir.2007).

For purposes of a *prima facie* case, the timing of the adverse decision and its proximity to protected activity can establish an inference of causal connection. Gee v. Principi, 289 F.3d 342, 346 n. 3 (5th Cir.2002); see also Evans v. City of Houston, 246 F.3d 344, 356 (5th Cir.2001) (five day proximity can establish *prima facie* evidence of causal connection for retaliation claim).  This Court assumes *arguendo* that Frank therefore established a *prima facie* case of retaliatory discharge by alleging the discharge occurred after (albeit some four years) he filed his original EEOC complaint for discrimination and during the pendency of the present litigation.  Once an employer produces evidence of a valid reason for the adverse action, however, the Fifth Circuit's decision in Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 808 (5th Cir.2007), makes clear that a plaintiff cannot rely solely on suspicious timing to carry his burden at the pretextual stage of the burden-shifting framework. In the face of evidence of a non-retaliatory reason for the adverse action, a plaintiff must show that retaliatory motives were the but-for cause of that action. Id.

KCS argues that "Frank's retaliatory discharge claim fails because those involved in the events leading up to his February 2007 discharge did not know he had participated in a protected activity, and there is no evidence of pretext." [Record Document 499-1 at 22].

According to the Fifth Circuit in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity. See Medina v. Ramsey Steel Co., 238 F.3d 674, 684 (5th Cir.2001); see also Chaney v. New Orleans Pub. Facility Mgmt., Inc., 179 F.3d 164, 168 (5th Cir.1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").

KCS contends that the independent examiner who determined that Frank had failed the drug test had no knowledge of Frank's protected activity. [Record Document 499-1 at 23]. Frank has not controverted this. KCS further argues that Tim Carter, the individual who dismissed Frank, had no knowledge of Frank's protected activity. Id. Frank contests that Tim Carter had no knowledge of his protected activity. Frank has failed to come forward with admissible evidence to create a genuine dispute of material fact on this issue. Consequently, Frank's claim must fail at this point.

However, even if Frank successfully created a *prima facie* case of retaliation, he has failed to controvert the legitimate non-discriminatory reason advanced by KCS–he signed a "return to work" agreement which specifically forbade him from using mood altering drugs–he subsequently failed a drug test. It is inconsequential that the "return to work" agreement was signed ten years prior. Also, Frank has failed to produce any competent, summary judgment evidence that the drug test was wrong or falsified.[5] The record is clear.

---

[5] Frank has presented this Court with several exhibits purporting to call his drug test into question. None of them are competent, summary judgment evidence. Frank has cited to studies that suggest the urinalysis test used by KCS could produce a false positive. He has even listed the curriculum vitae of a scholar in that field. However, and fatal to his

Frank failed a drug test and was dismissed from KCS for violating his "return to work" agreement and company policy. Frank has failed to raise a genuine dispute of material fact as to whether or not his discharge was retaliatory.

## CONCLUSION

Accordingly, **IT IS ORDERED THAT** the foregoing motion (Record Document 499) be and is hereby **GRANTED.** Plaintiff Frank's claims for discrimination, retaliatory discipline, retaliatory discharge, state law, Louisiana Employment Discrimination Law ("LEDL"), failure to promote, hostile work environment, and disparate impact claims are **DISMISSED WITH PREJUDICE**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

Thus done and signed, in Shreveport, Louisiana, this 1st day of April, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

claim, Plaintiff has not retained an expert to conduct a review of his test and create a genuine dispute of material fact. The Court can find no study or report in the record specifically addressing Jesse Frank's urinalysis test.