UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CLARENCE CARGO, ET AL., | CIVIL ACTION NO. 05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN RAILWAY COMPANY | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment on Plaintiff Harry Parker's ("Parker") remaining employment claims filed by Defendant Kansas City Southern Railway Company ("KCS"). (Record Document 620). The motion conveys various reasons for the Defendant seeking dismissal of all claims raised by Parker. (Record Document 620). Parker, in opposition to Defendant's Motion for Summary Judgment, responds stating "Parker's only legal claim against KCS is hostile work environment claim under Title VII." (Record Document 634). Given this response, the Court will treat all claims, save the hostile work environment claim, as abandoned. For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED.** Plaintiff Parker's claims of a Hostile Work Environment, Defamation, Invasion of Privacy, Negligent and Intentional Infliction of Emotional Distress, Wrongful Termination, Good Faith and Fair Dealings, as well as claims arising under the Louisiana Employment Discrimination Law and Section 1981, are **DISMISSED**.

**FACTUAL BACKGROUND**

Harry Parker is a black male. (Record Document 620-2 at 1). Parker began an employment relationship with KCS on September 13, 2002, lasting until his termination on January 22, 2003.[1] (Record Document 620-2 at 2, 7). Parker claims that during his approximate four month employment, he was subjected to a hostile work environment. Parker began employment as a trainee and progressed to a probationary period as a conductor. (Record Document 620-2 at 2-5).

Parker alleges multiple interactions with KCS employees that created a hostile work environment. The first instance alleged by Parker that created a hostile work environment occurred during his training. Parker's training encompassed two weeks of classroom training, followed by eight weeks of on-the-job training, and another two weeks of classroom training. (Record Document 620-2 at 2). During one of the classroom sessions, Parker's instructor inquired about the group's weekend and a fellow trainee, Daniel Johnson,[2] responded,"I went to the 'N' Club with the brothers...I went to N-I-G-G-A club with the brothers and had a good time." (Record Document 634-1 at 9).

After Parker had completed his training and was working under a probationary period, he missed a phone call from KCS informing him of his work schedule the next day. (Record Document 620-2 at 5). As a result, Parker was admonished by A.J. Sonnier, whom Parker refers to as the "general foreman." (Record Document 620-4, Plaintiffs Deposition, at 58-59). Further, KCS opened a formal investigation as to Parker's failure to be available

---

[1]Since Parker was terminated during a probationary period, KCS refers to this as "his application had been disapproved." (Record Document 620-2 at 7).

[2]Daniel Johnson is a white male (Record Document 634-1 at 9).

for the phone call. (Record Document 620-2 at 7). Parker admits in his deposition that his race was never brought up in this encounter. (Record Document 620-4, Plaintiff's Deposition at 59).

On or about January 21, 2003, Parker was working with Larry Selvage, a fellow employee with seniority over Parker. (Record Document 620-4, Plaintiff's Deposition, at 70-71). Parker described Larry Selvage as a black male. (Record Document 620-2 at 7). Parker was helping to train another employee when Selvage and Parker had an altercation. According to Parker, Selvage "approached Parker in a verbally hostile manner. Selvage made complaints of the work being performed by Parker in a verbally hostile manner. Selvage used 'MF' in reference to Parker. Selvage used 'N' or some other racially derogatory term during this verbal attack of Parker." (Record Document 634-1 at 12). After a review of Parker's deposition, the record leads to the conclusion that the only offensive term used by Selvage in this particular encounter was "Mother Fucker."[3]

The only specific encounter found in the record where Selvage is accused of using the term "nigger" or any racially discriminatory speech is when Selvage approached Parker and three other black employees and stated, "You three little 'Ns' are going to let the white

---

[3]The Court notes that Parker's opposition to this motion misinterprets Parker's deposition. (Record Document 634-1 at 12). While at initial glance, it seems from Parker's deposition the term "nigger" or some other racially derogatory term was used in this particular encounter because Parker answers in the affirmative to the question "Did he use the "N" word or any other racially derogatory term as he was speaking about you while you were there?"(Record Document 620-4, Plaintiff's Deposition, 93, 4-7). However, a complete reading of the surrounding portions of the deposition removes any uncertainty when shortly thereafter, when asked if Selvage ever confirmed he used the term "nigger" in that particular encounter, Parker responds "No. That was something that happened a while back....About three weeks to a month [before the encounter of January 21, 2003]." (Record Document 620-4, Plaintiff's Deposition, 94, 1-14). See also (Record Document 638-1, 4-6).

boys pass you all. You all are out here for play. You all are out here wasting my time, the company time. You all ought to quit." (Record Document 620-4, Plaintiffs deposition, at 77, 5-10).[4] Parker alleges no other instance of racial discrimination during his time at KCS other than broad accusations not backed in the record.

Parker states the only incident that was reported to a supervisor at KCS was the January 21, 2003 encounter. In this encounter, Selvage initiated contact with Lane Bonds, who was the Trainmaster, stating that Parker was not meeting expectations and that he was "tired of" Parker. Parker was present when this phone call was made. (Record Document 620-4, Parker deposition, at 92, 14-25). Subsequently, Parker informed Bonds that Selvage had called him "an MF" but at no point did Parker mention Selvage's use of the "N" word. (Record Document 634-1 at 9). After this encounter, Bonds issued a letter to Parker notifying him that his "application had been disapproved," and his employment with KCS was terminated. (Record Document 620-2 at 7).

Following his termination, Parker filed the above-captioned matter alleging various claims against KCS. (Record Document 5). Subsequently, after preliminary motion practice, the Plaintiffs were broken into 19 trial groups. (Record Document 492). The pairing was based on the Plaintiffs' respective claims. Parker was placed in group 3 with Clarence

---

[4]Parker points to his deposition which states, "But remember, this [is] something that has been going on. He had the -- since I got to the railroad, he had been picking on me" for support that racial discrimination was a "severe and pervasive" issue for Parker at KCS. (Record Document 634-1 at 15). However, reading this in context, Parker is referring to a general disdain Selvage had for Parker, a disdain Parker himself claims was due to the fact Parker was also a law enforcement officer. (Record Document 620-4, Plaintiff's Deposition, 94, 1-14).

Cargo and Leon Sterling as they all worked as conductors on the Train Crew in New Orleans. (Record Document 492).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

---

[5]The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

**LAW AND ANALYSIS**

**Hostile Work Environment**

A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Stewart v. Mississippi Transport Commission, 586 F.3d 321 (5th Cir. 2009) (quoting National R.R. Passenger Corp. V. Morgan, 536 U.S. 101 (2002)). To establish his claim for a hostile work environment, Parker must show that:

> 1) he belongs to a protected class; 2) he was subjected to unwelcome harassment; 3) the harassment was based on race; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action.

Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005). The alleged discrimination must have "created an environment that a reasonable person would find hostile or abusive." Id. Courts in this Circuit determine hostile environment considering the totality of the circumstances. Factors to consider include: "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." Id.; see also Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Although "[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive" to support evidence of a Title VII violation, DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir.1995), "simple teasing, offhand comments,

and isolated incidents, (unless extremely serious) will not amount to discriminatory charges" that can survive summary judgment. Hockman v. Westward Communications, LLC, 407 F.3d 317, 328 (5th Cir.2004). Parker's own subjective beliefs, however genuine, cannot form the basis of judicial relief. Nichols v. Lewis Grocer, 138 F.3d 563 (5th Cir.1998); Little v. Republic Refining Co., 924 F.2d 93, 95 (5th Cir.1991).

The jurisprudence of this Circuit establishes a very high burden for Parker advancing a claim for a hostile work environment on racial grounds. From this Court's review of the total record, Parker has failed to meet that burden. During Parker's employment with KCS, he can only name two (perhaps three) specific instances of a racially charged encounter with a KCS employee. Further, Parker did not report any of these occurrences to his management at KCS. In reviewing the record, it appears that Parker is specifically alleging three instances of the use of the word "nigger" to show a hostile work environment. The first use was by Daniel Johnson during training, the second by Larry Selvage directed at Parker and two of his co-workers, and third directed at Parker when he was working with Selvage.[6]

In the analysis of a hostile work environment claim, the Court begins by taking these three occurrence in the totality to determine if these were pervasive or severe enough to create a hostile work environment. Parker has presented a maximum of three incidents of discrimination. The first incident by Johnson was when Johnson referred to his attendance of an "N" club. This comment was not directed at Parker. While this should not be determinative in a hostile work environment claim, it does relate to the severity of the

---

[6] This third occurrence alleged by Parker seems to come from a misinterpretation of Parker's deposition, however, in an abundance of caution, the Court will address Parker's view of the deposition. See Factual Background, supra.

discrimination. The Court does not view this encounter as an example of a "workplace [that] is permeated with discriminatory intimidation, ridicule, and insult."

The second incident by Selvage was directed at Parker when Selvage called Parker and two co-workers "little Ns." However, in Parker's deposition he concedes that the reason for Selvage's statements were not racially motivated but rather motivated by a disdain for the fact Parker was a law enforcement officer. (Record Document 620-4, Plaintiff's Deposition, at 80-81). By Parker's own statements, this encounter was not a severe instance of racial discrimination but rather a showing of disdain for law enforcement. It is the Court's view that in this particular instance, the use of a single racial epithet uttered by a fellow black male does not elevate this encounter to the level of severe racial discrimination as it had no racial animus.

In the final encounter, it appears the same analysis as the previous encounter with Selvage is appropriate. This encounter involved Selvage's verbal attack on Parker, calling him an "MF" and perhaps including the word "nigger" or some other racially charged term. Selvage's motivation for this verbal encounter was his opinion that Parker's work was substandard and was, therefore, not racially charged. (Record Document 620-4, Plaintiff's Deposition, at 91-94). Again, here the allegation of a single racial epithet does not bring this to the level of severe racial discrimination.

Taking these three encounters together, the most racially charged appears to be the encounter with Daniel Johnson. The two encounters with Selvage had nothing to do with the race of Parker and the only thing racially insensitive and derogatory was twice using the word "nigger." Since "mere utterance of an... epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment," the mere use of

the term "nigger" three times over four months is not sufficient enough to survive summary judgment. Shepard v. Comptroller of Public Accounts of State of Texas, 168 F.3d 871 (5th Cir. 1999) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)). Further, the Fifth Circuit has upheld granting summary judgment in cases where there have been three specific instances of racial discrimination, holding that they were isolated instances not rising to the level of a hostile work environment. See Turner v. Baylor Richardson Medical Center, 476 F.3d 337 (5th Cir. 2007);[7] see also Johnson v. TCB Construction Co., 334 Fed. Appx. 666 (5th Cir. 2009).[8] These three instances, involving racially charged comments, are not consistent or severe enough to show that the workplace was pervasive with discriminatory intimidation, ridicule and insult. Therefore, a reasonable juror cannot find that these isolated events create a hostile work environment.

Additionally, the final prong of the hostile work environment is notice to the employer. Parker must show actual notice or that KCS should have known of the harassment. When harassment is perpetrated by a "supervisor or immediate or successively higher authority over plaintiff" there is no need for notice to the employer. Celestine v. Petroleos de

---

[7] Where a black female working at a hospital brought a claim for a hostile work environment citing use of the term "ghetto children" pervasively by a supervisor in regards to patients at the hospital, as well as suggesting the plaintiff attended a college where "African American students attended evening classes because they could not qualify for regular admission," showing surprise by the fact the plaintiff shopped at an upscale shopping mall and finally showing further surprise when her supervisor discovered her son's hobby of buying and selling cars. The Court granted summary judgment for the defendant in this case stating that the use of "ghetto children" stopped when asked and the other three instances were not more than isolated events. Turner v. Baylor Richardson Medical Center, 476 F.3d at 348.

[8] Where a supervisor accused an employee of acting "like a damn nigger" but the court held it did not create a hostile work environment as it was an isolated event and either way, did not alter his work performance.

Venezuella SA, 266 F.3d 343, 353-354 (5th Cir. 2001). In a case where the plaintiff failed to follow the proper procedure outlined by her employer to report harassment but the plaintiff did have conversations with her employer's Human Resources department about the alleged harassment, the court characterized the question of actual or constructive notice as a "close call." Farpella-Crosby v. Horizon Health Care, 97 F.3d 803 (5th Cir. 1996). Neither of these cases are of any refuge to Parker. He alleges harassment from a fellow trainee, Johnson, and a fellow conductor, Selvage. Selvage may have had seniority over Parker but it has not been alleged that Selvage had supervisory powers or any higher authority. Therefore Parker must show that he gave notice to KCS of these instances of harassment. Unlike in Farpella-Crosby, Parker did not have any conversations with KCS management. "Parker admitted he was aware of KCS's anti-harassment policy and knew the policy required employees to report instances of harassment." (Record Document 620-1 at 11). Parker admits that he did not alert KCS and seeks to excuse this failure by asserting that since he was just beginning his employment, he did not want to bring "chaos" to the company. (Record Document 634-1 at 11). Parker submits that "Selvage's racist reputation was well known among black employees working at KCS." See Id. However, mere conclusory assertions, without any further specific evidence, cannot save Parker from summary judgment. He admits KCS was never notified of the harassment and cannot show any proper summary judgment evidence of how KCS should have known of the harassment. As such, Parker admits it cannot meet its *prima facie* claim of a hostile work environment. Merely being new to a company is not a valid excuse so as to relieve Parker of proving the fifth element of a hostile work environment.

Due to the fact that Parker cannot show severe and pervasive harassment or show that he ever notified KCS of the harassment or that KCS should have known of the harassment, a reasonable jury could not find for Parker and granting Defendant's Motion for Summary Judgment is appropriate.

## CONCLUSION

Based on the foregoing analysis, the Court finds that Plaintiff Harry Parker has conceded all of his claims save the hostile work environment claim. Additionally, Parker has failed to show the Court sufficient evidence to raise a dispute of material fact that Parker indeed endured a hostile work environment.

Accordingly, **IT IS ORDERED THAT** the foregoing motion [Record Document 620] be and is hereby **GRANTED.** Plaintiff Parker's claims of Defamation, Invasion of Privacy, Negligent and Intentional Infliction of Emotional Distress, Wrongful Termination, Good Faith and Fair Dealings, as well as claims arising under the Louisiana Employment Discrimination Law and Section 1981 are **DISMISSED WITH PREJUDICE**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

Thus done and signed, in Shreveport, Louisiana, this 2nd day of September, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE