UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CLARENCE CARGO, *et al.*, | CIVIL ACTION NO. 05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN RAILWAY COMPANY | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment on Plaintiff Clarence Cargo's remaining claims (Record Document 622) filed by Defendant Kansas City Southern Railway Company ("KCS"). The motion is grounded in the argument that many of Cargo's claims are barred by the doctrine of res judicata and that Cargo cannot meet his prima facie burden for the rest. See id. Plaintiff opposes the motion. [Record Document 630]. Upon review of Plaintiff's Opposition (Record Document 630), it is apparent that Plaintiff has expressly conceded the following claims: Hostile Work Environment; Age Discrimination; All State Law Claims; and his Louisiana Employment Discrimination Claim. Further Cargo concedes his Disparate Impact claim by not addressing it in his opposition. The claims that are properly before this Court are KCS's claim of res judicata and Cargo's following claims: Disability Discrimination under the ADA; Retaliation; Race Discrimination; and Constructive Discharge.

For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED.** Plaintiff Cargo's claims under Louisiana State Law and Cargo's claim of a Hostile Work Environment; Age Discrimination; Louisiana Employment Discrimination; Disability Discrimination under the ADA; Retaliation; Race Discrimination; and Constructive

Discharge are **DISMISSED**. Further, Cargo's motion to stay is **DENIED** and KCS's motion to strike (Record Document 640) is **DENIED AS MOOT**.

## FACTUAL BACKGROUND

Clarence Cargo is an African American male. (Record Document 622-2 at 1). Cargo began working at KCS in 1973. See id. Cargo began as a switchman but was promoted to conductor "in or around 1987." (Record Document 622-2 at 2). In 2003, Cargo was suspended for "several missed calls and failing to inspect a train when the detector went off." (Record Document 630-10 at 2). In 2004 Cargo was discharged from KCS for being in violation of "numerous General Code of Operating Rules." (Record Document 622-2 at 9). The decision to discharge Cargo was then appealed to the Manager of Labor Relations and the Director of Labor Relations at KCS but both upheld the discharge. (Record Document 622-2 at 10). Subsequently, the National Railroad Adjustment Board reinstated Cargo without back pay. (Record Document 622-2 at 10).

In order for Cargo to return to work, KCS required that he take a "return to work physical examination" which was required of any train crew employee who missed more than 90 consecutive days of work. (Record Document 622-2 at 11). The result of this physical appears to be that Cargo required an evaluation by the "Chief Medical Officer" before being allowed to return to work as he needed a cardiac evaluation. (Record Document 622-7 at 43). Cargo was then evaluated by a Dr. Leslie Levenson who claims to have been referred by Cargo's family physician but the record shows that he was referred by KCS. (Record Document 622-7 at 45). Levenson's report claims to have warned Cargo of various health issues. Levenson claimed that Cargo may required

intervention regarding his chest pains. (Record Document 622-2 at 14). Subsequently, Cargo's union wrote to KCS requesting Cargo be put back-to-work. (Record Document 622-2 at 15). KCS responded by stating that Cargo was not medially qualified to return to service but stated Cargo could continue to seek medical treatment to improve the condition of his health so as to become qualified to return to work. (Record Document 622-2 at 15-16). Cargo decided to retire because he could not afford the medical treatment that Dr. Levenson told him he required to return to work at KCS. (Record Document 622-2 at 16).

As a result of the 2003 suspension and 2004 discharge, Cargo filed a charge with the EEOC claiming that he was the victim of racial discrimination and retaliation for engaging in a protected activity. (Record Document 622-2 at 20). Cargo sought damages for back pay, pain and suffering, loss of enjoyment of life and punitive damages. (Record Document 622-2 at 21). These claims were dismissed through summary judgment by the Eastern District of Louisiana. (Record Document 622-2 at 21).

Cargo is the named Plaintiff in the above-captioned matter alleging discrimination by KCS. [Record Document 1]. Subsequently, after preliminary motion practice, the Plaintiffs were broken into 19 trial groups. [Record Document 492]. The pairing was based on the Plaintiffs' respective claims. Sterling was placed in group 3 with Clarence Cargo and Harry Parker as they all worked as conductors on the Train Crew in New Orleans. (Record Document 492).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."[1] Quality Infusion Care, Inc. v. Health Care Serv. Corp., — F.3d —, No. 09-20188, 2010 WL 5188825, at *2 (5th Cir. Dec. 23, 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## LAW AND ANALYSIS

### A. Res Judicata

KCS argues that "Cargo's claims that were litigated in [the EEOC charge filed by Cargo], or could have been brought as a part of that lawsuit are barred by the doctrine of res judicata." (Record Document 622-1 at 2). In response, Cargo makes an argument that KCS claims "parrots the same arguments made and same cases cited by co-Plaintiff Frank in response to KCSR's motion for summary judgment on Frank's claims." (Record

---

[1] The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

Document 639 at 2). The Court notes that Record Document 527, while similar, are not exact replicas. Specific instances of Cargo's creativity in this newly drafted opposition for summary judgment can be found simply by seeing the decision to no longer bold "the private right of action remains an essential means of obtaining judicial enforcement of Title VII." (Compare: Record Document 527 at 10; Record Document 630 at 3). Further, the Court is impressed with Cargo's innovative decision to no longer underline "by aggrieved" for Cargo's claim while this seemed appropriate for Frank's claims. (Compare: Record Document 527 at 12; Record Document 630 at 5).

Res judicata is appropriate if: 1) the parties to both actions are identical (or at least in privity); 2) the judgment in the first action is rendered by a court of competent jurisdiction; 3) the first action concluded with a final judgment on the merits; and 4) the same claim or cause of action is involved in both suits. See United States v. Shanbaum, 10 F.3d 305, 310 (5th Cir.1994). Cargo only argues the first prong of this analysis. Cargo admits making the same allegations in the EEOC lawsuit as he is in the case at bar. (Record Document 622-2 at 21). Further Cargo sought personal damages in the EEOC lawsuit. (Record Document 622-2 at 21). The EEOC brought suit for the same claims at bar on behalf of Cargo. Therefore, the Court adopts its reasons in Record Document 600 for finding that res judicata does apply for any claims that are based in the 2003 suspension or 2004 discharge as Cargo has previously litigated these claims, through the EEOC, before the Eastern District of Louisiana.

The key aspect of Cargo's ingenuity in response to KCS's motion for summary judgment was asking the Court for a stay on this ruling until the EEOC lawsuit is heard on appeal by the Fifth Circuit. Cargo requests that a stay be issued "to the extent that issues

overlap with judgment in the EEOC's case until procedure is completed." (Record Document 630 at 8). The Court finds no reason to stay the case at bar as summary judgment "is always with prejudice. It is on the merits and purports to have a res judicata effect on any later action." Rivera v. PNS Stores, Inc., 2011 WL 2749627, *3 n. 18 (5th Cir. 2011). See also Fidelity Standard Life Insurance Company V. First National Bank & Trust of Vidalia Georgia, 510 F.2d 272, 273 (5th Cir. 1975) (Noting that if appellant prevails on its appeal, it would be entitled from relief from that case.) If Cargo prevails on its appeal with the EEOC, it will be entitled to relief from the Eastern District of Louisiana in that particular case. There is no reason for this Court to stay this proceeding.

Cargo's claims arising from his 2003 suspension and 2004 discharge are barred by res judicata and the Court finds no reason to stay these proceedings.

**B.    Americans with Disabilities Act[2]**

---

[2]KCS states that this argument should not be heard by the Court. KCS points to Cargo's complaint, which states "defendant's conduct constitutes discrimination based on a disability," and asserts that this is not a proper pleading of a "regarded as" claim. (Record Document 639 at 8). At first glance, KCS's stance appears to be without merit. 42 U.S.C. § 12102 states: "The term 'disability' means, with respect to the individual -- being regarded as having such an impairment." 42 U.S.C. § 12102 (1)(C). Therefore, Cargo's use of the term "disability" does encompass a "regarded as" claim when using ADA definitions.

It should be noted, however, that no discovery was cited in support of KCS's position nor was any showing made on the record that a "regarded as" claim was a surprise to KCS. In a similar case, a "regarded as" claim was excluded because the "district court found that [Plaintiff] did not plead a 'regarded as' claim in his complaint, nor did his questions during discovery and statement during a settlement conference serve to notify [Defendant] that he would assert such a claim." Adams v. Strombecker Corp., 153 F.3d 726 (10th Cir. 1998). In Adams the claim was dismissed at the pretrial conference. See id.

Further, "[t]he whole issue of pleading in an ADA case has caused the courts some trouble. See Sacay v. Research Foundation of City University of N.Y., 44 F.Supp.2d 496, 500-01 (E.D.N.Y.1999) ("Courts have differed over the pleading requirements for an ADA claim."). There is some support for the position taken by the defendant. See id. at 500 (court need not consider "regarded as" claim because plaintiff does not allege that she was unjustly regarded as having a medical impairment when she was in fact not disabled);

Cargo alleges that KCS discriminated against him under the Americans with Disabilities Act ("ADA"). In order to survive summary judgment, Cargo must satisfy the prima facie requirements under the ADA: (1) He has a disability; (2) He is qualified for the position he seeks; (3) He suffered an adverse employment action as a result of the disability. Jenkins v. Cleco Power, LLC, 487 F.3d 309 (5th Cir. 2007). A disability is defined as "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) record of such impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102 (1) (A)-(C). A "regarded as" case required "the individual [establish] that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102 (3). "A person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." Murphy v. United Parcel Service, Inc., 527 U.S. 516, 521-522 (U.S.,1999).

---

Francis v. City of Meriden, 129 F.3d 281, 285 (2nd Cir.1997) (In order "to state a claim under the 'regarded as' disabled prong of the ADA ..., a plaintiff must allege that his employer regarded him as having an 'impairment' within the meaning of the statute[ ]."). However, there is also support for the position taken by the plaintiff. See Kolovos v. Sheahan, 1999 WL 1101919 (N.D.Ill.1999) ("We reject defendant's argument that we should preclude Kolovos from advancing this theory because he failed to allege in his complaint that he was 'regarded as disabled.' The Federal Rules do not require a plaintiff to plead his legal theory, Kolovos did allege that 'he was discriminated against by defendant because of his disability.'... The legal definition of disability includes the 'regarded as' theory that Kolovos argues here.")." Everist v. Blue Cross & Blue Shield, 2000 WL 1708504, *6 (D. Kan. 2000)

The McDonnell Douglas burden shifting analysis applies to this claim if Cargo fails to put forth any direct evidence of discrimination. Crawford v. U.S. Department of Homeland Security, 245 Fed. Appx. 369, 380. The McDonnell Douglas burden shifting applies to cases where the plaintiff only provides circumstantial evidence. Under this analysis, Cargo must first make a prima facie showing of disability discrimination. If Cargo is successful then the burden shifts to KCS to "articulate a legitimate non-discriminatory reason for the adverse employment action." E.E.O.C. v. Chevron Phillps Chemical Co., LP, 570 F.3d 606, 615 (5th Cir. 2009). Finally, if KCS is able to articulate such a reason, the burden shifts back to Cargo to prove this reason is pretextual. See id.

**i. Direct Evidence of Discrimination**

Cargo alleges this is a "regarded as" claim based upon his disqualification in 2006. (Record Document 630 at 9). Cargo claims that KCS "regarded Mr. Cargo as disabled" due to a perceived heart condition based upon stents put in his heart in 1999 and use of nitroglycerin. Further, Cargo alleges KCS perceived him as substantially limited in the major life activity of breathing and pumping blood." (Record Document 630 at 9, 11).

Cargo argues this is a direct evidence case and there is no need for the McDonnell Douglas framework. (Record Document 630 at 9). Cargo appears to point to two pieces of evidence to support this theory. First, Cargo claims "there is no dispute that KCS medically disqualified Mr. Cargo because of his heart condition. Thus KCS's actions do not serve as a pretext to discriminating, but rather as direct evidence of alleged disability discrimination." (Record Document 630 at 9). Second, Cargo appears to allege that at his initial back-to-work physical, a nurse placed a telephone call to the KCS Manager of Human Resources

and only after this call did the doctor require additional testing. (Record Document 630 at 9).

Addressing Cargo's first piece of evidence, KCS claims Cargo was dismissed simply because he failed a back-to-work physical and not because of a perceived heart condition based on his use of nitroglycerin and his previously inserted heart stent. (Record Document 639 at 9) The fact KCS would not allow Cargo to return to work because of the failed physical does not, in and of itself, appear to equal disability discrimination. Courts have held that "requiring an employee to submit a medical release and be cleared by [her] physician is not evidence that an employer regards the employee as disabled."[3] Parker v. Port Authority of Allegheny County, 90 Fed Appx. 600, 604 (3rd Cir. 2004); see also Somers v. City of Minneapolis, 245 F.3d 782 (8th Cir. 29001). Therefore requesting a physical does not qualify as direct proof of discrimination. Further the Fifth Circuit "has held that an employer does not necessarily regard an employee as substantially limited when it discharges the employee because he can not perform his job." Hinojosa v. Jostens Inc.,128 Fed.Appx. 364, 367-368 (5th Cir. 2005) In Hinojosa, the Fifth Circuit stated that terminating the plaintiff because he could not perform the job duties of any job available does not mean that the defendant "considered him substantially limited in a major life activity." See id. "[An] employer may regard an employee as impaired or restricted from one position or a narrow range of jobs without regarding him as disabled." Lejeune v. Omni

---

[3] "We conclude that when health problems have had a substantial and injurious impact on an employee's job performance, the employer can require the employee to undergo a physical examination designed to determine his or her ability to work, even if the examination might disclose whether the employee is disabled or the extent of any disability."Yin v. State of Cal.  95 F.3d 864, 868 (9th Cir. 1996)

Energy Services Corporation, 2010 WL 378305, *10 (W.D. La. 2010). The "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." See id. Therefore, the fact that KCS disqualified Cargo based on a physical is not, alone, sufficient to be constitute direct evidence of disability discrimination.

A "regarded as" claim requires a showing that the "employer actually entertain[ed] misperceptions about the individual." Kemp v. Holder, 610 F.3d 231, 237 (5th Cir. 2010) In Kemp the plaintiff's "regarded as" claim failed because he did not produce any evidence to support the purported misconception. See id. While Cargo points to three pages of his deposition to back his position that this is direct evidence of disability discrimination, the evidence elicited does not rise to that level.[4] (Record Document 630 at 13). At the very least, this case law makes it clear that Cargo's disqualification based on the physical is, at best, circumstantial evidence of discrimination.

Regarding the second piece of evidence, the Court is not persuaded this amounts to direct evidence either. In his opposition to KCS's Motion for Summary Judgment, Cargo claims that the nurse called a KCS employee and, based on this phone call, required additional testing. This accusation is not directly supported in the record. Cargo's deposition shows that a nurse interrupted her evaluation of Cargo and told Cargo that she needed to

---

[4]Those three pages show the following: Cargo spoke with a nurse who told him he needed more evaluation; Cargo does not know if that nurse talked to the doctor about the results of the exam; the nurse called "the guy over the Medical Department of KCS"; Cargo did not hear this conversation; Cargo believed the decision to see the Chief Medical Officer was from the doctor's office and not KCS; Cargo never did see the Chief Medical doctor; and finally Cargo authenticated parts of the letter G.F. Lief sent Cargo's union, specifically that Dr. Levenson was so concerned about Cargo's health he would not perform the suggested additional tests but stated Cargo would require additional testing and that the Chief Medical Officer who reviewed Cargo's evaluation of Dr. Levenson determined that Cargo was not qualified to return to work. (Record Document 622-4 at 34, 40).

call Phil Barzee, Manager of Human Resources at KCS. (Record Document 622-4 at 34) When the nurse returned, she told Cargo he needed additional testing. See id. Cargo admits he was not privy to the conversation and that he thought the request to see the Chief Medical Officer came strictly from the doctor's office. See id. This does not amount to direct evidence and merely shows circumstantially what may have happened when the nurse left the room. As a result of Cargo's inability to provide direct evidence of discrimination, the McDonnell Douglas framework applies.

### ii. Prima Facie Showing of Disability Discrimination

Under McDonnell Douglas, a plaintiff must be able to make out a prima facie showing of disability discrimination. Therefore Cargo must be able to put forth evidence that (1) He has a disability; (2) He is qualified for the position he seeks; (3) He suffered an adverse employment action as a result of the disability. 42 U.S.C. § 12102 (1) (A)-(C). Since this is a "regarded as" claim, he must show he was "regarded as" having a disability. Without fully analyzing Cargo's prima facie case, the Court, for purposes of this Motion for Summary judgment only, will assume a prima facie showing as been made; however, it has no bearing on the final disposition of this case.

### iii. Legitimate and Non-Discriminatory Reason for Termination

Under McDonnell Douglas, even if a plaintiff is able to make a prima facie showing of disability discrimination, the defendant then can come forward with a legitimate and non-discriminatory reason for the particular adverse employment action. E.E.O.C. v. Chevron Phillps Chemical Co., LP, 570 F.3d 606, 615 (5th Cir. 2009). Therefore the Court turns its attention to KCS's ability to prove such a reason.

KCS states that it based its decision to disqualify Cargo solely on what doctors told them of his inability to pass his physical.[5] (Record Document 639 at 10). The record shows that the first doctor Cargo saw stated Cargo required review by the Chief Medical Officer and further that he needed a "cardiac evaluation." (Record Document 622-2 at 12). Dr. Levenson told Cargo he needed to have an angiography. (Record Document 622-2 at 13). Cargo does not dispute that he did not follow up on these two visits and therefore did not ever get the tests the doctors suggested. Further, at no point did Cargo submit documentation to KCS that a cardiologist cleared him to work at KCS. (Record Document 622-2 at 15). As a result of these examinations, KCS's General Director of Labor Relations, G.F. Leif, sent the above referenced letter to Cargo's union stating the "Chief Medical Officer determined that Mr. Cargo was not medically qualified for return to service" and that Cargo "can proceed to seek medical treatment to eliminate or improve the condition to a point where he is able to be medically qualified to return to duty." (Record Document 622-7 at 50).

KCS has shown evidence that it made its determination based on the recommendation of their Chief Medical Officer after his review of Cargo's evaluations. Cargo has offered no proper summary judgment evidence to refute this other than the alleged phone call that may have taken place between the nurse and an employee of KCS.[6]

---

[5]Cargo has made no attempt to dispute the validity or need of this physical or whether passing this physical was reasonably related to job performance. This being the case, the Court assumes Cargo does not contest the validity of KCS's requirement of the return to work physical.

[6]The mere conclusory statement that the fact Cargo was disqualified is in and of itself proof of disability discrimination is not sufficient for Cargo to meet his summary judgment burden.

Therefore the only competent evidence before the Court shows that KCS relied on a physician's opinion in disqualifying Cargo for his return to duty. Courts have held "[t]he provision addressing perceived disabilities is intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." Breitkreutz v. Cambrex Charles City, Inc., 450 F.3d 780 (8th Cir. 2006). "If a restriction is based upon the recommendations of physicians, then it is not based upon myths or stereotypes about the disabled and does not establish a perception of disability." See id. Reliance on Dr. Levenson's report and the Chief Medical Officer's determination is a legitimate and nondiscriminatory reason for KCS to disqualify Cargo.

### iv. **Pretextual Showing**

KCS had a legitimate and nondiscriminatory reason for disqualifying Cargo. Therefore, under McDonnell Douglas, the burden shifts back to Cargo to prove this reason given above is a pretext. "'To raise an inference of pretext in the face of the employer's legitimate, non[retaliatory] explanation, the plaintiff must undermine the employer's credibility to the point that a reasonable jury could not find in its favor.'" Johnson v. TCB Construction Co., Inc., 334 Fed. Appx. 666, 672-673 (5th Cir. 2009).

Cargo does not address the issue of a pretext in his opposition to summary judgment. Cargo, however, has loosely alleged that the doctors involved in the aforementioned evaluations were controlled by or influenced by KCS's employees.(Record Document 630 at 9-10). However, the record is void of any evidence supporting this claim. Cargo, as noted above, points out that at the initial back-to-work physical a nurse called Phil Brazee, the manager of human resources at KCS (who was mistakenly identified by

Cargo as "the guy over the Medical Department of KCS") but Cargo makes no attempt to show specific evidence as to what was said in that phone call. (Record Document 630 at 9). This certainly is not enough evidence to show control or influence; further it is not enough to undermine the credibility of KCS's purported reason for firing Cargo. Cargo also states that he was not having chest pains when he visited the doctors. (Record Document 630-1 at 8). This, too, is not strong enough evidence so as to successfully attack or undermine the credibility of KCS or the doctors who examined him. It is also important to note Leif's statement that Cargo's disqualification was up for reconsideration at any point. Cargo admitted he did not have the tests run that were suggested to him by the doctors that examined him. He stated he could not afford the examination so he decided to retire. (Record Document 622-1 at 16) There is nothing in the record to show that Leif, or KCS, would not have reinstated Cargo with a proper bill of health. This supports KCS's credibility that they were relying on a doctor's evaluation and not on anything else.

KCS makes a showing that every conductor that misses 90 days of work or more is required to take a back-to-work physical. (Record Document 622-1 at 11). Cargo was not singled out with this physical and has not shown any evidence that KCS's reason for disqualification is a pretext for discrimination. Absent a showing by plaintiff, and absent any evidence found by the Court in the record, the Court finds that Cargo cannot prove that KCS's reason for disqualification was pretextual. Therefore, Cargo cannot prevail in his ADA claim.

### C.    Retaliation

Cargo claims KCS retaliated against him for filing suit with the EEOC. Retaliation claims are also subject to the McDonnell Douglas framework. 411 U.S. 792, 93 S.Ct. 1817,

36 L.Ed.2d 668 (1973). "To establish a prima facie case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir.2007).

As an initial matter, the only retaliation claim properly before this court is Cargo's claim regarding "defendant's failure to return him to work following a labor board's decision finding KCS's termination decision 'excessive'." All other claims arising from actions that were, or could have been, litigated in Cargo's EEOC lawsuit are barred by res judicata.

Cargo claims that following the labor board's decision to reinstate him without back pay, he was disqualified from employment at KCS in retaliation for filing charges of discrimination with the EEOC. (Record Document 630 at 12). In 2003, Cargo filed a charge of discrimination with the EEOC due to a suspension in February of 2003. (Record Document 622-2 at 22). He amended this charge to include his May 2003 suspension and his discharge in January of 2004. See id. In 2005, litigation began on this claim in the Eastern District and KCS prevailed through summary judgment. (Record Document 622-2 at 21). After Cargo was not reinstated because of his disqualification, Cargo filed another charge with the EEOC in 2007. The EEOC issued a Right to Sue Letter for Cargo. (Record Document 622-2 at 23). KCS informed Cargo that he was disqualified, at the latest, on October 31, 2006 when G.F. Leif sent Cargo's union a letter. (Record Document 622-7 at 50). Cargo is claiming retaliation from his 2003 charge and subsequent lawsuit.

KCS concedes the first two prongs of a retaliation claim. Therefore all that remains is for Cargo to present evidence of a causal link between the protected activity of filing a

charge with the EEOC and the adverse employment action in his disqualification. Cargo offers statements from A.J. Sonnier made in 2003 that he would fire Cargo before he retired.[7] (Record Document 630 at 12). Further Cargo argues there was a temporal nexus between filing the charge and the retaliation. Cargo admittedly offers no evidence that Sonnier had anything to do with KCS's decision to disqualify Cargo from work. Cargo claims Sonnier is one of the "chief two supervisors at the New Orleans yard," however Cargo offers no evidence that he played any role in his disqualification. (Record Document 622-2 at 30.) Without any evidence that Sonnier is linked to KCS's decision to disqualify Cargo, his statements are of no aid to Cargo. As to the temporal aspect, the alleged protected activity occurred in 2003. The adverse employment action occurred in 2006. While courts have held 5 days between the two is sufficient to make a prima facie showing, surely between two or three years is not. Evans v. City of Houston, 246 F.3d 344, 356 (5th Cir. 2001).

As Cargo is unable to make a prima facie showing that there is a causal link between filing the 2003 EEOC charge and his 2006 disqualification, he cannot carry his summary judgment burden with respect to this claim.[8]

---

[7] KCS argues that Cargo overheard Sonnier tell this to someone else and therefore it is hearsay within hearsay. The Court notes this is only a single layer of hearsay as there is only one declaration, Sonnier's comments, and therefore Cargo would only have to show a hearsay exception for the one declaration. The Court is willing, *arguendo*, to view this declaration as if Cargo was able to show that it was an admission by an agent of KCS in the course and scope of his employment and therefore admissible.

[8] Since Cargo failed to make a prima facie showing in his retaliation claim, there is no need to continue the McDonnell Douglas claim; however if the Court were to do so, it would look very similar to the corresponding analysis in his ADA claim.

**D. Race Discrimination**

Cargo claims he was subject to racial discrimination in that he suffered "adverse employment action through his termination and lack of offer of reinstatement through a leniency agreement." (Record Document 630 at 16). His termination and lack of a reinstatement agreement all stem from his 2004 discharge previously litigated by the EEOC. Since these are the only claims of racial discrimination made by Cargo, they are barred by res judicata and shall be dismissed. Cargo failed to respond to KCS's arguments regarding KCS's failure to reinstate Cargo, and therefore KCS is entitled to summary judgment on this claim. See Celotex Corp. V. Catrett, 477 U.S. 317. 333 n.3 (1986).[9] Further, KCS's motion to strike evidence in conjunction to this claim is denied as moot.

**E. Constructive Discharge**

Cargo alleges that he was constructively discharged when he took early retirement. "A constructive discharge has occurred when an employee resigns after 'the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign.' Barrow v. New Orleans S.S. Ass'n, 10 F.3d 292, 297 (5th Cir.1994). "[T]o succeed on a constructive discharge claim, the plaintiff must show a

---

[9]"Once the moving party has attacked whatever record evidence-if any-the nonmoving party purports to rely upon, the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f). See 10A Wright, Miller & Kane § 2727, pp. 138-143. Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial. See, e.g., First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)."

greater degree of harassment than is required for a hostile work environment claim." Thomas v. Atmos Energy Corp., 223 Fed. Appx. 369, 377 (5th Cir. 2007); citing Hockman v. Westward Communs., LLC, 407 F.3d 317, 332 (5th Cir.2004). In a constructive discharge claim, a plaintiff is "required to satisfy the stringent test for constructive discharge. A constructive discharge has occurred when an employee resigns after 'the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign.'" Ranel v. Gilley Enterprises-Louisiana Partnership, 2009 WL 1310879, *4 (W.D.La.,2009) (citations omitted).

Cargo was discharged in January of 2004. However, he was reinstated on appeal in July of 2006. He was never fully reinstated as he did not pass a back-to-work physical. Cargo retired in 2007. (Record Document 622-1 at 16). Defendant claims that he could not have been subject to intolerable working conditions as he was subject to no working conditions for more than three years. (Record Document 622-1 at 16). Further the defendant contends that even if the Court were to refer back to his conditions before his termination in 2004, it still would not meet this high burden. See id. Cargo, in response, only contends that a constructive discharge claim is available to him because he did not quit but was disqualified by KCS even though he did not feel he had any medical restrictions. (Record Document 630 at 21). Further he claims he was subject to "months of frustration in attempting to return to work." See id. Cargo has failed to point to any evidence of an intolerable work environment and as such, cannot carry his summary judgment burden of creating a material dispute on this claim.

**F. Disparate Impact**

Cargo has conceded this claim. In his opposition of summary judgment, Cargo fails to address this claim at all and therefore fails to meet his summary judgment burden. <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317. 333 n.3 (1986)

## CONCLUSION

Accordingly, **IT IS ORDERED THAT** the foregoing motion (Record Document 622) be and is hereby **GRANTED.** Plaintiff Cargo's claims under Louisiana State Law and Cargo's Hostile Work Environment; Age Discrimination; Louisiana Employment Discrimination; Disability Discrimination under the ADA; Retaliation; Race Discrimination; and Constructive Discharge claims are **DISMISSED WITH PREJUDICE**. Further, Cargo's motion to stay is **DENIED** and KCS's motion to strike (Record Document 640) is **DENIED AS MOOT**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

Thus done and signed, in Shreveport, Louisiana, this 1st day of September, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE