UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CLARENCE CARGO, ET AL., | CIVIL ACTION NO. 05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN RAILWAY COMPANY | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment on Plaintiff Leon Sterling's various discrimination claims (Record Document 621) filed by Defendant Kansas City Southern Railway Company ("KCS"). The motion conveys reasons for the Defendant seeking dismissal of all claims raised by Sterling. (Record Document 621). Sterling, in opposition to Defendants Motion for Summary Judgment, responds stating "Plaintiff's claim boils down to a hostile work environment claim." (Record Document 629 at 1). Given this response, the Court will treat all claims, save the hostile work environment claim, as abandoned. For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED.** Accordingly, all of Sterling's claims of are **DISMISSED**.

**FACTUAL BACKGROUND**

Leon Sterling is an African American male. (Record Document 621-2 at 1). Sterling began employment at KCS in 1970 in the Mechanical Department. (Record Document 621-2 at 2). In 1977 Sterling, by request, was transferred to KCS's Transportation Department and began working as a brakeman in New Orleans. (Record Document 621-2 at 3). In 1983, Sterling was promoted to Conductor. (Record Document 621-2 at 5). Sterling

retired from KCS with full benefits on August 31, 2005, amounting to a nearly thirty-five year career with KCS. (Record Document 621-2 at 24).

Reviewing Sterling's opposition to Defendant's Motion for Summary Judgment, Sterling alleges/adopts various facts that support his abandoned claims. Sterling adopts facts relating to owed back pay, age discrimination, and a disparate impact claim. (Record Document 629-1). As all claims except for the hostile work environment claim are abandoned, the Court will only address the factual circumstances that the parties addressed in relation to the hostile work environment claim.

In a review of the record, the Court can pinpoint six instances alleged by Sterling that, together, led to a hostile work environment for Sterling. The first few instances involve the actions of Jimmy Love. It is not clear from the record what Jimmy Love's position at KCS was, but according to Sterling, he had "supervision of Plaintiff." (Record Document 629-1 at 7). The first of Love's actions is that in conversation with an African American co-worker of Sterling, Love is said to have referred to the co-worker as "you people." (Record Document 621-2 at 36). Further, in reference to Sterling and three other African American employees of KCS, Love at one point told them "to get the F out of here." (Record Document 629-2 at 5-6).[1] Finally, Love is said to have assigned Sterling and two Caucasian employees additional work with the promise of extra pay. The third allegation made by Sterling that the two Caucasian employees were compensated while Sterling was not. (Record Document 629-1 at 8). The fourth instance Sterling alleges is that KCS employee A.J. Sonnier was angry with Sterling at some point during his employment and told him "if

---

[1] When asked the race of one of three that were with Sterling, Sterling responded "African American...All of us were -- are"(Record Document 629-2 at 5-6).

you think I am going to apologize to your black ass; I'm not." (Record Document 621-2 at 36). The fifth allegation is that Sterling overheard Paul Seghers, a KCS employee, state in a telephone conversation "those black MFs." The sixth and final allegation consists of Sterling summarizing his employment at KCS: "Throughout Mr. Sterling's career, he heard and saw discrimination against other African-American trainmen. For example, if Caucasian trainmen were late for work, they 'received slack,' but if African-Americans were late for work, an investigation was called and they were given discipline."

Following his resignation, Sterling filed the above-captioned matter alleging various claims against KCS. (Record Document 1). Subsequently, after preliminary motion practice, the Plaintiffs were broken into 29 trial groups. (Record Document 492). The pairing was based on the Plaintiffs' respective claims. Sterling was placed in group 3 with Clarence Cargo and Harry Parker as they all worked as conductors on the Train Crew in New Orleans. (Record Document 492).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See

---

[2]The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

Id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## LAW AND ANALYSIS

**Hostile Work Environment**

A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Stewart v. Mississippi Transport Commission, 586 F.3d 321 (5th Cir. 2009) (quoting National R.R. Passenger Corp. V. Morgan, 536 U.S. 101 (2002)). To establish his claim for a hostile work environment, Plaintiff must show that:

> 1) he belongs to a protected class; 2) he was subjected to unwelcome harassment; 3) the harassment was based on race; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action.

Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005). The alleged discrimination must have "created an environment that a reasonable person would find hostile or abusive." Id. Courts in this Circuit determine hostile environment considering the totality of the circumstances. Factors to consider include: "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." Id .; see Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Although "[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive" to support evidence of a Title VII violation, DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir.1995), "simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges" that can survive summary judgment. Hockman v. Westward Communications, LLC, 407 F.3d 317, 328 (5th Cir.2004). A plaintiff's own subjective beliefs, however genuine, cannot form the basis of judicial relief. Nichols v. Lewis Grocer, 138 F.3d 563 (5th Cir.1998); Little v. Republic Refining Co., 924 F.2d 93, 95 (5th Cir.1991).

The jurisprudence of this Circuit establishes a very high burden for a plaintiff advancing a claim for a hostile work environment on racial grounds. From this Court's review of the total record, Sterling has failed to meet that burden.

To begin, Defendant raises various issues in its reply to Plaintiff's opposition regarding Plaintiff's failure to properly cite facts in the record and controvert the vast majority of Defendant's statement of material facts. While Defendant's contentions appear to have merit, the Court is not required to reach a conclusion on these allegations as Sterling cannot survive summary judgment on the merits.

The encounters listed by Sterling with KCS in general as well as Love, Sonnier, Seghers specifically must be able to allow a reasonable juror to conclude that KCS is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Stewart v. Mississippi Transport Commission, 586 F.3d 321 (5th Cir. 2009). When viewing the proper summary judgment evidence in the record, Sterling simply is not able to meet this high burden.

As stated *supra*, Sterling's allegations boil down to six specific but separate instances. Three of these allegations are of no aid to Sterling's claim. For instance, Sterling has made no showing that Love's command to three African American employees to "get the 'F' out of here" had any racial animus, which is a prong in a hostile work environment claim. Addressing KCS's alleged payment of funds to two similarly situated white employees but not Sterling, Sterling evidences this allegation by citing a portion of his deposition where he was shown his response to a formal written interrogatory that alleged this encounter. However, in the deposition, Sterling merely identified the document with an "okay" without going into further detail. (Record Document 629-1 at 7; Record document 621-4 at 67). Sterling did not attach this interrogatory to his opposition for summary judgment. Therefore, the interrogatory is not properly before the Court and the deposition testimony cited to by Sterling is not helpful in determining the specifics of this allegation. In contrast, Defendant's Motion for Summary Judgment shows that there were separate occasions where Sterling worked extra duties, notified the company of this extra work, and the company compensated him. (Record Document 621-2 at 28). Even analyzing this allegation as stated in Sterling's opposition to summary judgment, the record is simply void

of enough context or proper summary judgment evidence to allow a reasonable juror to assume a racial animus in this particular instance.

The third allegation that is of no aid to Sterling is that his broad assertion African Americans were treated unfairly throughout Sterling's career. (Record Document 629-1 at 8). The most specific instance Sterling offers to support this assertion is a vague allegation that if a Caucasian were late for work, he or she would receive "more slack" than an African American would. See Id. This broad assertion is not sufficient to create a genuine dispute of material fact that a hostile work environment existed. This is especially true considering that, when asked about these occurrences, Sterling could only vaguely offer one incident over his thirty-five year career. This apparently occurred sometime in the 1990s when a Caucasian engineer was late and did not get suspended. Sterling admits that he knew little of this incident and further admits that he too had been late at times without receiving any suspension. (Record Document 621-2 at 33). The Court is not persuaded that this allegation shows any racial discrimination. The record shows that both Sterling and fellow Caucasian employees arrived at work late at times without receiving a suspension.

This leaves the comment made by Seghers on the telephone referring to an unknown group of people as "black MFs" and the comment made by Sonnier referring to Sterling as a "black ass." These two statements appear to be racially driven instances of unwelcome harassment. Finally is Love's use of the phrase "you people." The context of this phrase is unclear. Thus it is difficult to determine the existence of racial animus here. In reviewing the record, it appears only Sterling's and Seghers's comments, as well as

Love's use of "you people," are the only encounters that can be remotely construed as conveying a racial animus.³

The Fifth Circuit dealt with a similar case in Fortenberry v. Texas. 75 Fed. Appx. 924, 928 (5th Cir. 2003). In this case an African American employee had to endure two racial slurs. She also cited an instance where a co-worker referred to a African American client as a "dishwater blonde." See Id at 928. Finally the plaintiff stated she was the victim of unwelcome and intimidating stares from a co-worker's husband. The Court held that "it is not clear that either one of these two [latter] incidences were racially motivated." See Id. Further the court held two racial slurs, two years apart, were not enough to show a hostile work environment. See Id.

As in Fortenberry, Sterling has put forth no evidence that at least three of the alleged six instances were instances of racial discrimination at all. This leaves the Court with perhaps three separate comments that, reading the record in a light most favorable to Sterling, could be considered racially driven. Since two direct racial slurs spread over a two year period were not enough to create a hostile work environment in Fortenberry, clearly KCS employees use of "black MFs," "black ass," and "you people," once each, over a thirty-five year career cannot lead this Court to conclude that KCS embodied a hostile work

---

³The Court struggles to state that Love's use of "you people" has racial animus in this instance. In a similar case, the Supreme Court analyzed the use of the word "boy" by itself, stating that "[t]he speaker's meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage." Ash v. Tyson Foods, Inc., 546 U.S. 454, 456 (2006). Sterling has offered no evidence regarding any of these factors and therefore this instance of discrimination Sterling points to does not carry much weight in the eyes of the Court.

environment. While these three terms may be considered offensive, they are not sufficient to create a hostile work environment.

In order for this hostile work environment claim to have merit, Sterling must also allege that racial discrimination altered a condition of his employment. It has been held that "mere utterance of an... epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment." Shepard v. Comptroller of Public Accounts of State of Texas, 168 F.3d 871 (5th Cir. 1999) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17.21 (1993). The closest Sterling has come to showing an altered working condition is through the poorly (if at all) evidenced lack of payment to Sterling for the additional work he performed. Otherwise, Sterling's opposition to summary judgment is void of a single fact of how this discrimination altered his working conditions. Since these offensive comments alone are not enough to prove an altered work environment, without any proper and sufficient summary judgment evidence as to how these events affected a term or condition of his employment, Sterling's hostile work environment claim must fail.

Due to the lack of evidence by Sterling of the severity or pervasiveness of racial discrimination at KCS and the inability of Sterling to prove an impact on any terms or conditions of his employment at KCS, KCS is entitled to a judgment as a matter of law.

**CONCLUSION**

Based on the foregoing analysis, the Court finds that Plaintiff Leon Sterling abandoned all but his hostile work environment claim. Additionally, Sterling has failed to provide sufficient evidence to raise a dispute of material fact that Sterling indeed endured a hostile work environment.

Accordingly, **IT IS ORDERED THAT** the foregoing motion [Record Document 621] be and is hereby **GRANTED.**   All of Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

Thus done and signed, in Shreveport, Louisiana, this 1st day of September, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE