UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CLARENCE CARGO, ET AL., | CIVIL ACTION NO. 05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN RAILWAY COMPANY | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment on Plaintiff Cory Walker's ("Walker") various employment discrimination claims (Record Document 673) filed by Defendant Kansas City Southern Railway Company ("KCS"). Walker, in opposition to Defendant's Motion for Summary Judgment, concedes all claims except for his discriminatory discharge claim. (Record Document 678 at 2). Given this response, the Court will treat all claims, save the discriminatory discharge claim, as abandoned. For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED.** Accordingly, all of Walker's claims are **DISMISSED**.

**FACTUAL BACKGROUND**

Cory Walker is an African American male. (Record Document 673-2 at 1). Walker began employment at KCS in March of 1991. See id. In October of 1999, Walker was promoted to the position of engineer. (Record Document 673-2 at 3).

On January 27, 2004 a crew caller informed Walker that he was to report to work at 11:40 p.m. and Walker agreed to report. (Record Document 673-2 at 14). Walker failed to report to work at 11:40 p.m., causing Brad Batson ("Batson"), Assistant Trainmaster, to call him at 12:02 inquiring about his whereabouts. (Record Document 673-2 at 15). Walker

informed Batson that he would report to work within five minutes. See id. In this conversation, Batson told Walker that he was selected for a Federal Railroad Administration ("FRA") random drug test and Walker would have to report to KCS to provide a urine sample. See id.

At 12:32 a.m., Walker called Michelle Holmes, a crew caller, to inform her he was not feeling well. (Record Document 673-2 at 17). In this conversation, Walker informed Holmes he was attempting to check into an emergency room. See id. "It was not until after Walker spoke with Batson at 12:02 a.m. that he decided to seek medical attention." (Record Document 673-2 at 16). Further, it was not until after Walker was informed that he was being subjected to a drug test that he informed anyone at KCS that he was having chest or stomach pains. See id.

At 2:15 a.m., Bryan Boaz ("Boaz"), Assistant Trainmaster, visited Walker in the hospital. (Record Document 673-2 at 18). After speaking with Walker's physician, Boaz informed Walker that he was expected to report to KCS. See id. Walker "indicated to Boaz that he would show up that night and provide the urine sample." (Record Document 673-2 at 19). Walker was released from the hospital at 3:00 a.m. without restriction, except for Boaz telling Walker to "go home and clean up." See id., see also Record Document 678-1 at 8. After returning home, Walker never reported to work at KCS and never "provide[d] the urine sample as he promised."[1] (Record Document 973-2 at 20; Record Document 678-1 at 8).

---

[1]This information was gathered from the Defendant's Statement of Material Fact number 140. Plaintiff provided the Court with their response to the Defendant's Statement of Material Fact but failed to admit or deny Material Fact number 140. Therefore this fact is deemed uncontroverted. (Record Document 681-1 at 4, n2).

At approximately 3:42 a.m., Walker called the crew caller and informed him/her that he would not be "back on the board," instead he was going home to take a nap. (Record Document 673-2 at 20). Walker claims that his union representative advised him to forgo the KCS drug test and have his family doctor administer the test. (Record Document 673-2 at 21). Walker admits he does not recall ever giving the results of this drug test to KCS. See id.

Based on the events that took place on January 27-28, 2004, KCS found Walker guilty of (1) failing to protect his assignment, (2) failing to comply with instructions issued by a KCS supervisor, and (3) refusing to submit to a drug test. (Record Document 673-1 at 20). Therefore, effective February 9, 2004, Walker was dismissed from KCS. (Record Document 673-2 at 22). This decision was appealed Denise Brame, an African American female in Labor Relations. Brame denied the appeal. See id. Walker's discharge was also appealed to Kathy Alexander of Labor Relations. She also denied Walker's appeal. (Record Document 673-2 at 23).

On February 16, 2005, KCS offered to reinstate Walker without back pay if Walker met certain criteria. (Record Document 673-2 at 23). Walker, after agreeing to the criteria, failed to meet the requirements of his reinstatement. (Record Document 673-2 at 24). Walker claims that he was told by a counselor that he was not required to meet the criteria after a certain period. (Record Document 678-1 at 10).

Following his dismissal, Walker joined the above-captioned matter alleging various claims against KCS. (Record Document 1). Subsequently, after preliminary motion practice, the Plaintiffs were broken into 29 trial groups. (Record Document 492). The pairing was based on the Plaintiffs' respective claims. Walker was placed in group 4 with Eric Allums

as they both worked as engineers on the Train Crew in Shreveport. (Record Document 492).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

---

[2]The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

**LAW AND ANALYSIS**

**i. Discriminatory Discharge**

Employers are prohibited from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A claim for discrimination may be proven with direct or circumstantial evidence. <u>Nasti v. CIBA Specialty Chemicals Corp.</u>, 492 F.3d 589,593 (5th Cir. 2007). If a Plaintiff lacks direct evidence to prove such a claim, courts are to implement a burden shifting analysis as established under <u>McDonnell Douglas Corp. V. Green</u>, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). <u>Nasti v. CIBA Specialty Chemicals Corp.</u>, 492 F.3d at 593. Walker has not provided this Court with any direct evidence of discrimination and therefore analysis under the <u>McDonnell Douglas</u> framework is appropriate. The Fifth Circuit has explained this framework as follows:

> Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of...discrimination. The employer then bears the burden of producing a legitimate, non-discriminatory reason for its actions. The employer is not required to convince the Court that it was actually motivated by this reason; it need only raise a genuine issue of fact as to whether or not it discriminated against the plaintiff. Once the employer offers a legitimate, nondiscriminatory reason for the plaintiff's treatment, the presumptions of the McDonnell Douglas framework dissipate, and the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant engaged in intentional discrimination. To satisfy this burden, a plaintiff must produce substantial evidence that the employer's proffered reasons for its actions were a pretext for discrimination. A plaintiff can establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'

Nasti v. CIBA Specialty Chemicals Corp., 492 F.3d at 593. (Internal citations omitted)

In order to establish a *prima facie* case of discriminatory discharge, Wilson must show that (1) he belongs to a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably. See id.

It is apparent from both the facts of this case and the parties' briefings that this claim of discriminatory discharge rests on the fourth element of the *prima face* case. The Fifth Circuit has been clear that "for employees to be similarly situated[,] those employees' circumstances, including their misconduct, must have been 'nearly identical.' " Perez v. Texas Dept. of Criminal Justice, 395 F.3d 206 (5th Cir. 2004).

In Lee v. Kansas City Southern Ry Co., 574 F.3d 253 (5th Cir. 2009), the Fifth Circuit found the district court erred in finding that the plaintiff did not meet his *prima facie* burden of identifying a similarly situated employee to the plaintiff. The plaintiff in this case was fired for "(1) disregarding a block signal that indicated he had to stop the train and (2) failing to contact his dispatcher for authorization to proceed." See id. at 261. The plaintiff's comparator had committed the following violations in the same period: "(1) failed to inspect a train in compliance with a trackside warning signal, for which he received a 30-day suspension; (2) improperly handled a train that separated as a result, for which he received a 5-day suspension; and (3) occupied a main track without authority, for which he was fired, only to be reinstated by Alexander." See id. The court held, "We are satisfied that employment histories marked by a comparable number of serious moving violations by train engineers who perform the same job are sufficiently similar to require comparison of the

two when, as here, the final violations-failing to obey a stop signal-are indistinguishable." See id. at 261-262.

Walker has alleged that two similarity situated employees were treated more favorably. Those two KCS employees are Brady Alsup ("Alsup") and Billy Abernathy ("Abernathy"). (Record Document 673-1 at 21). Both Alsup and Abernathy failed to report to work after being called in. (Record Document 678 at 8-9). Neither Alsup or Abernathy were disciplined. (Record Document 678 at 9).[3] Walker contends that "it can only be concluded that Mr. Walker was not granted such leniency because of his race." See id.

In applying the applicable Fifth Circuit precedent, the Court is not persuaded that Alsup and Abernathy are "similarly situated" to Walker. The conduct that led to Walker's dismissal was: (1) failing to protect his assignment; (2) failing to comply with the instructions issued by a KCS supervisor; and (3) refusing to submit to a drug test. (Record Document 673-1 at 20). The third instance of misconduct is what separates Walker from Alsup and Abernathy. Neither Alsup or Abernathy failed to submit a urine sample for a drug test as requested by KCS. In Lee, the comparator's misconduct was not identical, but the misconduct of both the plaintiff and comparator revolved around operating trains. Wilson and his proposed comparators misconduct are not so related. While it appears they do share the misconduct relating to reporting to work, it does not appear that either Alsup or

---

[3]The Court has concerns about whether the evidence surrounding Alsup and Abernathy even qualifies as competent summary judgment evidence. It is clear from a reading of Walker's deposition that the information he has provided the Court regarding both Alsup and Abernathy was obtained from second and third hand sources. It appears that this evidence is inadmissible hearsay. However, the Court, in an abundance of caution, will analyze this evidence as if it were admissible, as it does not change the outcome of its analysis. (Record Document 673-4 at 52, 63).

Abernathy failed to submit a urine sample for a drug test. Therefore, Wilson has failed to meet his *prima facie* case by failing to present a similarly situated employee that was treated more favorably than he was.

Even if Walker were able to meet his *prima facie* case, KCS has provided a legitimate and non-discriminatory reason for his discharge. KCS asserts that Walker's failure to submit to the requested drug test is its legitimate and non-discriminatory reason for his dismissal. (Record Document 681 at 6). It is undisputed that KCS required Walker to provide a urine sample for a drug test. (Record Document 673-2 at 15; 678-1 at 6). It is further undisputed that Walker did not take the drug test at KCS' facility. (Record Document 673-2 at 21; 678-1 at 9). Walker claims to have taken a drug test with his family doctor, however, he does not recall ever providing KCS with the results. (Record Document 673-2 at 21; 678-1 at 9). Walker also claims that he received the advice of a union representative to forego the KCS drug test and submit one to his family doctor. (Record Document 678 at 4). These facts show that KCS had a legitimate reason for dismissal, the failure to submit a urine sample to KCS for a drug screening. Even if Walker's union representative did advise him to forego the KCS drug screening for one with his family doctor, the fact Walker never turned those results over to KCS shows that, in the end, Walker never submitted a drug test to KCS.

Had Walker been able to meet his *prima facie* burden, as part of the McDonnell Douglas framework, the burden would shift to Walker to prove KCS' reason for discharge was pretextual. Walker cannot meet this burden. The burden Walker carries at this point in the Court's analysis is to show that this reason is "unworthy of credence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133,144, 120 S.Ct. 2097 (2000). The only

evidence Walker relies on is the fact a union representative advised Walker to forego the drug screening and the fact that Walker was offered reinstatement. Generally, a union representative is not a member of an employer's management team and Walker has failed to show how his union representative's actions are attributable to KCS. Further, the offer of reinstatement without back pay is not sufficient so how that KCS' reason for discharge is "unworthy of credence" as there are many reasons an employer would make such an offer. Therefore, Walker has failed to meet his burden of showing KCS' reason for discharge is pretextual.

Walker cannot prove the *prima facie* elements of his claim of discriminatory discharge. He has failed to show a similarly situated employee was treated more favorably than he was; however, even had he been able to meet that burden, KCS offered and proved a legitimate, non-discriminatory reason for Walker's discharge that Walker failed to prove that the reason was pretextual. For this reason, summary judgment in favor of KCS is appropriate.

## CONCLUSION

Based on the foregoing analysis, the Court finds that Plaintiff Cory Walker abandoned all but his discriminatory discharge claim. Additionally, Walker has failed to provide sufficient evidence to raise a dispute of material fact that Walker indeed was discharged based on his race.

Accordingly, **IT IS ORDERED THAT** the foregoing motion (Record Document 673) be and is hereby **GRANTED.**  All of Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

Thus done and signed, in Shreveport, Louisiana, this 28th day of October, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE