UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CLARENCE CARGO, ET AL., | CIVIL ACTION NO. 05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN RAILWAY COMPANY | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment on Plaintiff Abon Ball's ("Ball") various discrimination claims (Record Document 687) filed by Defendant Kansas City Southern Railway Company ("KCS"). The motion conveys reasons for the Defendant seeking dismissal of all claims raised by Ball. (Record Document 687). Ball, in opposition to Defendant's Motion for Summary Judgment, responds stating "Plaintiff has sufficient facts, as [sic] a minimum to support a hostile work environment claim." (Record Document 694 at 1-2). Ball only addresses his hostile work environment claim in his opposition to summary judgment. Given this limited response, the Court will treat all claims, save the hostile work environment claim, as abandoned. For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED.** Accordingly, all of Ball's claims of are **DISMISSED**.

**FACTUAL BACKGROUND**

Abon Ball is an African American male. (Record Document 687-2 at 1). On February 6, 2004, Ball applied for a brakeman trainee program with KCS. (Record Document 687-2 at 2). After completing classroom training, Ball began a 60-day probationary period. (Record Document 687-2 at 12). During this period, Ball failed an operational test because

he was not wearing his safety glasses. (Record Document 687-2 at 13). Two days later, Ball was on a train crew where one the cars derailed. See id. Sometime after, Ball was asked to make a number of moves with his train. See id. Earl Hauptman, a member of the management team, told Ball that while performing these moves, he made an unsafe move. (Record Document 687-2 at 14)."Based on [Hauptman's] observations and the observations of others that were reported to him, Hauptman recommended that Ball's application be rescinded." See id. Subsequently, after four months of employment with KCS, Glen Henson, an African American, informed Ball his application had been rescinded. See id. According to Ball, Henson told him that he was being dismissed because he operated a train in an unsafe manner. See id.

Following his dismissal, Ball filed the above-captioned matter alleging various claims against KCS. (Record Document 1). Subsequently, after preliminary motion practice, the Plaintiffs were broken into 29 trial groups. (Record Document 492). The pairing was based on the types of Plaintiffs' respective claims. Ball was placed in group five with Derek Lamette as they both worked as trainees on the Train Crew in Shreveport. (Record Document 492).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  Quality Infusion Care, Inc. v. Health Care Serv.

---

[1] The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## LAW AND ANALYSIS

**Hostile Work Environment**

A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Stewart v. Mississippi Transport Commission, 586 F.3d 321 (5th Cir. 2009) (quoting National R.R. Passenger Corp. V. Morgan, 536 U.S. 101 (2002)). To establish his claim for a hostile work environment, Plaintiff must show that:

> 1) he belongs to a protected class; 2) he was subjected to unwelcome harassment; 3) the harassment was based on race; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action.

Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005). The alleged discrimination must have "created an environment that a reasonable person would find hostile or abusive." Id. Courts in this Circuit determine hostile environment considering the totality of the circumstances. Factors to consider include: "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." Id.; see Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Although "[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive" to support evidence of a Title VII violation, DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir.1995), "simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges" that can survive summary judgment. Hockman v. Westward Communications, LLC, 407 F.3d 317, 328 (5th Cir.2004). A plaintiff's own subjective beliefs, however genuine, cannot form the basis of judicial relief. Nichols v. Lewis Grocer, 138 F.3d 563 (5th Cir.1998); Little v. Republic Refining Co., 924 F.2d 93, 95 (5th Cir.1991).

The jurisprudence of this Circuit establishes a very high burden for a plaintiff advancing a claim for a hostile work environment on racial grounds. From this Court's review of the total record, Ball has failed to meet that burden.

Ball's claim of a hostile work environment stems from interactions with Bobby Lewis ("Lewis"), a KCS conductor assigned to train Ball. (Record Document 694-2 at 4). Also, Ball claims he was "exposed to racial symbols during work hours on KCSR's property." See id.

Finally, Ball "stated that he perceived that white employees used degrading terms in comments towards him." (Record Document 694-2 at 5).

Ball claims Lewis failed to train him properly. (Record Document 694-2 at 4). Further, Ball asserts that Lewis made racist remarks while training Ball. See id. Specifically, Ball states he heard Lewis use the "N" word with co-workers but Lewis "never used it with me." (Record Document 694-3 at 3). Ball also states he saw KKK symbols on the walls of bathrooms located at KCS. (Record Document 694-3 at 5). Finally, Ball claims white employees called him "knucklehead" and "dumb nuts." (Record Document 694-3 at 6-7).

In order to be probative, the harassment alleged by a plaintiff in a hostile work environment claim must be based on the plaintiff's race. Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005). As an initial matter, Ball has failed to present any evidence that Lewis' failure to train Ball was based on his race. Further, Ball has not shown how white co-workers referring to him as "knucklehead" or "dumb nuts" are, by themselves, related to Ball's race. In fact, Ball's own deposition shows a co-worker called him "dumb nuts" because he felt Ball was not as qualified for his job. (Record Document 694-3 at 7). Therefore, these three instances listed by Ball are not probative of a hostile work environment claim.

This leaves the Court with two instances of claimed racial harassment, (1) Lewis using the "N" word with Ball's co-workers and (2) the KKK symbols in the bathroom. In Lindsey v. Chevron USA Inc., 2002 WL 31415255 (5th 2002), the plaintiff brought a hostile work environment claim listing multiple instances of harassment. The Fifth Circuit found that many of the instances listed were not based on race and therefore not probative. The only instances of racial harassment were: (1) the defendant not visiting the plaintiff in the

hospital when he did so for white employees; (2) the use of racial epithets; and (3) the hanging of confederate flags by co-workers. The Fifth Circuit held that these three instances were not sufficient to show a hostile work environment. The Fifth Circuit addressed whether the harassment alleged was severe and pervasive so as to affect a term, condition, or privilege of the plaintiff's employment. It was found that these three instances "do not rise to the requisite degree of severity and pervasiveness that our precedents require." See id. at *4.

> Even viewing the evidence in the light most favorable to [the plaintiff], we cannot assume that the epithets were routine in nature. Further, [the plaintiff] provides no evidence to suggest that these racial slurs, combined with [the defendant's] decision not to visit [the plaintiff] or send him flowers when at the hospital and the hanging of the [confederate] flags, either unreasonably interfered with his work performance or caused him to feel physically threatened or humiliated.

See id. at *4.

Similar to Lindsay, Ball has failed to show that Lewis' use of the "N" word was routine in nature. Therefore, just as hanging a confederate flag and isolated use of racial slurs were not sufficient to show severe and pervasive harassment, neither are isolated, indirect uses of racial slurs and the viewing of KKK symbols in a KCS restroom. Further, Ball has failed to articulate a single example of how this harassment "interfered with his work performance or caused him to feel physically threatened or humiliated." See id. Without a sufficient showing of how the racial harassment endured by Ball was severe or

pervasive enough to affect a term, condition or privilege of his employment, Ball cannot satisfy his *prima facie* burden.[2]

Ball has not shown that the harassment he endured was severe or pervasive enough so as to affect a term, condition, or privilege of his employment. Accordingly, Ball cannot meet his *prima facie* burden and therefore cannot survive summary judgment.[3]

---

[2] In Ball's opposition to summary judgment, when addressing how the alleged harassment affected a term, condition, or privilege of his employment, Ball simply states, "See paragraph B above." Paragraph B was the portion of Ball's argument relating to how the harassment was severe or pervasive. Ball never articulated how the harassment affected his working environment. "Such unsubstantiated assertions, without more, do not constitute competent summary judgment evidence." Shonowo v. Transcocean Offshore Deepwater, Inc., 2011 WL 3418405 *6 (S.D. Tex. 2011). In fact, the only showing made regarding Ball's ability to perform his work duties was that Lewis did not train him properly. As already stated, Ball failed to show how this alleged poor training was linked to his race.

[3] KCS raises the issue of notice, the fifth element of Ball's *prima facie* case. Ball specifically stated in his deposition that "I never told anybody [Lewis] was discriminating against me because of my race."(Record Document 694-4 at 2). Rather, Ball states that a supervisor transferred Ball away from Lewis "because it was mentioned that I wasn't being trained properly." See id. Ball also makes no showing that he ever told KCS about the KKK drawings in the bathroom. Therefore, while KCS appears to correctly state that Ball cannot meet his burden on the fifth element, since Ball cannot show the fourth element of his *prima facie* case, the Court finds no need to make a direct finding on this issue.

## CONCLUSION

Based on the foregoing analysis, the Court finds that Plaintiff Abon Ball has abandoned all claims, save his hostile work environment claim. Additionally, Ball has failed to provide sufficient evidence to raise a dispute of material fact that Ball indeed endured a hostile work environment.

Accordingly, **IT IS ORDERED THAT** the foregoing motion (Record Document 687) be and is hereby **GRANTED.** All of Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

An Order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

Thus done and signed, in Shreveport, Louisiana, this 4th day of January, 2012

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE