UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CLARENCE CARGO, *et al.*, | CIVIL ACTION NO. 05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN RAILWAY COMPANY | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment on all of Plaintiff Tim Stanley's ("Stanley") claims (Record Document 705) filed by defendant Kansas City Southern Railway Company ("KCS"). The motion states that all of Stanley's claims should be dismissed either on procedural or substantive grounds. Plaintiff opposes the motion. (Record Document 709). Upon review of Plaintiff's Opposition (Record Document 709), it is apparent that plaintiff has expressly conceded the following claims: all State Law Claims; his Louisiana Employment Discrimination Claim; and his retaliation claim. Further, by not addressing them in his opposition, Stanley concedes the following claims: sex discrimination; failure to promote; and disparate impact discrimination.[1] The claims that are properly before this Court are Stanley's following claims: hostile work environment and discriminatory discharge.

For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED.**

---

[1] See Celotex Corp. V. Catrett, 477 U.S. 317, 333 n. 3 (1986).

**FACTUAL BACKGROUND**

Tim Stanley is an African American male. (Record Document 705-2 at 1). Stanley began working for KCS in January of 2000 as an electrician. (Record Document 709 at 6). In July of 2002, Stanley transferred to the transportation department and began working as a conductor trainee. See id. Stanley worked in the transportation department for seventeen months. During this period, he was suspended six times. See id. In February of 2004, Stanley "was removed from service pending an investigation. That investigation concerned the violation of General Order No. 9 which states that all road and yard crews reporting to the terminal must report the status of their crew to the tower." See id. As a result of this investigation, Stanley's employment relationship with KCS was terminated.

Stanley is a plaintiff in the above-captioned matter alleging discrimination by KCS. (Record Document 1). Subsequently, after preliminary motion practice, the plaintiffs were broken into 19 trial groups. (Record Document 492). The pairing was based on the plaintiffs' respective claims. Stanley was placed in group 6 by himself. (Record Document 492).

**Motion To Strike**

Before discussing Stanley's claims, the Court must address a portion of KCS' Motion to Strike. (Record Document 713). In response to Stanley's Response in Opposition to KCS' Motion for Summary Judgment, KCS filed a Motion to Strike several of the exhibits Stanley attached to his opposition. One of those exhibits is an affidavit filed by Stanley. KCS claims that the affidavit directly contradicts Stanley's deposition and, therefore, should be stricken from the record. (Record Document 713 at 3). Further, KCS claims that some of the testimony in the affidavit is not based on personal knowledge. (Record Document

713 at 5). KCS also argues that the depositions attached to Stanley's opposition are from prior litigation and Stanley has failed to show that they involve the same subject matter as this case.

Starting with the affidavit, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 806 (U.S.1999).

Stanley, attempting to avoid summary judgment, presents two forms of testimony on his hostile work environment claim. KCS claims these two forms of testimony conflict with each other, and therefore, without an explanation, the latter of the two should be stricken. First is Stanley's deposition. In this deposition, Stanley discusses that the hostile work environment claim stems from being forced to "hostle." (Record Document 705-5 at 27). Hostling, a railroad term, is the moving of engines and parts to different areas in the shop. (Record Document 705-5 at 28). Stanley claims this created a hostile work environment because "I had understudies under me when it was a job for understudies." See id. Stanley then admitted that some of the people who had hostled as long as he had were both black and white. (Record Document 705-5 at 29).

Then, the following exchange took place:

> Q. Now, when you were talking about that hostile environment over at the shop, did you give me all the facts or incidents that you believe support –
> A. No, sir. Well, there was an instance – there was an instance where I was –I came to work and I told my supervisor, I told him my knee was hurting and can I not hostle for a day or so, but I still was made to hostle. Then there was an instance

>      when I was extremely sick, almost had pneumonia and I ended
>      up having to take off and go to the doctor the following day and
>      got my prescribed medication for my sickness.
>      Q. Any other facts?
>      A. Those are – those are the couple that stand out, you know?

See id. Before turning to a new subject, Stanley then stated that all of this occurred between 2000 and 2002.

The possibly contradictory testimony Stanley offers regarding this hostile work environment claim are portions of the aforementioned affidavit. (Record Document 709-7). In paragraph one of this affidavit, Stanley states that while he was employed in the locomotive shop at KCS, from 2000 until 2002, he "saw a hangman's noose in the oil shed where the supervisors parked their cars on company property." See id. In paragraph two, he states that he worked under Mr. Gary Moore ("Moore"), "a known Klansman, who was my supervisor." See id. Stanley claims he "felt threatened to learn that KCS would promote a convicted Klansman to supervisor position, also knowing that noose hung in plain view." See id. In paragraph three, Stanley reurges his complaint about being forced to hostle when white employees were not required to do the same and finally, in paragraph four, he states he transferred out of the transportation department in 2002 because of the harassment and discrimination. See id.

In addressing paragraph one of his affidavit, as to whether or not this affidavit directly conflicts with the deposition in regards to the allegation of the noose being hung, there is an important distinction between "those are the couple [of instances] that stood out" and, perhaps, "those are the only two instances that occurred." In this instance, KCS appears to be one question short of precluding the use of this portion of the affidavit. Since

Stanley, in his deposition, never expressly stated that the issues discussed in his deposition were the only issues he confronted, there is no direct contradiction here. Therefore, the additional evidence that Stanley saw a noose in the oil shed where the supervisors parked their cars may be considered. However, in addressing paragraph three, the statement in the affidavit that "newly hired white employees were not required to do the same duties as an electrician" in regards to hostling conflicts with Stanley's deposition testimony. During his deposition, Stanley was asked "so it's fair to say that some people that hostled were black, some were white?" and he answered "yes, sir." He was then asked, "and it's true that they were all different levels of seniority too, isn't it?" And he answered "Well, the day crew was – the day crew was an older crew by choice." (Record Document 713-1 at 6). Therefore, without explanation of this discrepancy, paragraph 3 of the affidavit is stricken. See Cleveland v. Policy Management Systems Corp., 526 U.S. at 806. Finally, in paragraph four, the portion of the affidavit that reads "[t]he reason why I transferred to the transportation department in 2002 was because of the above harassment and discrimination," directly conflicts with Stanley's deposition. (Record Document 709-7). In his deposition, Stanley was asked, "Why would you want to try transportation out?" In response, Stanley stated, "Well, I needed the money, you know. It paid a little better than in the shop." (Record Document 705-5 at 11). Therefore paragraph 4 of the affidavit is stricken from the record.

KCS also argues that Stanley does not establish personal knowledge that Moore was a "convicted Klansmen," that KCS knowingly promoted him in spite of his conviction,

and that KCS knew of the noose. While the cases KCS cites for this proposition are all distinguishable from this case,[2] KCS is correct that this evidence is not admissible.

> "Federal Rule of Civil Procedure 56(e)(1) provides, in relevant part, that '[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.' Affidavits, or portions thereof, may be stricken from the record if they fail to comport with the requirements of this rule, and more specifically, if they contain inadmissible hearsay, information not based on the personal knowledge of the affiant, or legal conclusions."

Meadaa v. K.A.P. Enterprises LLC, 2010 WL 2195280, *2 (W.D. La. 2010) (citations omitted). Stanley, as a non-movant, is held to a less exacting standard in regard to this affidavit. See id. Still, the Court has been supplied with a 158 page deposition and a two page affidavit; at no point has Stanley been able to show, through his testimony, what Moore was convicted of, how Stanley knew Moore had a conviction, and how Stanley knew KCS was aware of this conviction. Further, Stanley has been unable to show that KCS knew of the aforementioned noose. As stated in Meadaa, "[m]ere conclusory allegations are not competent summary judgment evidence and may be stricken from the record when submitted in an affidavit." See id. (Citations omitted). Therefore, without a showing that it was made on Stanley's person knowledge, paragraph two of the affidavit is stricken.

The motion to strike then requests the exclusion of the deposition testimony of Richard Venditti ("Venditti") (Record Document 709-3), Donald Duke ("Duke") (Record Document 709-5), and Gene Harville ("Harville") (Record Document 709-6) because they

---

[2]For instance, KCS cites Bolen v. Dengel, 340 F.3d 300, 313 (5th Cir. 2003). In this case, the affidavit sought to be stricken specifically stated "based on information and belief," which, in the eyes of the Court, was an admission that the information was not based on personal knowledge.

we obtained from a case where Stanley was not a party and Stanley has failed to show the subject matter of the case is the same as the one currently at issue. (Record Document 713 at 2). In response, Stanley states, "Clearly, this is the case in these two employment discrimination cases." (Record Document 716 at 2). "That action involved this defendant and this testimony details the [sic] only the existence of the hangman's noose. Mr. Stanley can testify to the environment at the diesel shop at trial and included this information in his affidavit attached to his response to the defendant's motion for summary judgment." (Record Document 716 at 3).[3]

"The decision whether to admit a deposition from a prior lawsuit is vested in the district court's sound discretion...Because the underlying objective is efficiency at trial without jeopardizing accurate fact finding, the district court is usually in the best position to decide whether a prior deposition should be admitted." Hub v. Sun Valley Co., 682 F.2d 776, 777 (9th Cir. 1982). Federal Rule of Civil Procedure 32 (a) states that "[a] deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a

---

[3]A reading of plaintiff's opposition to KCS' motion for summary judgment makes it clear that this statement is patently false. The deposition testimony at issue here is used for more than plaintiff's counsel seems to be willing to admit. Stanley clearly uses Venditti's deposition to establish that Moore was a convicted of a felony relating to cross burning and a member, or former member, of the Klu Klux Klan. (Record Document 709 at 8). Further, the depositions of Duke and Harville are only used to establish that Moore was a racist and used the "N" word frequently. (Record Document 709 at 9). The Court is, in fact, quite surprised to find that the portions of the depositions of both Duke and Harville provided to the Court do not even contain the word "noose" in them. It is therefore apparent that plaintiff is either conceding the points raised in his opposition to summary judgment or is attempting the mislead this Court. The Court will give plaintiff's counsel the benefit of what little doubt exists and choose to treat this statement as a concession of the points that directly conflict with this statement by plaintiff's counsel. Regardless, in the interests of justice, the Court will continue to analyze the depositions attached to Stanley's opposition absent plaintiff's counsel disingenuous response to KCS' motion to strike.

later action involving the same subject matter between the same parties."[4] The three depositions in question are only portions of larger depositions. They were all taken as part of the Abner v. Kansas City Southern Railway Company, 03-CV-765 (W.D. La. 2008). The only thing the Court knows about this case is that the "action involved this defendant" and that Abner was an "employment discrimination action." Reviewing the depositions themselves, it is unclear what the subject matter of Abner was. It seems clear that Moore's actions were an issue but the Court is not even told who the plaintiff was, what his or her role in KCS was, or what claims he/she was bringing. In Williamson v. City of Morgan City, 2009 WL 2176002 (W.D. La. 2009), the court refused to allow depositions from a previous lawsuit on the basis that the "Court does not know the circumstances surrounding any of the aforementioned incidents." Likewise, Stanley has failed to provide enough information on this Abner case to satisfy the Court that Abner is the same subject matter as the current claim. Therefore, the Court finds that the depositions of Venditti (Record Document 709-3), Duke (Record Document 709-5), and Harville (Record Document 709-6) are stricken from the record.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is

---

[4]Plaintiff cites to a Texas Supreme Court case, Garcia v. Peeples, 734 S.W.2d, 343 (Tex. 1987) to show that the Texas Supreme Court has found that Texas state trial courts have "abused its discretion by prohibiting the sharing of the Defendant's privileged information, produced during discovery, with other similarly situated litigants." (Record Document 716 at 3). A Texas Supreme Court opinion does not carry binding or persuasive authority on a Federal Court sitting with federal question subject matter jurisdiction.

entitled to judgment as a matter of law."[5] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## LAW AND ANALYSIS

### A. Hostile Work Environment

A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Stewart v. Mississippi Transport Commission, 586 F.3d 321 (5th Cir. 2009) (quoting National R.R. Passenger Corp. V. Morgan, 536 U.S. 101 (2002)). To establish his claim for a hostile work environment, Plaintiff must show that:

> 1) he belongs to a protected class; 2) he was subjected to unwelcome harassment; 3) the harassment was based on

---

[5]The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

>race; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action.

Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005). The alleged discrimination must have "created an environment that a reasonable person would find hostile or abusive." Id. Courts in this Circuit determine hostile environment considering the totality of the circumstances. Factors to consider include: "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." Id.; see Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Although "[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive" to support evidence of a Title VII violation, DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir.1995), "simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges" that can survive summary judgment. Hockman v. Westward Communications, LLC, 407 F.3d 317, 328 (5th Cir.2004). A plaintiff's own subjective beliefs, however genuine, cannot form the basis of judicial relief. Nichols v. Lewis Grocer, 138 F.3d 563 (5th Cir.1998); Little v. Republic Refining Co., 924 F.2d 93, 95 (5th Cir.1991).

The jurisprudence of this Circuit establishes a very high burden for a plaintiff advancing a claim for a hostile work environment on racial grounds. From this Court's review of the total record, Stanley has failed to meet that burden.

Stanley rests his hostile work environment claim on four separate instances that he claims, in the aggregate, amount to a hostile work environment: 1. that he was made to

"hostle" even though he was not new to his job; 2. that he was made to "hostle" when his knee hurt; 3. that he was sent to the doctor when he complained of having the symptoms of pneumonia; and 4. that there was a noose hung at KCS in the oil shed where the supervisors parked their cars.

In order for any of these four events to be probative for a hostile work environment claim, they must first be seen as harassment and the harassment must be based on Stanley's race. The first two claims regarding "hostling" fail to meet either of these two tests. Stanley admits that he "does not know if hostling was a job for understudies; rather, his understanding is purely based upon what other employees told him." (Record Document 705-2 at 30; 709-1 at 12). Further, "both African American and Caucasian employees of varying levels of seniority in the Diesel Shop hostled, and some other employees in the Diesel Shop hostled as long as Stanley had." See id. Therefore, it appears that hostling was simply a part of Stanley's job and that it was a task assigned to both African Americans and Caucasians. For these reasons, it does not appear that Stanley being told to hostle constituted harassment but even if it amounted to harassment, Stanley has offered no evidence it was harassment based on his race. The third claim, that of being "forced" to see a doctor when ill, is not probative either. Again, the Court does not believe this amounts to harassment, but even if it qualified as harassment, Stanley has not even attempted to show how this "harassment" was tied to his race.

The final instance, the hanging of a noose on KCS property, may certainly be described as harassment. The only admissible evidence that Stanley offers regarding this noose is in his affidavit. Stanley states that "[b]etween January 10, 2000 and July 8, 2002, I worked for Kansas City Southern as an electrician in the locomotive shop in Shreveport,

La. During that time, I saw a hangman's noose in the oil shed where the supervisors parked their cars on company property." (Record Document 709-7). It appears that this noose was never mentioned by Stanley throughout his 158 page deposition. Stanley does not reference his deposition at all. Rather, it appears that Stanley, as an after thought, mentioned the presence of a noose when filing his opposition to summary judgment.

There are very few details surrounding this noose. It is unclear who put up the noose or how long the noose was displayed. More importantly, Stanley does not even attempt to allege that he ever reported the presence of this noose to anyone at KCS.[6] This alone could be fatal to his hostile work environment claim. See Harvey v. Maytag Corp., 105 Fed. Appx. 863 (7th Cir. 2004). Further, since it is unclear as to how long this noose was displayed, the Court cannot say that KCS should have known about the presence of the noose. The presence of a noose, generally speaking, may qualify as a form of harassment without more. The Court does not feel the need to explain that the presence of a noose can certainly be considered harassment by African American KCS employees. However, the Court does not find that, based on the evidence provided, this noose "had the effect of altering the terms, conditions, or privileges of his employment." Carter v. Luminant Power Services Co., 2011 WL 6090700 (N.D. Tex. 2011).

All of the alleged harassment took place while Stanley was working in the diesel shop at KCS. Stanley expressly stated that the reason he sought a transfer out of the diesel

---

[6]Instead, Stanley relies on testimony given through the deposition of Vandetti, which this Court has already ruled inadmissible. However, even if it were admissible, the portions of Vandetti's deposition that plaintiff cites to do not stand for the proposition that anyone at KCS knew of the noose. Venditti specifically states that "[m]anagement said they didn't know about the noose."(Record Document 709-3 at 5). Venditti then speculates that it was a "management should have known type of thing." See id.

shop was to make more money. (Record Document 709-7). There is no admissible evidence asserted by Stanley that shows how this noose in the oil shed affected a term, condition, or privilege of his employment. "Not all harassment will affect a term, condition, or privilege of employment...Title VII's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends but does not hinder an employee's performance." Carter v. Luminant Power Services Co., 2011 WL 6090700 (N.D. Tex. 2011). Stanley left the diesel shop to what appears to be a promotion to the transportation department. Therefore, without any evidence of how the presence of the noose affected Stanley's employment, this hostile work environment claim must fail as Stanley cannot meet his *prima facie* burden.[7]

### B. Discriminatory Discharge

Employers are prohibited from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A claim for discrimination may be proven with direct or circumstantial evidence. Nasti v. CIBA

---

[7]The Court struck a portion of Stanley's proposed evidence on this hostile work environment claim as inadmissible. This evidence mainly stood to show that a supervisor that worked with Stanley had known KKK ties, although it is unclear when these ties were and whether or not they were present while Stanley was employed at the diesel shop. Even had this evidence been admitted, Stanley still fails to show the Court how any of this connected to him or how it affected a term, condition, or privilege of his employment. Stanley does not even point to a single instance in his voluminous deposition where he even mentions this supervisor's name. Stanley does not accuse this supervisor of calling him racially charged epithets or even hearing of the supervisor calling any other KCS employee such a name. Further, in his affidavit, Stanley fails to mention a single instance, that does not directly contradict his deposition, where the supervisor's harassment affected a term, condition, or privilege of his employment with KCS. Therefore, even if this evidence had been considered, Stanley's hostile work environment claim would have failed.

Specialty Chemicals Corp., 492 F.3d 589,593 (5th Cir. 2007). If a plaintiff lacks direct evidence to prove such a claim, courts are to implement a burden shifting analysis as established under McDonnell Douglas Corp. V. Green, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). Nasti, 492 F.3d at 593. Stanley has not provided the Court with any direct evidence of discrimination and therefore analysis under the McDonnell Douglas framework is appropriate. The Fifth Circuit has explained this framework as follows:

> Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of...discrimination. The employer then bears the burden of producing a legitimate, non-discriminatory reason for its actions. The employer is not required to convince the Court that it was actually motivated by this reason; it need only raise a genuine issue of fact as to whether or not it discriminated against the plaintiff. Once the employer offers a legitimate, nondiscriminatory reason for the plaintiff's treatment, the presumptions of the McDonnell Douglas framework dissipate, and the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant engaged in intentional discrimination. To satisfy this burden, a plaintiff must produce substantial evidence that the employer's proffered reasons for its actions were a pretext for discrimination. A plaintiff can establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'

Nasti, 492 F.3d at 593. (Internal citations omitted)

In order to establish a *prima facie* case of discriminatory discharge, Stanley must show that (1) he belongs to a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably. See id.

It is apparent from both the facts of this case and the parties' briefings that this claim of discriminatory discharge rests on the fourth element of the *prima face* case. The Fifth

Circuit has been clear that "for employees to be similarly situated[,] those employees' circumstances, including their misconduct, must have been 'nearly identical.' " Perez v. Texas Dept. of Criminal Justice, 395 F.3d 206 (5th Cir. 2004).

In Lee v. Kansas City Southern Ry Co., 574 F.3d 253 (5th Cir. 2009), the Fifth Circuit found the district court erred in finding that the plaintiff did not meet his *prima facie* burden of identifying a similarly situated employee to the plaintiff. In this case, the plaintiff and the comparators were both engineers for KCS. The plaintiff in this case was fired for "(1) disregarding a block signal that indicated he had to stop the train and (2) failing to contact his dispatcher for authorization to proceed." See id. at 261. The plaintiff's comparator had committed the following violations in the same period: "(1) failed to inspect a train in compliance with a trackside warning signal, for which he received a 30-day suspension; (2) improperly handled a train that separated as a result, for which he received a 5-day suspension; and (3) occupied a main track without authority, for which he was fired, only to be reinstated by Alexander." See id. The court held, "We are satisfied that employment histories marked by a comparable number of serious moving violations by train engineers who perform the same job are sufficiently similar to require comparison of the two when, as here, the final violations-failing to obey a stop signal-are indistinguishable." See id. at 261-262.

Stanley provides the Court with five Caucasian employees whom he claims were "engaged in substantially similar conduct to Mr. Stanley and were not terminated or disciplined for his actions." (Record Document 709 at 20). Those five employees are Sam Yosten ("Yosten"), Ken Crain ("Crain"), Tillman Tolson ("Tolson"), Andy Smith ("Smith"), and Chris Morphew ("Morphew").

Stanley was employed as a conductor during the relevant period. It is undisputed that between July 8, 2002 and February 20, 2004, Stanley was suspended six times. Those suspensions were for failing to follow a supervisor's instructions, a "switching incident," improperly handling a train, failing to contact the tower, failing to be available for his assigned shift, and failing to report for duty. (Record Document 705-1 at 19). Finally, in February of 2004, Stanley "failed two operational tests in that he failed to comply with General Order No. 9, and he was quarrelsome when he failed to comply with General Order No. 9."[8] (Record Document 705-2 at 13; 709-1 at 6). Stanley was discharged after these two violations. (Record Document 705-1 at 19).

To be a proper comparator of Stanley, the abovementioned five employees' circumstances must be nearly identical. Stanley was a conductor for KCS. The only information that Stanley provides the Court with on these comparators are that Crain and Yosten were engineers at KCS who worked in the transportation department and "their discipline was handled internal [sic] by the same decision makers and discipline policy." (Record Document 709 at 21). Further, Tolson, Morphrew, and Smith all "violated KCS rules and were not terminated." See id. KCS, however, goes through each comparator, individually, and provides specific reasons why their circumstances are not "nearly identical" to Stanley's. KCS shows that Cain is not a conductor, Yosten did not work in the same location as Stanley and was only disciplined on two occasions, Tolson was an

---

[8]General Order No. 9 states: "All road and yard crews going on duty in Shreveport Terminal...must report the status of their crew to the tower no later than five [5] minutes after their on-day time." (Record Document 705-2 at 12).

engineer and was only disciplined on two occasions, Smith began working with KCS in the 1970s, and Morphew also did not work in the same location as Stanley.

As previously stated, if the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d at 141. Here, KCS has demonstrated the absence of a genuine dispute of material fact in that these KCS employees are not proper comparators. Stanley, in response, has merely listed the comparators' names and made conclusory statements that their circumstances are nearly identical to Stanley's. Stanley has failed to meet his summary judgment burden of providing specific facts that show there is a genuine dispute of material fact as to these comparators. Therefore, Stanley has failed to meet his *prima facie* burden that similarly situated employees were treated more favorably than he was and his discriminatory discharge claim must fail.

## CONCLUSION

Stanley has expressly conceded the following claims: all State Law Claims; his Louisiana Employment Discrimination Claim; and his retaliation claim. Further, by not addressing them in his opposition, Stanley concedes the following claims: sex discrimination; failure to promote; and disparate impact discrimination. Finally, Stanley has failed to show that his work environment while employed at KCS' diesel shop amounted to a hostile work environment and he has failed to meet his *prima facie* burden to prevail on his discriminatory discharge claim.

Further, KCS' motion to strike is well grounded as to the depositions of Venditti (Record Document 709-3), Duke (Record Document 709-5), and Harville (Record

Document 709-6) and those depositions are stricken. Further, only paragraph one of Stanley's affidavit is properly before the Court. The remainder of the affidavit is stricken.

Accordingly, **IT IS ORDERED THAT** the foregoing motion (Record Document 705) be and is hereby **GRANTED.** All of Stanley's claims against KCS are **DISMISSED WITH PREJUDICE**. Further, KCS's motion to strike (Record Document 713) is **GRANTED IN PART** and **DENIED IN PART**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

Thus done and signed, in Shreveport, Louisiana, this 22nd day of March, 2012.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE