UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CLARENCE CARGO, *et al.*, | CIVIL ACTION NO.  05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN RAILWAY COMPANY | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment on all of Plaintiff Randall Corsentino's ("Corsentino") claims (Record Document 710) filed by defendant Kansas City Southern Railway Company ("KCS").  The motion alleges that all of Corsentino's claims should be dismissed, either on procedural or substantive grounds. Plaintiff opposes the motion.  (Record Document 726). Upon review of Plaintiff's opposition, by not addressing them in his opposition, Corsentino concedes the following claims: age discrimination, race discrimination, hostile work environment, and disparate impact.[1] The claims that are properly before the Court are the remaining claims: various state law claims, Louisiana Employment Discrimination Law ("LEDL") claims, associational race discrimination claims, and retaliation claims.

For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED.**

---

[1] See Celotex Corp. V. Catrett, 477 U.S. 317, 333 n. 3 (1986).

## FACTUAL BACKGROUND

Corsentino is a Caucasian male who began working for KCS in 1980 at the Baton Rouge facility. (Record Document 710-2 at 1). While working at KCS, Corsentino served as the local chairman of the union for twelve years. In this position, he represented most of the employees at the Baton Rouge facility. (Record Document 710-2 at 8). As local chairman, Corsentino served as an advisor to, and representative of, KCS employees during disciplinary procedures. (Record Document 710-2 at 10). In March of 2004, Corsentino was discharged following a derailment that occurred in February of 2004. (Record Document 710-2 at 24). This was his fifth suspension worthy offense in four years.[2] (Record Document 710-1 at 8). Corsentino alleges that he was actually terminated because he "stood up for people of color." (Record Document 726-1 at 9). Corsentino alleges he confronted KCS management about what he claims was "disparate discipline" between black and white employees and this led to his firing. (Record Document 726-1 at 11).

Corsentino is a plaintiff in the above-captioned matter alleging discrimination by KCS. (Record Document 1). Subsequently, after preliminary motion practice, the plaintiffs were broken into 19 trial groups. (Record Document 492). The pairing was based on the

---

[2]Corsentino appears to dispute these facts, stating that they are an attempt to "extend the pretext used by KCSR during the relevant period to actualize the racially discriminatory policy of the company." (Record Document 726-1 at 6). However, Corsentino does not deny that the underlying facts are true. Instead, Corsentino argues that the reason for listing those facts makes them false. This argument fails to show how the underlying facts are false and since Corsentino has made no attempt to show that the facts are false, these facts are undisputed.

plaintiffs' respective claims. Corsentino was placed in group 7 by himself. (Record Document 492).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## LAW AND ANALYSIS

### A. State Law Claims

Corsentino has brought the state laws claims of wrongful termination, invasion of privacy, emotional distress, and defamation. KCS argues that these claims are barred

---

[3]The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

because Corsentino has not "set forth a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Further, KCS shows specifics as to why each of these claims cannot survive summary judgment. (Record Document 710-1 at 8). Corsentino does not address any of these arguments in his opposition to summary judgment even though he lists "State Law Claims" as the header to part III of his opposition. (Record Document 726 at 9). Therefore, Corsentino has conceded these state law claims by not addressing them.

### B. Louisiana Employment Discrimination Law

KCS argues that the LEDL requires an employee to give written notice, of at least thirty days before taking judicial action, of his intent to file suit and Corsentino has failed to do so in this matter. La. Rev. Stat. § 23:303. Procedurally, it appears that the only notice Corsentino has given KCS is his August 22, 2005 charge of discrimination. Therefore, any discrimination not addressed in this charge of discrimination is procedurally barred. Otherwise, Corsentino correctly points out that this LEDL claim should be analyzed and resolved in the same manner as his Title VII claims. The Court agrees. Its will continue and analysis of the LEDL will be tied to the analysis under Title VII.

### C. Associational Race Discrimination

"Title VII provides that it is an 'unlawful employment practice for an employer to discharge an individual... because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). This court has recognized that § 1981 and Title VII prohibit discrimination against an employee on the basis of a personal relationship between the employee and a person of a different race.' " Floyd v. Amite County Sch. Dist., 581 F.3d 244, 249 (5th Cir. 2009) (citations omitted). The Fifth Circuit has upheld a jury verdict in an associational race

discrimination claim because, in that case, "a reasonable juror could find that [the plaintiff] was discriminated against because of her race (white), if that discrimination was premised on the fact that she, a white person, had a relationship with a black person." Deffenbaugh-Williams v. Wal-Mart Stores, 156 F.3d 581, 588 (5th Cir.1998), vacated in part on other grounds in Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 182 F.3d 333 (5th Cir.1999) (en banc).

An associational discrimination claim is based on the plaintiff's race, not the person the plaintiff was associated with. Floyd, 581 F.3d at 250. "The association cases are predicated on animus against the employee because of his association with persons of another race." See id. In Drake v. Minnesota Min & Mtg Co., 134 F.3d 878, 884 (7th Cir. 1998), the Seventh Circuit dismissed a associational discrimination claim because "Mr. Drake introduced no evidence that the subsequent treatment he received from his co-workers was a result of his race."

In Floyd, a black principal alleged he was discharged due to his relationship with white track athletes. See id. However, the Fifth Circuit granted summary judgment because the evidence reflected "that the racial animus was directed solely towards the white students." See id. "Floyd claimed in a deposition that [the school board president] told him that 'he did not-that they did not want them white kids over there at [his school]. Coach, you know better.' " See id. Other witnesses stated the school board president told them, "Caucasian students had no business using [ACHS's] track facilities." See id. The Fifth Circuit ultimately held that "[a]lthough [the school board president]'s statements reflect clear racial animus, nothing in these statements supports a conclusion that the animus was

directed at Floyd on the basis of his race." Summary judgment for the school district was affirmed.

The Fifth Circuit has not been entirely clear as to what type of relationship is necessary for an associational race discrimination claim to survive summary judgment. In Pittman v. General Nutrition Corp., 515 F. Supp.2d 721 (S.D. Tex. 2007), a white plaintiff alleged that he lost the opportunity at a promotion because he supported a black co-worker, Demeke, for a different position. Pittman discussed what type of relationship or association is required for an associational race discrimination claim:

> GNC argues that only marital or other intimate relationships are protected, but the point is academic. Pittman has not proven or even asserted that he and Demeke had any sort of "relationship." Pittman certainly was acquainted with and had supervised Demeke, which was the basis of his allegedly high opinion of Demeke's job performance. But, there is no indication that the two had a personal, social or intimate friendship, or that they even had worked closely together. Assuming arguendo that non-intimate relationships enjoy statutory or constitutional protection, which is a serious question, Pittman has not established that he and Demeke had any relationship that would constitute protected "association." Pittman has failed to establish a critical element of this form of his associational discrimination claim, and summary judgment is appropriate on this theory as well.

See id. at 746.

KCS argues that Corsentino cannot prove that any alleged discrimination was based on his race. Further, KCS claims that the "associations" at issue are not the types of "associations" that can support this type of claim. Corsentino replies by stating that KCS' management "consistently targeted black employees for discriminatory discipline, that those black employees that Mr. Corsentino represented received harsher discipline than the white employees that he represented." (Record Document 726 at 12). "Finally, the

evidence is clear that Mr. Corsentino was paid for his advocacy by falling victim to the same discriminatory discipline machine engineered by Sonnier and Thornell." See id.

Corsentino backs his position by referencing his deposition. In this deposition, Corsentino stated "[A.J. Sonnier ("Sonnier"), superintendent of KCS' Gulf Division] always told me he was going to get me....he was going to get me because I stood up for people of color, and he -- I was blocking what his plans were." (Record Document 726-3 at 9-10). Corsentino also stated "I was in [Sonnier's] way because me and him butted heads on all occasions, you know." (Record Document 726-3 at 12). However, the following exchange also took place:

> Q. And it's my understanding that your claim is that you were discriminated against because of your race. Is that accurate?
> A. Well, not exactly because of my race. Because of what I actually did, the people I took up for.
> Q. So it's your testimony here today that you were terminated or were harassed because you stood up for a certain group of people, correct?
> A. Yes, sir, I stook up for black people. I stood up for everybody that worked there, but in particular black people that -- the reason I was discriminated against.

(Record Document 710-6 at 3). This uncontroverted testimony makes it clear that Corsentino was not discriminated against because of his race at all. In fact, from all of the above cited testimony, Corsentino could have been Caucasian, African-American, or any other race and the results would have been precisely the same.

The associational race discrimination claims, where the plaintiff properly alleged a claim under Title VII, all dealt with situations where the plaintiff's race was related to the discrimination. See Deffenbaugh-Williams, 156 F.3d 581 (an interracial romantic relationship); Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.,

173 F.3d 988 (6th Cir. 1999) (employee was discharged because his child was biracial); Parr v. Woodmen of the World Life Ins. Co., 791 F.2d 888 (11th Cir. 1986) (employee discriminated against as a result of his interracial marriage). In all of these cases, if the race of the plaintiff were different, the discrimination may not have existed. This is not the case here. Since the undisputed testimony shows that Corsentino's race was irrelevant to his discharge, a reasonable juror could not find that Corsentino was discriminated against on account of him being a Caucasian and summary judgment is appropriate on Corsentino's associational discrimination claim.

Based on this ruling, the Court need not address the question of whether or not a union chairman representing African American co-workers is a close enough association for an associational race discrimination claim.

### D. Retaliation

Retaliation claims are subject to the McDonnell Douglas framework. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This begins with Corsentino establishing a *prima facie* case of retaliation. "To establish a *prima facie* case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir.2007).

KCS asserts that Corsentino allegedly only participated in protected activity one time when he reported alleged discrimination by making a "phone call to someone" but he could not supply the person's name. (Record Document 710-7 at 21). Further, he could not produce a letter that he was allegedly given in response to this phone call. See id.

Otherwise, the only activity Corsentino alleges is that, as the union chairman, he represented African Americans in disciplinary proceedings and confronted Sonnier about disparate treatment of African American employees. If Corsentino was retaliated against because he defended African American employees, this may constitute protected activity. Therefore, the Court will assume, for the purposes of this motion only, that Corsentino did engage in protected activity. The second factor of his *prima facie* case, that of an adverse employment action, is met because Corsentino was discharged.

The next prong in the *prima facie* case is the causation element. "The proper standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred "but for" her protected conduct." Septimus v. University of Houston, 399 F.3d 601, 608 (5th Cir. 2005).[4] The alleged protected activity is representing and defending black employees in disciplinary proceedings as a union chairman and an unsubstantiated claim that Corsentino phoned an unnamed person at KCS to complain about the alleged racial discrimination of Corsentino's co-workers. Corsentino makes much of the fact that Sonnier was unfair towards black

---

[4]While it is unclear where the "but for" standard belongs in the McDonnell Douglas framework, that point is merely academic. What is clear is that the "but for" standard is dispositive on a retaliation claim. See Septimus v. University of Houston, 399 F.3d at 608. (Holding that the Fifth Circuit has "consistently held that in retaliation cases where the defendant has proffered a nondiscriminatory purpose for the adverse employment action the plaintiff has the burden of proving that 'but for' the discriminatory purpose he would not have been terminated."); Martin v. J.A.M. Distributing Co., 674 F.Supp.2d 822, 844 (E.D. Texas 7/13/09) ("Under a pretext theory, to carry his ultimate burden, the plaintiff must demonstrate that the adverse employment action would not have occurred "but for" the employee's participation in the protected activity."); Cooper v. Wal-Mart Transp., LLC, 662 F.Sup 757, 776 (S.D. Tex. 9/24/09) ("The standard of proof on the pretext element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred "but for" her protected conduct.").

employees in the disciplinary proceedings. However, this is irrelevant as to whether Sonnier fired Corsentino because of the abovementioned activity.[5] The only evidence that relates to the causation between this presumed protected activity and Corsentino's discharge is Corsentino's unsupported and self-serving testimony that Sonnier claimed he was going to "get" him. Otherwise, the evidence shows that Corsentino was the local chairman of the union for twelve years and admits that he represented "every boy in that Baton Rouge yard," not just the African American employees. (Record Document 710-2 at 8). It was only after he committed a suspension worthy offense for the fifth time in four years that he was ultimately discharged.[6]

In addressing the "but for" standard set out in Septimus, based on the evidence, the Court cannot say that "but for" Corsentino's representation of employees as a local chairman and "but for" Corsentino's alleged complaints of discrimination, he would not have

---

[5] It is, in fact, unclear if Sonnier fired Corsentino at all. The only evidence Corsentino supplies to the Court to show it was Sonnier who retaliated against him is, that when asked whom he felt retaliated against him, Corsentino stated that it was Sonnier. (Record Document 710-7 at 19). When asked what evidence he felt he had as to why it was Sonnier, Corsentino opined that he felt it was Sonnier "because he was the superintendent, he carried a lot of weight in the company." See id.

Corsentino asserts that the factual findings of the Eastern District of Louisiana in Turner v. Kansas City Southern Railway Company, No. 09-30558 (E.D. La. March 26, 2012) is binding on this Court in this matter. The Court does not believe, nor does Corsentino supply any authority that establishes that it is bound by the factual findings of Turner, as the case consisted of different plaintiffs, facts, and claims. Therefore, this Court finds that the factual findings of Turner do not bind the Court in this matter.

[6] In January of 2000, Corsentino received a five day deferred suspension for a derailment. In January of 2002, Corsentino received another five day deferred suspension for a derailment. In January of 2003, Corsentino received a three day suspension for a switching incident. In February of 2003, Corsentino received a forty-five day suspension for failing to operate an interlocker properly, which caused a derailment. Finally, in February of 2004, Corsentino was discharged for another derailment. (Record Document 710-1 at 17).

been discharged. This is because if one were to take away all of Corsentino's involvement with the union, the Court is left with the uncontroverted fact that Corsentino was guilty of a suspension worthy offense five times in four years. (Record Document 710-2 at 13). It is apparent from the evidence that this many suspension worthy offenses repeated this many times in this short of a period creates a serious disciplinary record. Standing alone, this record justifies Corsentino's discharge. Therefore, this claim fails the "but for" test set out in Septimus and the Court finds no causal connection between this alleged protected activity and Corsentino's discharge.[7] While this is dispositive on Corsentino's retaliation claim, in an abundance of caution, the Court will complete the McDonnell Douglas framework analysis.

Due to the dispositive nature of the "but for" standard in a retaliation claim, the causation prong seems to have substantial overlap with the next two steps in the McDonnell Douglas framework. The next step in the McDonnell Douglas framework is to determine if KCS has a legitimate, non-discriminatory reason for discharging Corsentino. Pfau v. Gilger, 211 Fed. Appx. 271, 272-273 (5th Cir. 2006). The final step is that "[i]f the employer meets this burden, 'any presumption of retaliation drops from the case' and the burden returns to the employee to show that the 'stated reason is actually a pretext for retaliation.'" Fierros v. Texas Dept. of Health, 2006 WL 870637, *2 (W.D. Tex. 3/31/06)

---

[7]Further, it does not appear that, at the time of his discharge, Corsentino thought this supposed protected activity was the cause of his discharge either. KCS alleges that Corsentino drafted nine letters to KCS and his union regarding his discharge and not once did he allege mistreatment based on any protected activity under Title VII. Rather, he alleged his mistreatment was caused because he was the local chairman of the union. (Record Document 730 at 8-9). Corsentino does not even address, let alone dispute, this argument.

(citations omitted) affirmed by Fierros v. Texas Dept. Of Health, 247 Fed. Appx. 478 (5th Cir. 2007).

Through the analysis under the "but for" standard, it is apparent that KCS had a legitimate, non-discriminatory reason for discharging Corsentino. It is undisputed that Corsentino was guilty of five suspension worthy offenses in four years. (Record Document 710-1 at 8). It is further undisputed that this is the reason KCS gave Corsentino for his discharge. KCS provides evidence that Corsentino's discharge was upheld on two internal appeals and that the International President of Corsentino's own union found that, based on his personal review of Corsentino's record, Corsentino's discharge was warranted.[8] (Record Document 710-1 at 19). Further, the "but for" standard shows that the reason given by KCS was not merely a pretext for retaliation because, as the Court has already held, even without the protected activity, the discharge would have been warranted.

KCS has shown that a reasonable juror could not find that, but for the alleged protected activity, the adverse employment action would not have occurred. Therefore, summary judgment is appropriate for KCS on this retaliation claim. Further, since all Title VII claims have been dismissed, Corsentino's LEDL claim is also dismissed.

## CONCLUSION

Corsentino has conceded his state law claims, age discrimination claim, race discrimination claim, hostile work environment claim, and his desperate impact claim because he has failed to address them in his opposition to summary judgment. Further,

---

[8]Specifically, the union representative stated, "I have served on numerous Public Law Boards and with the exception of the discipline in the case of [one of Corsentino's co-workers], no Arbitrator would consider reinstatement for records such as I have listed above." (Record Document 710-14 at 33).

Corsentino cannot prevail on his associational race discrimination claim as he cannot show that any alleged discrimination was based on his race. Corsentino cannot prevail on his retaliation claim as he cannot show that, but for his alleged protected activity, he would not have been discharged.

Accordingly,

**IT IS ORDERED THAT** the foregoing motion (Record Document 710) be and is hereby **GRANTED.** All of Corsentino's claims against KCS are **DISMISSED WITH PREJUDICE**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

Thus done and signed, in Shreveport, Louisiana, this 1st day of May, 2012.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE