UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CLARENCE CARGO, ET AL., | CIVIL ACTION NO. 05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN RAILWAY COMPANY | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment on Plaintiff Leo Tolbert's ("Tolbert") various discrimination claims filed by Defendant Kansas City Southern Railway Company ("KCS"). (Record Document 721)  The motion conveys reasons for the Defendant seeking dismissal of all claims raised by Tolbert. Tolbert, in opposition to Defendant's Motion for Summary Judgment, expressly concedes all of his claims except for his discriminatory discipline and constructive discharge claims. (Record Document 725). For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED**. Accordingly, all of Tolbert's claims of are **DISMISSED**.

**FACTUAL BACKGROUND**

Tolbert is an African American male. (Record Document 721-2 at 1). He was employed by KCS beginning in 1972 until he retired in September of 2003. (Record Document 725 at 4). Tolbert was hired as a trackman but was promoted to foreman in 1978, brakeman in 1980, and conductor in 1993. See id. He worked as a conductor until his retirement. During the last few years at KCS, Tolbert was disciplined on four occasions. In 2002, Tolbert received a deferred three day suspension for falsifying a work order and a reprimand for mishandling a train. (Record Document 721-1 at 15). In 2003, Tolbert

received a deferred thirty day suspension and a one day developmental training for "failing to print out and/or select the proper paper work, which resulted in improper switching." Also in 2003, Tolbert received one day of employee development training. (Record Document 721-1 at 15-16).

Tolbert alleges that in his time at KCS, he was "subjected to repeated, undeserved discipline" and "other Caucasian employees were not disciplined for substantially similar conduct." See id. Further, he alleges that he was forced into retirement "because of continual investigations, reprimands, and discipline to which he was subjected." (Record Document 725 at 9).

Following his retirement, Tolbert filed the above-captioned matter alleging various claims against KCS. (Record Document 1). Subsequently, after preliminary motion practice, the Plaintiffs were broken into 29 trial groups. (Record Document 492). The pairing was based on the Plaintiffs' respective claims. Tolbert was placed in group nine by himself as he worked as a brakeman on the Train Crew in Baton Rouge. (Record Document 492).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the

---

[1] The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## LAW AND ANALYSIS

**i. Discriminatory Discharge**

Employers are prohibited from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A claim for discrimination may be proven with direct or circumstantial evidence. Nasti v. CIBA Specialty Chemicals Corp., 492 F.3d 589,593 (5th Cir. 2007). If a Plaintiff lacks direct evidence to prove such a claim, courts are to implement a burden shifting analysis as established under McDonnell Douglas Corp. V. Green, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). Nasti, 492 F.3d at 593. Tolbert has not provided the Court with any direct evidence

of discrimination and therefore analysis under the McDonnell Douglas framework is appropriate. The Fifth Circuit has explained this framework as follows:

> Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of...discrimination. The employer then bears the burden of producing a legitimate, non-discriminatory reason for its actions. The employer is not required to convince the Court that it was actually motivated by this reason; it need only raise a genuine issue of fact as to whether or not it discriminated against the plaintiff. Once the employer offers a legitimate, nondiscriminatory reason for the plaintiff's treatment, the presumptions of the McDonnell Douglas framework dissipate, and the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant engaged in intentional discrimination. To satisfy this burden, a plaintiff must produce substantial evidence that the employer's proffered reasons for its actions were a pretext for discrimination. A plaintiff can establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'

Nasti, 492 F.3d at 593. (Internal citations omitted)

In order to establish a *prima facie* case of discriminatory discharge, Tolbert must show that (1) he belongs to a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably. See id.

It is apparent from both the facts of this case and the parties' briefings that this claim of discriminatory discharge rests on the fourth element of the *prima facie* case. The Fifth Circuit has been clear that "for employees to be similarly situated[,] those employees' circumstances, including their misconduct, must have been 'nearly identical.' " Perez v. Texas Dept. of Criminal Justice, 395 F.3d 206 (5th Cir. 2004).

In <u>Lee v. Kansas City Southern Ry. Co.</u>, 574 F.3d 253 (5th Cir. 2009), the Fifth Circuit found the district court erred in finding that the plaintiff did not meet his *prima facie* burden of identifying a similarly situated employee to the plaintiff. The plaintiff in this case was fired for "(1) disregarding a block signal that indicated he had to stop the train and (2) failing to contact his dispatcher for authorization to proceed." <u>See id</u>. at 261. The plaintiff's comparator had committed the following violations in the same period: "(1) failed to inspect a train in compliance with a trackside warning signal, for which he received a 30-day suspension; (2) improperly handled a train that separated as a result, for which he received a 5-day suspension; and (3) occupied a main track without authority, for which he was fired, only to be reinstated by Alexander." <u>See id</u>. The court held, "We are satisfied that employment histories marked by a comparable number of serious moving violations by train engineers who perform the same job are sufficiently similar to require comparison of the two when, as here, the final violations-failing to obey a stop signal-are indistinguishable." <u>See id</u>. at 261-262.

The similarly situated employees Tolbert has offered to the Court are Dale Laurendine ("Laurendine") and Dale Burns ("Burns"). (Record Document 725 at 7). In determining if Laurendine is similarly situated to Tolbert, Tolbert simply states, "Mr. Laurendine was similarly situated to Mr. Tolbert. Mr. Laurendine had problems with the computer system resulting in improper paperwork" but was not disciplined for these incidents. (Record Document 725 at 7). However, in his deposition, Tolbert admits "he had more problems with the computer system than Laurendine did." (Record Document 721-2 at 27). Tolbert also admits that he "could not identify the time frame during which Laurendine allegedly had the problems with the computer." <u>See id</u>. At no point has Tolbert

provided this Court with any information as to who Laurendine's supervisor was, what his position was, what his responsibilities were, or even what his disciplinary history was. Therefore, there is no evidence that shows that Laurendine was similarly situated to Tolbert and he is not a proper comparator.

Tolbert alleges Burns is also a proper comparator. Tolbert alleges that Burns was a switchman with KCS "who had a similar employment record as Mr. Tolbert." (Record Document 725 at 7). Tolbert further states that Burns had "similar responsibilities to Mr. Tolbert and he was disciplined under the same rules and the same supervisors." (Record Document 725 at 8). Tolbert does not cite to the record at any point in his discussion of Burns. According to information supplied by KCS, Burns began working at KCS in 1991, roughly nineteen years after Tolbert. (Record Document 728 at 5). Burns received three formal disciplinary actions between June of 2000 and June of 2003. (Record Document 721-2 at 28). One of those actions was a reprimand and the other two were suspensions. Burns was terminated by KCS in June of 2006. It is undisputed that Tolbert "could not provide any specific instances where Burns was treated more favorably than Tolbert was treated." (Record Document 721-2 at 27). It is unclear how Burns "received less discipline than Mr. Tolbert" as Tolbert has provided no evidence in the record to back this proposition. (Record Document 725 at 8). Tolbert has not even alleged what it is that Burns did to receive disciplinary action.

Moreover, between June of 2000 and June of 2003, Tolbert received two *deferred* suspensions, a reprimand, and two developmental training days as discipline for various actions. It is unclear how Burns' disciplinary record is more favorable than Tolbert's. Regardless, the fact the Court has not been provided any evidence regarding what job

responsibilities Burns had, who disciplined Burns, who supervised Burns, or what rules Burns violated prevents the Court from finding him to be similarly situated to Tolbert.

Based on the record before the Court, there is not sufficient evidence for a reasonable juror to find that Burns or Tolbert are proper comparators for a discriminatory discipline action. Therefore, Tolbert cannot establish a *prima facie* case for discriminatory discipline and, under the McDonnell Douglas analysis, the Court's inquiry stops here. Summary Judgment is appropriate for KCS on this claim.

**ii. Constructive Discharge**

Tolbert alleges that he was constructively discharged when he retired one year after he was eligible for retirement. In a constructive discharge claim, a plaintiff is "required to satisfy the stringent test for constructive discharge." Ranel v. Gilley Enterprises-Louisiana Partnership, 2009 WL 1310879, *4 (W.D.La.,2009) (citations omitted). "A constructive discharge has occurred when an employee resigns after 'the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign.' " Barrow v. New Orleans S.S. Ass'n, 10 F.3d 292, 297 (5th Cir.1994). "[T]o succeed on a constructive discharge claim, the plaintiff must show a greater degree of harassment than is required for a hostile work environment claim." Thomas v. Atmos Energy Corp., 223 Fed. Appx. 369, 377 (5th Cir. 2007); citing Hockman v. Westward Communs., LLC, 407 F.3d 317, 332 (5th Cir.2004).

"In determining whether an employee has been constructively discharged, courts consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the

employee's resignation; or (6) offers of early retirement that would make the employee worse off, regardless of whether the offer was accepted." Vallecillo v. U.S. Dept. of Hous. & Urban Dev., 155 F. App'x 764, 768 (5th Cir. 2005).

In only two paragraphs of argument, Tolbert states that he was "continually reprimanded, investigated, and disciplined at work."[2] (Record Document 725 at 10). Further, Tolbert alleges that A.J. Sonnier, Tolbert's superior at KCS, "harassed" him in the yard.[3] See id. Other than these two statements, Tolbert offers no evidence in the record to show how he was compelled to resign from KCS. KCS, however, asserts that over the course of twenty years at KCS, Tolbert "received four reprimands, two deferred suspensions, and one actual suspension, and during that same time frame, he attended only four formal investigations." (Record Document 728 at 7). That amounts to only seven notices of rule infractions. Further, in that time, he only actually served one three day suspension. See id.

In Vallecillo, the Fifth Circuit affirmed a district court's dismissal of a constructive discharge claim noting that the plaintiff was not demoted and his salary was not reduced. Vallecillo v. U.S. Dept. of Hous. & Urban Dev., 155 F. App'x at 768. Likewise, Tolbert has not alleged that his job duties and salary were effected, in any way, by this alleged "harassment." Rather, Tolbert voluntarily retired, with full benefits, including a pension.

---

[2]Tolbert cites to this portion of KCS's Statement of Material Facts: "When asked specifically about the facts supporting his constructive discharge claim, Tolbert testified as following: 'simply because they kept – every time I turned around they was saying I, you know did this or did that….every time I turn around I was in an investigation, or reprimand or something, you know, about, you know, different things.' " (Record Document 721-2 at 32).

[3]Tolbert cites to this portion of KCS's Statement of Material Facts: "According to Tolbert, Sonnier would say things to him out in the yard, but he admitted that Sonnier was addressing performance issues." (Record Document 721-2 at 32).

A hostile work environment claim is viable "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Stewart v. Mississippi Transport Commission, 586 F.3d 321 (5th Cir. 2009) (quoting National R.R. Passenger Corp. V. Morgan, 536 U.S. 101 (2002)). A constructive discharge claim requires an even greater degree of harassment by the defendant. The unsupported and contradicted allegations that KCS continually investigated Tolbert and that Sonnier would say things to Tolbert about performance issues in the yard clearly do not meet this standard. The record shows that Tolbert only attended four formal investigations over a twenty year period at KCS and only received a total of seven rule infraction notices. The record further shows that Sonnier only discussed performance related issues with Tolbert in the yard. Finally, it is undisputed that Tolbert's job duties, salary, and retirement benefits were not altered by any of this alleged "harassment." The Court finds that these actions do not show that KCS made Tolbert's working conditions so intolerable that a reasonable employee would feel compelled to resign. Therefore, summary judgment is appropriate for KCS on this claim.

## CONCLUSION

Based on the foregoing analysis, the Court finds that Plaintiff Leo Tolbert has abandoned all claims, save his discriminatory discipline and constructive discharge claim. Additionally, Tolbert has failed make a *prima facie* showing of discriminatory discharge as he has not provided the Court with a single comparator who is similarly situated to himself. Further, Tolbert cannot meet his burden regarding his constructive discharge claim as a reasonable juror could not find that KCS made his working conditions so intolerable that a reasonable employee would feel compelled to resign.

Accordingly,

**IT IS ORDERED THAT** the foregoing motion (Record Document 721) be and is hereby **GRANTED.** All of Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

An Order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

Thus done and signed, in Shreveport, Louisiana, this 15th day of May, 2012.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE