**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

CLARENCE CARGO, ET AL.,               CIVIL ACTION NO.  05-2010

VERSUS                                JUDGE S. MAURICE HICKS, JR.

KANSAS CITY SOUTHERN                  MAGISTRATE JUDGE HORNSBY
RAILWAY COMPANY

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment on Plaintiff Willie Turner's ("Turner") various discrimination claims filed by Defendant Kansas City Southern Railway Company ("KCS"). (Record Document 731). The motion conveys reasons for the Defendant seeking dismissal of all claims raised by Turner. Turner, in opposition to Defendant's Motion for Summary Judgment, expressly concedes all of his claims except for one of his failure to hire claims and his discriminatory discharge claim. (Record Document 739). For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED**. Accordingly, all of Turner's claims are **DISMISSED**.

## FACTUAL BACKGROUND

Tuner is an African American male. (Record Document 731-2 at 1). He was employed by KCS from September of 2002 until he was discharged in January of 2005. (Record Document 731-2 at 16).Turner was hired as a brakeman and remained in that position until he was discharged. See id. During his employment at KCS, Turner was had an extensive disciplinary history. Turner had nine encounters with KCS management about disciplinary matters in the less than two and one-half years. (Record Document 731-1 at 22). Turner was disciplined for four of these nine incidents. The incidents he was not

disciplined for ranged from failing an operational test to running through a switch. (Record Document 731-1 at 22). However, he did receive suspensions for four of the incidents. First, in August of 2003, Turner failed to secure a train, which resulted in a "crossing collision." (Record Document 731-1 at 22). For this he was given a ninety day suspension. See id. In January of 2004, Turner ran through a switch and was given a five day suspension. See id. In March of 2004, Turner was suspended for thirty days for damaging a train but not reporting it to management. However, he did not have to serve the suspension. See id. Finally, in January of 2005, Turner attended a formal investigation and was discharged for running through a switch. (Record Document 731-1 at 23). From a review of the record, this was the third time he had run through a switch.

Following his discharge, Turner filed the above-captioned matter alleging various claims against KCS. (Record Document 1). Subsequently, after preliminary motion practice, the Plaintiffs were broken into 29 trial groups. (Record Document 492). The pairing was based on the Plaintiffs' respective claims. Turner was placed in group ten by himself as he worked as a brakeman on the Train Crew in New Orleans. (Record Document 492).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  Quality Infusion Care, Inc. v. Health Care Serv.

---

[1] The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## LAW AND ANALYSIS

### i. Failure to Hire

Turner, in his Complaint, brings a failure to hire claim under Title VII and 42 U.S.C. § 1981. The claims surround KCS not accepting Turner's application to join KCS's police department twice, in 2002 and 2004. Turner expressly concedes the claims surrounding the 2002 application. Further, Turner does not discuss a claim under Title VII in his opposition to summary judgment and, therefore, has conceded that claim. This leaves the Court only with a § 1981 claim regarding his application to KCS's police force in 2004.

"An employee alleging racial discrimination against his employer based on circumstantial evidence must first establish a *prima facie* case of discrimination." Bright v. GB Bioscience Inc., 305 F. App'x 197, 201 (5th Cir. 2008). "The general prima facie

requirement is that '[t]he plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.' "See id. at 202. Turner must show: (i) that he belongs to a protected minority; (ii) that he applied and was qualified for a job for which KCS was seeking applicants; (iii) that he was not hired; and (iv) that KCS rejected him under circumstances giving rise to an inference of unlawful discrimination. See id. Other courts have stated the fourth prong to require a plaintiff to show that "after the defendant declined to hire her, the position either remained open or someone outside the protected group was selected to fill it." Chacko v. Texas A&M University, 960 F.Supp. 1180,1188 (S.D. Texas April 4, 1997). "Overall, the burden of establishing a prima facie case is not onerous." See id.

KCS alleges that Turner cannot meet his *prima facie* burden because he cannot show "that he either met the requisite qualifications for the position he sought or that an individual outside his protected class was hired for the position." (Record Document 731-1 at 20). In regards to the qualifications, KCS alleges that the position Turner was seeking required a college degree and Turner did not have one. Further, as for the purported successful applicants of the job Turner applied for, KCS points to Turner's deposition where the following exchange occurred:

> Q:   Do you have the names of the people who were hired
> during that period in time?
> A:   No. I don't.
> Q:   How do you know that there were people that were
> hired?
> A:   I read somewhere in a transcript – I don't remember
> which one – but i read that in a transcript.

(Record Document 731-5 at 8). Otherwise, Turner claims that "[w]ell, later on, I found out during depositions, I guess, or just statements, later on when this whole thing come [sic] about that during that particular time, there were...maybe, three or four whites hired at that particular time." See id. Turner does not provide any evidence to support this assertion. He has not attached the deposition or statement that informed him of these hirings. Further, he cannot even provide the Court with the names of the people hired. Without any of this information, all the Court is left with are the unsubstantiated accusations as to who was hired instead of him.[2] "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." TIG Ins. Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002). Turner's unsubstantiated assertion that "three or four whites" were hired for the position he applied for does not create a material  dispute of fact sufficient to allow this claim to survive summary judgment. Turner cannot meet his *prima facie* burden as he cannot show that the position either remained open or someone outside the protected group was selected to fill it.

### ii. Discriminatory Discharge

Employers are prohibited from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A claim for discrimination may be proven with direct or circumstantial evidence. Nasti v. CIBA

---

[2]Further, it appears to the Court that Turner's deposition statements regarding what he heard or read in another deposition or statement amounts to inadmissible hearsay and are not competent summary judgment evidence for that reason.

Specialty Chemicals Corp., 492 F.3d 589,593 (5th Cir. 2007). If a Plaintiff lacks direct evidence to prove such a claim, courts are to implement a burden shifting analysis as established under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). Nasti, 492 F.3d at 593. Turner has not provided the Court with any direct evidence of discrimination and therefore analysis under the McDonnell Douglas framework is appropriate. The Fifth Circuit has explained this framework as follows:

> Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of...discrimination. The employer then bears the burden of producing a legitimate, non-discriminatory reason for its actions. The employer is not required to convince the Court that it was actually motivated by this reason; it need only raise a genuine issue of fact as to whether or not it discriminated against the plaintiff. Once the employer offers a legitimate, nondiscriminatory reason for the plaintiff's treatment, the presumptions of the McDonnell Douglas framework dissipate, and the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant engaged in intentional discrimination. To satisfy this burden, a plaintiff must produce substantial evidence that the employer's proffered reasons for its actions were a pretext for discrimination. A plaintiff can establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'

Nasti, 492 F.3d at 593. (Internal citations omitted)

In order to establish a *prima facie* case of discriminatory discharge, Turner must show that (1) he belongs to a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably. See id. Importantly, "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir.1995)

It is apparent from both the facts of this case and the parties' briefings that this claim of discriminatory discharge rests on the fourth element of the *prima facie* case. The Fifth Circuit has been clear that "for employees to be similarly situated[,] those employees' circumstances, including their misconduct, must have been 'nearly identical.' " Perez v. Texas Dept. of Criminal Justice, 395 F.3d 206 (5th Cir. 2004).

In Lee v. Kansas City Southern Ry. Co., 574 F.3d 253 (5th Cir. 2009), the Fifth Circuit found the district court erred in finding that the plaintiff did not meet his *prima facie* burden of identifying a similarly situated employee to the plaintiff. The plaintiff in this case was fired for "(1) disregarding a block signal that indicated he had to stop the train and (2) failing to contact his dispatcher for authorization to proceed." See id. at 261. The plaintiff's comparator had committed the following violations in the same period: "(1) failed to inspect a train in compliance with a trackside warning signal, for which he received a 30-day suspension; (2) improperly handled a train that separated as a result, for which he received a 5-day suspension; and (3) occupied a main track without authority, for which he was fired, only to be reinstated by Alexander." See id. The court held, "We are satisfied that employment histories marked by a comparable number of serious moving violations by train engineers who perform the same job are sufficiently similar to require comparison of the two when, as here, the final violations- failing to obey a stop signal- are indistinguishable." See id. at 261-262.

Turner alleges that he "has identified two individuals who partook in similar conduct and were not terminated or disciplined for violations of KCS's rules." (Record Document 139 at 8). Those two individuals are William Bates ("Bates") and Dale Burns ("Burns"). All that Turner alleges about either of these two is that they "engaged in substantially similar

conduct to Mr. Turner and [were] not terminated or disciplined for [their] actions." (Record Document 739 at 7). Other than this statement, Turner does not give any detail as to how these individuals are similarly situated to Turner. Turner appears to claim that whether an individual is similarly situated to a plaintiff is an issue for a jury and not the Court. (Record Document 739 at 8). Obviously this is not the case. The Fifth Circuit has, multiple times, analyzed whether a plaintiff can meet his *prima facie* burden under a discriminatory discharge claim without the aid of a jury. More specifically, at the summary judgment phase, the Fifth Circuit has analyzed  whether a potential comparator is similarly situated to the plaintiff. See Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009); Turner v. Kansas City S. Ry. Co., 675 F.3d 887 (5th Cir. 2012). Turner clearly knows this to be the case as he has cited both of these opinions in his opposition to summary judgment.

While Turner does not provide any evidence, at all, in his opposition to summary judgment that would allow this Court to deem his potential comparators to be "similarly situated" to him, KCS has provided enough evidence to show that neither are proper comparators. First, addressing Bates, KCS concedes that Bates was a part of the violation conduct for which Turner was discharged. However, Bates was a conductor and not a brakeman. This, alone, is not fatal to Bates being a comparator, but when coupled with Bates's work history, it is clear that Bates is not a proper comparator. In the three years prior to the switch running incident that both Bates and Turner were a part of, Bates only had one disciplinary action. (Record Document 740 at 6). Turner had three suspensions in that same period. Moreover, this was the third time that Turner had been guilty of running through a switch. The record does not indicate the same for Bates. "Each employee's track record at the company need not comprise the identical number of identical infractions, albeit these records must be comparable." Lee v. Kansas City S. Ry. Co., 574 F.3d 253,

261 (5th Cir. 2009). The record shows that Turner had 9 disciplinary incidents and that four of them resulted in some form of discipline. The record only establishes that Bates, who began working at KCS at the same time as Turner, had only one disciplinary action taken against him. (Record Document 470 at 6). These records are not comparable.

In regards to Burns, Burns was hired more than a decade before Turner and worked in a different location than Turner.[3] (Record Document 731-2 at 27-28). Burns was a switchman and not a brakeman. (Record Document 731-1 at 24). It is undisputed that a brakeman and switchman have different responsibilities. (Record Document 731-2 at 1-3). This alone is fatal to Burns's potential use as a comparator.[4] Even still, as for disciplinary history, in the three years Turner was employed with KCS, Burns only received reprimands while Turner was receiving suspensions. Further, the record is absent any evidence that Burns had violated the same rule, ie. running through a switch, three times within three years. Through the analysis for both Bates and Burns, it is clear that neither are proper comparators and Turner cannot meet his *prima facie* burden in his discriminatory discharge claim.

---

[3]"Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated." Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009).

[4]"[E]mployees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259-60 (5th Cir. 2009).

## CONCLUSION

Based on the foregoing analysis, the Court finds that Plaintiff Willie Turner has abandoned all claims, save his failure to hire claim and discriminatory discharge claim. However, Turner cannot meet his *prima facie* burden on either of these two claims.

Accordingly,

**IT IS ORDERED THAT** the foregoing motion (Record Document 731) be and is hereby **GRANTED.** All of Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

An Order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

Thus done and signed, in Shreveport, Louisiana, this 25th day of June, 2012.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE