UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

---

| | |
|---|---|
| CLARENCE CARGO, ET AL. | CIVIL ACTION NO.  05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN RAILWAY COMPANY | MAGISTRATE JUDGE HORNSBY |

---

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment on Plaintiff Darren Stanley's ("Stanley") remaining federal and state employment discrimination claims filed by Defendant, Kansas City Southern Railway Company ("KCS").  (Record Document 745). Stanley, in opposition to Defendant's Motion for Summary Judgment, concedes all state law claims, including his Louisiana Employment Discrimination Claims. (Record Document 753 at 10).   Given this response, the Court will treat all state related claims against KCS as abandoned.  Additionally, Stanley's Title VII claims have already been dismissed by this Court as Stanley failed to exhaust all available administrative remedies.  (Record Document 374).  The Court must now only address Stanley's remaining claims that KCS violated 42 U.S.C. 2000-e, *et seq.* by unlawfully terminating his employment and subjecting him to a hostile work environment.   For the reasons that follow, KCS's Motion for Summary Judgment is **GRANTED.**  Accordingly, all of Stanley's claims are hereby **DISMISSED**.

## FACTUAL BACKGROUND

Stanley, an African American male, began working for the defendant, KCS,  on June 28, 1998.  (Record Document 753 at 1).  Stanley was initially hired as a customer service representative, where his duties required, among other things, that he work daily on a

computer and be knowledgeable of the KCS computer systems. (Record Document 745-1 at 1). KCS had specific policies governing computer use as well as policies prohibiting harassment. Id. In October 1998, Stanley was personally counseled by KCS after sending an email containing a sexually explicit joke that violated KCS's computer use policy. Nevertheless, in September of 2000, Stanley was promoted to Assistant Manager of the Customer Service Center; he was again promoted in August 2002 to the position of Manager of Production Control in the Customer Service Center ("CSC"). (Record Document 753-1 at 2). This position was created especially for him and resulted in approximately a 17.5% pay raise. Id. There were no other employees at KCS who held an identical management position. During his tenure from June 1998 through October 2002, Stanley received a total of 4 pay raises. Id.

As a manager in the CSC, Stanley was again required to operate a workplace computer in accordance with KCS's policy governing computer use. (Record Document 745-2 at 1-2). Additionally, KCS had policies that prohibited harassment of any kind and mandated that all employees comply with all regulations and laws. Id. Stanley admits to having signed a written authorization confirming receipt of said rules. (Record Document 753 at 1). Stanley's knowledge of KCS's computer policy is further demonstrated by the repeated warnings he gave to co-workers that they should not be transmitting personal messages via KCS computers. Stanley also received a written notice from manager Janice McNeal reminding him of the prohibition against inappropriate emails. (Record Document 745-1 at 1).

During a company-wide email audit, KCS discovered that Stanley sent more than 46 non-business, inappropriate emails, many of which were sexually explicit and/or

specifically directed toward a specific subordinate female employee. (See Record Document 745-2 at 4). Despite Stanley's knowledge that his conduct violated KCS's policy, Stanley repeatedly sent sexually explicit or harassing emails. (Record Document 745-1 at 1). Examples of the personal, inappropriate emails sent from Stanley's workplace computer include a barrage of sexual advances toward a subordinate female employee and an email containing moving animations of cartoon characters, such as Fred Flintstone, Homer Simpson, and the Simpson children engaging in sexual acts. (Record Document 745). In fact, Stanley has even admitted the emails were "inappropriate" and "lewd" and does not dispute that his 46 emails at issue were a violation of KCS's computer use and anti-harassment policies. Id. The moving party, KCS, has clearly shown that there is no material issue of fact as to either the content of the 46 emails or whether Stanley violated KCS's computer use and harassment policies.

Following KCS's decision to dismiss Stanley from service on December 10, 2002, Stanley appealed the company's decision to the Special Board of Adjustment ("SBA"), an independent board established by federal law. On September 22, 2004, an independent arbitrator on the board considered the appeal and ruled that the termination must stand. (Record Document 745-1 at 2). The neutral SBA arbitrator clearly found Stanley's action to be in violation of both written policy and basic workplace rules governing supervisors. The arbitrator's opinion included the following:

> While [Stanley] maintained that his personal communications with this subordinate employee was none of the Company's business, clearly the use of Company equipment, on company time for this purpose not only violated well understood communication policies, but also was contrary to all basic standards of appropriate workplace relations between Supervisors and employees at the workplace.

(Record Document 745-5 Ex. 10).  The instant federal suit against KCS followed.[1]  (Record Document 1; 48).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Id.  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).  If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

---

[1] After preliminary motion practice, the plaintiffs were broken into 29 trial groups. (Record Document 492).  The groups were based on the plaintiffs' respective claims. Stanley was placed alone in group 12 given the fact that he is the only managerial plaintiff.

[2] The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

**LAW AND ANALYSIS**

**I. Discriminatory Discharge**

Employers are prohibited from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A claim for discrimination may be proven with direct or circumstantial evidence. Nasti v. CIBA Specialty Chemicals Corp., 492 F.3d 589,593 (5th Cir. 2007). If a Plaintiff lacks direct evidence to prove such a claim, courts are to implement a burden shifting analysis as established under McDonnell Douglas Corp. V. Green, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973); Nasti v. CIBA Specialty Chemicals Corp., 492 F.3d at 593. Because Stanley has not provided this Court with any direct evidence of discrimination, analysis under the McDonnell Douglas framework is appropriate. The Fifth Circuit has explained this framework as follows:

> Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of...discrimination. The employer then bears the burden of producing a legitimate, non-discriminatory reason for its actions. The employer is not required to convince the Court that it was actually motivated by this reason; it need only raise a genuine issue of fact as to whether or not it discriminated against the plaintiff. Once the employer offers a legitimate, nondiscriminatory reason for the plaintiff's treatment, the presumptions of the McDonnell Douglas framework dissipate, and the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant engaged in intentional discrimination. To satisfy this burden, a plaintiff must produce substantial evidence that the employer's proffered reasons for its actions were a pretext for discrimination. A plaintiff can establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'

Nasti, 492 F.3d at 593 (Internal citations omitted). Accordingly, Stanley must first establish a *prima facie* case of discriminatory discharge by showing that (1) he belongs to a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably. See id.

It is apparent from both the statement of material facts admitted by Stanley and the parties' briefs that this claim of discriminatory discharge rests on the fourth element of the McDonnell framework, as there is no dispute over elements one through three. Stanley must show that other KCS employees were similarly situated yet received more favorable treatment. The Fifth Circuit has been clear that "for employees to be similarly situated[,] those employees' circumstances, including their misconduct, must have been 'nearly identical.'" Perez v. Texas Dept. of Criminal Justice, 395 F.3d 206 (5th Cir. 2004). In summation, Stanley has failed to satisfy this requirement, as he did not provide the Court with adequate evidence to show that there is a genuine question of fact regarding whether the six individuals proffered as comparators are similarly situated.

Stanley's Third Amended Complaint alleges that three KCS employees, Debbie Allen, Steve Busch, and Angela Von Zynda, were similarity situated employees that were treated more favorably. (Record Document 43 at 38). It should be noted that Stanley failed to even mention Debbie Allen, Steve Busch, and Angela Von Zynda, let alone refute KCS's arguments regarding these three individuals, in his opposition to Defendant's Motion for Summary Judgment (See Record Document 753); therefore, Stanley waives any claim that the above listed individuals are similarly situated employees guilty of the same misconduct.

Irrespective of his waiver of his initial claim regarding Debbie Allen, Steve Busch, and Angela Von Zynda, Stanley has not provided even minimal evidence that these three KCS employees are proper comparators. In fact, Stanley admits that the three employees referenced in the Third Amended Complaint would not qualify as similarly situated employees given their status as non-management employees. (Record Document 753-1 at 3-4). Even if the he could somehow get past the management/non-management distinction between Stanley and three proffered employees, he has still failed to show that their circumstances, including their misconduct, were nearly identical. As such, this Court hereby finds that there is no genuine dispute regarding Debbie Allen, Steve Busch, and Angela Von Zynda.

The crux of the Stanley's discrimination claims now rests on his haphazard inclusion of three newly proffered employees added at an untimely stage in this litigation. Stanley named "Mr. Sanders," Tom Hadel, and Mark Redd as comparators for the first time in his Response to Defendant's Motion for Summary Judgment.[3] However, Stanley fails to establish that the comparators were similarly situated employees and therefore cannot survive summary judgment.

---

[3]The Court has concerns about both the timeliness and competency of the evidence presented in the Memorandum in Opposition to the Motion for Summary Judgment. The Court finds it suspect that Stanley failed to identify these newly named individuals until this late stage in the litigation. This skepticism is bolstered by the fact that the Stanley failed to even provide the Court with Mr. Sanders' first name. The Third Amended Complaint was filed nearly seven years ago; more than adequate time and discovery have passed for the Stanley to fully identify any alleged comparators to the Court. However, the Court, in an abundance of caution, will analyze this evidence as if it were admissible, as it does not change the outcome of its analysis.

Stanley attempts to show that Sanders, Hadel and Redd are similarly situated by pleading that: (1) all KCS managers are adequate comparators given the fact that Stanley occupied a unique management position, and (2) Sanders, Hadel, and Redd were managers who violated KCS's computer use policy yet were not fired. However, these pleadings still fall short of the Fifth Circuit standard set forth in Perez.

Stanley did not provide any evidence regarding the three comparator's discipline history, including any warnings they may have received, their work location and department, or whether they shared supervisors. Specifically, Stanley did not provide evidence showing that Sanders, Hadel, and Redd had received both verbal and written warnings prohibiting them from sending sexually explicit or personal emails. He also did not provide evidence demonstrating that these three individuals worked in the same department, CSC.

Additionally, Stanley has not established that Sanders, Hadel, and Redd committed nearly identical rule infractions. The conduct that led to Stanley's dismissal was: (1) sending sexually explicit emails to co-workers in violation of KCS's Acceptable Use Policy; and (2) sending female subordinates emails containing sexual advancements in violation of KCS's anti-harassment policy. (Record Document 765 at 5). The second type of misconduct separates Stanley from Sanders, Hadel, and Redd. While Stanley alleges that the three comparators sent out sexually explicit emails, he has not provided the Court any evidence showing that the three named comparators misconduct was of a similar nature or as serious as Stanley's repeated violation of KCS' anti-harassment policy. Specifically, no evidence was proffered showing that the comparators were guilty of sending a barrage of sexually harassing or seducing emails to a subordinate employee. While Stanley argues

that the other managers allegedly sent sexually explicit or personal emails in violation of KCS's acceptable computer use policy, such a violation is not "nearly identical" to repeated sexual advances towards a subordinate. Accordingly, Stanley has not met his *prima facie* case of discrimination.

Even if Stanley were able to establish a *prima facie* case of discrimination, KCS has provided a legitimate and non-discriminatory reason for his discharge. KCS's claim that Stanley continued to send out sexually explicit emails despite being specifically warned not to do so, remains unchallenged. Additionally, Stanley sent sexually explicit personal emails to a subordinate employee in violation of KCS's anti-harassment policy potentially exposing KCS to liability. Rule violations are legitimate non-discriminatory reasons for discharging an employee. Mayberry v. Vaught Aircraft Co., 55 F3.d 1086, 1090-91 (5th Cir. 1995). Stanley admitted responsibility for transmitting over 46 non-business, pornographic, harassing and inappropriate emails via the KCS email system. Transmitting the sexually explicit Flintstones/Simpson email, which included cartoon characters of children engaging in sexual activity was, in itself, a terminable offense. The overwhelming number of inappropriate and/or sexually explicit emails sent in direct violation of KCS's policies and federal law more than justify Stanley's dismissal. KCS asserts that as a result of Stanley's actions, he has violated its trust in his ability to manage subordinate employees. This is further substantiated by the SBA's review of the evidence and decision to uphold Stanley's removal. (Record Document 745). Stanley has presented no evidence that his termination was motivated by anything other than his repeated and serious violation of KCS policies.

Under the McDonnell Douglas framework, the burden shifts to Stanley to prove KCS's reason for discharge was pretextual. The burden Stanley carries at this point in the

Court's analysis is to show that this reason is "unworthy of credence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133,144, 120 S.Ct. 2097 (2000). Stanley cannot meet this burden. The SBA arbitrator gives credence to KCS's proffered reason in the following statement:

> Claimant had a clear discipline record and was not a long-term employee, having a seniority date of June 26, 1998. The length of service in this case, however, is irrelevant. Claimant violated the trust Carrier had in him as Supervisor and his termination must stand.

(Record Document 745-5 Ex. 10). The only evidence Stanley relies on is the fact other managers allegedly violated KCS's computer use policy and were not terminated. However, as explained above, this blatantly ignores the individual differences of the names proffered. Therefore, Stanley has failed to meet his burden of showing KCS's reason for discharge is pretextual.

Stanley cannot prove the *prima facie* elements of his claim of discriminatory discharge. He has failed to show a similarly situated employee was treated more favorably than he was; however, even had he been able to meet that burden, KCS offered and proved a legitimate, non-discriminatory reason for Stanley's discharge that Stanley failed to prove that the reason was pretextual. For this reason, summary judgment in favor of KCS is appropriate.

**II. Retaliation**

Stanley has conceded this claim. In his opposition of summary judgment, Stanley fails to address this claim at all and therefore fails to meet his summary judgment burden. Celotex Corp. V. Catrett, 477 U.S. 317. 333 n.3 (1986). While Stanley alleges retaliation

in the heading found on page three of his Response to Defendant's Motion for Summary Judgment, Stanley failed to mention this claim in the body of his response. Stanley did not provide any evidence in support of any protected activity. Furthermore, Stanley failed to establish any causal connection between any alleged protected activity and his termination.

### III. Hostile Work Environment

A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Stewart v. Mississippi Transport Commission, 586 F.3d 321 (5th Cir. 2009) (quoting National R.R. Passenger Corp. V. Morgan, 536 U.S. 101 (2002)). To establish his claim for a hostile work environment, Stanley must show that:

> 1) he belongs to a protected class; 2) he was subjected to unwelcome harassment; 3) the harassment was based on race; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action.

Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005). The alleged discrimination must have "created an environment that a reasonable person would find hostile or abusive." Id. Courts in this Circuit determine hostile environment considering the totality of the circumstances. Factors to consider include: "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." Id.; see Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Although "[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive" to support evidence of a Title VII violation," DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir.1995), "simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges" that can survive summary judgment. Hockman v. Westward Communications, LLC, 407 F.3d 317, 328 (5th Cir.2004). A plaintiff's own subjective beliefs, however genuine, cannot form the basis of judicial relief. Nichols v. Lewis Grocer, 138 F.3d 563 (5th Cir.1998); Little v. Republic Refining Co., 924 F.2d 93, 95 (5th Cir.1991). The jurisprudence of this Circuit establishes a very high burden for a plaintiff advancing a claim for a hostile work environment on racial grounds. From this Court's review of the total record, Stanley has failed to meet that burden.

Stanley's claim of a hostile work environment stems from the alleged racially charged statements of three co-workers. Stanley alleges: (1) Ronnie Vail ("Vail"), a supervisor, told him "[b]oy you need to get to work;" (2) Jim Hunter ("Hunter"), the day shift manager in the CSC, called Stanley a "fucking nigger" after getting upset with him over a report; and (3) Sharon Scott ("Scott"), a co-worker, referred to Stanley as a "black bastard" and a "porch monkey." (Record Document 753 at 8).

In order to be probative, the harassment alleged by a plaintiff in a hostile work environment claim must be based on the plaintiff's race. Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005). As an initial matter, Stanley has failed to present any evidence that Vail's use of the word "boy" was, by itself, related to Stanley's race or contained racial animus. Further, Vail ceased using this term upon Stanley's request. In fact, according to Vail's deposition, Vail made it clear that his use of the word "boy" or

"attaboy" was not meant to be derogatory. Stanley accepted Vail's explanation and stated, "I would never think that of you." (Record Document 765 at 8). According to Stanley, this was an isolated incident that was immediately resolved. In conclusion, Stanley has not provided evidence corroborating his belief that Vail's words possessed racial animus. However, even assuming that "boy" was a derogatory reference to Stanley's race, this isolated incident was insufficient in frequency or severity to constitute a hostile work environment claim. See Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 348 (5th Cir. 2007).

This leaves the Court with two instances of claimed racial harassment, (1) Hunter calling Stanley the "N" word, and (2) Scott referring to Stanley as "black bastard" and "porch monkey." In Lindsey v. Chevron USA Inc., 2002 WL 31415255 (5th Cir. 2002), the plaintiff brought a hostile work environment claim listing multiple instances of harassment. The Fifth Circuit found that many of the instances listed were not based on race and therefore not probative. The instances of racial harassment were: (1) the defendant not visiting the plaintiff in the hospital when he did so for white employees; (2) the use of racial epithets; and (3) the hanging of confederate flags by co-workers. The Fifth Circuit held that these three instances were not sufficient to show a hostile work environment. The Fifth Circuit addressed whether the harassment alleged was severe and pervasive so as to affect a term, condition, or privilege of the plaintiff's employment. It was found that these three instances "do not rise to the requisite degree of severity and pervasiveness that our precedents require." See id. at *4.

Similar to Lindsay, Stanley has failed to show that Hunter's use of the "N" word and Scott's use of two racial slurs were routine in nature. In fact, Stanley only alleges one

incident where the "N" word was used.  Therefore, just as hanging a confederate flag and the isolated use of racial slurs were not sufficient to show severe and pervasive harassment, neither are isolated uses of racial slurs.

While the alleged statements do appear to possess racial animus, it does not appear that these relatively isolated incidents occurred with such frequency and severity to unreasonably interfere with the employee's work performance. "For racial comments, slurs, and jokes to constitute a hostile work environment, there must be 'more than a few isolated incidents of racial enmity,' meaning that '[i]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." Lester v. Secretary of Veterans Affairs, 514 F.Supp. 2d. 866, 873 (W.D.La., 2007) (citing Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997)).  Mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII. Harris, 510 U.S. at 21.  A hostile work environment can only be found when the workplace is "permeated" by the offensive conduct. Id.  The three isolated incidents alleged by Stanley during his four years of employment at KCS do not constitute a steady barrage of opprobrious racial comments.  While the Court does not condone the alleged use of racially derogatory terms, the Court is not satisfied that Stanley has met the above cited standard to survive summary judgment; the alleged racially charged comments from the other KCS employees were not consistent or severe enough to show that the workplace was pervasive with discriminatory intimidation, ridicule, and insult.

For conduct to affect a term, condition, privilege of employment it must be so severe and pervasive that it destroys the protected classmember's opportunity to succeed in the workplace.  In the case at hand, the opposite has been demonstrated.  Stanley received

two promotions, including one promotion to a special management position created specifically for him, and three pay raises. Stanley also testified that he received support and promotions from both white and black managers. Further, Stanley has failed to articulate a single example of how this harassment interfered with his work performance. Without a sufficient showing of how the racial harassment endured by Stanley was severe or pervasive enough to affect a term, condition or privilege of his employment, Stanley cannot satisfy his *prima facie* burden.[4] Stanley has simply not shown that the harassment he endured was severe or pervasive enough so as to affect a term, condition, or privilege of his employment. Therefore, these three instances listed by Stanley, even when considered together, are not probative of a hostile work environment claim. Accordingly, Stanley cannot meet his *prima facie* burden and therefore cannot survive summary judgment.[5]

## CONCLUSION

---

[4]Stanley fails to address how the alleged racial remarks affected a term, condition, or privilege of his employment. Stanley argues that the conduct was severe and pervasive but fails to articulate how the harassment affected his working environment. "Such unsubstantiated assertions, without more, do not constitute competent summary judgment evidence." Shonowo v. Transcocean Offshore Deepwater, Inc., 2011 WL 3418405 *6 (S.D. Tex. 2011). In fact, the record shows that Stanley thrived at KCS, receiving multiple promotions and pay raises.

[5]KCS raises the issue of notice, the fifth element of Stanley's *prima facie* case, with respect Hunter's use of the "N" word, Stanley's most serious allegation. Stanley has not demonstrated that he reported this incident to KCS. (Record Document 745-1 at 18). Failing to report this incident is significant since it appears to be the crux of Stanley's hostile work environment claim. While there is doubt as to whether Stanley could meet his burden on the fifth element, the Court finds no need to make a direct finding on this issue since Stanley cannot show the fourth element of his *prima facie* case,.

Based on the foregoing analysis, the Court finds that Stanley has failed to provide sufficient evidence to raise a dispute of material fact that Stanley was discriminated against in violation of any federal law or that he indeed endured a hostile work environment.

Accordingly, **IT IS ORDERED THAT** the foregoing motion (Record Document 745) be and is hereby **GRANTED.**  All of Darren Stanley's claims against KCS are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED THAT** Record Documents 767, 768, 769, 771, 772, 773, 774, 775, 776, 777, 779, 780, and 781 be and are hereby **DENIED AS MOOT**.  An Order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 1st day of October, 2012.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE