UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CLARENCE CARGO, ET AL. | CIVIL ACTION NO.  05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN RAILWAY COMPANY | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment on Plaintiff Michelle Holmes' various employment discrimination claims (Record Document 836) filed by Defendant Kansas City Southern Railway Company ("KCSR").  The motion conveys reasons for the Defendant seeking dismissal of all claims raised by Holmes. Holmes, in opposition to Defendant's Motion for Summary Judgment, replies "Plaintiff has established a *prima facie* case of discrimination and retaliation under the McDonnell Douglas framework." Record Document 843 at 3. Plaintiff concedes her hostile work environment and state law claims. Id. at 12. For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED.**  Accordingly, all of Holmes' claims are **DISMISSED WITH PREJUDICE**.

**FACTUAL BACKGROUND**

Michelle Holmes is an African American female. Record Document 836-1 at 1. Holmes began to work at KCS as an Extra Board Clerk in Customer Service on February 18, 1998. In March 1998, Holmes assumed a more favorable position, as a Crew

Dispatcher. (SOF, ¶ 4).[1] In August 2005, she sought and was awarded a position as a Clerk in the diesel shop. (SOF, ¶ 6).

Crew Dispatchers serve the important role of communicating with crews to ensure that trains are properly and fully manned and "mark off" employees, those that indicate that they cannot appear as scheduled. The Crew Dispatchers then locate other crew members to fill those positions. (SOF, ¶ 5). Following instructions from supervising employees is essential to this role. To ensure that the responsibilities of the employees are known, KCSR has rules and policies in place. Specifically, employees are required to follow instructions from their supervisors and avoid conflicts of interest with KCSR and its interests. (SOF, ¶ 19 & 21). Holmes received copies of the rules and policies and signed written acknowledgments confirming her receipt of these documents. (SOF, ¶ 25). KCSR's discipline policy ensures that employees understand the consequences of failing to abide by the rules, as well as the instructions of a supervisor. (SOF, ¶ 22-24).

In the instant matter, Holmes' workplace history indicates repeated rules violations accompanied by a progressive disciplinary record. On September 26, 2003, Holmes admitted and acknowledged a rule violation, for which she received a formal reprimand. (SOF, ¶ 27-29). On January 28, 2004, a second violation occurred when Holmes failed to report to duty. Holmes signed an acknowledgment of this violation and received a fifteen-day (15) suspension. (SOF, ¶ 32-34). On August 23, 2004, Holmes was notified by letter of a formal investigation of her responsibility regarding her failure to perform her duties when she "marked off" a conductor under false pretenses and failed to comply with

---

[1]Statement of Facts (SOF) can be found at Record Document 836-2. The SOF used in this matter are uncontested.

instructions from supervisors in direct violation of KCSR's rules. (SOF, ¶ 35). A formal investigation into Holmes' failure to perform her duties and comply with instructions was held on September 16, 2004 with the Union (Transportation Communications International Union – "TCU") representing Holmes. During the investigation, Holmes testified and TCU presented evidence and examined witnesses. (SOF, ¶ 36). On September 24, 2004, Holmes was notified that she was found to have violated General Responsibilities 1.4, 1.6 and 1.13, for which she was issued a sixty-day (60) suspension. (SOF, ¶ 40).

In March 2006, Holmes again failed to follow KCSR's rules and regulations when she posted a flyer on Company bulletin boards to solicit for a law firm specializing in suits against the railroad. (SOF, ¶ 44). After another investigation by the railroad, during which time Holmes was represented by the Union, she admitted that she posted the law firm flyers on a KCSR bulletin board. (Exhibit 3, Rec. Doc. 836-6)[2]. Plaintiff was dismissed for violations of KCSR's Code of Business Conduct and Ethics, Use of Information Resources Policy, and certain provisions of KCSR's General Code of Operating Rules (Chapter 1, General Responsibilities). (SOF, ¶ 44).

Holmes appealed her dismissal to a Special Board of Adjustment ("SBA"), pursuant to the applicable Collective Bargaining Agreement ("CBA"). (SOF, ¶45). The SBA, which consisted of three members – a TCU member, a Company member, and a neutral chair – issued its determination after a review of all the evidence, including the entire transcript of testimony from the investigation. (SOF, ¶ 45). The SBA found that Holmes was in noncompliance with KCSR's General Code of Operating Rules, and was "acting as a

---

[2]The Court notes that the Personnel File is a sealed exhibit and can be found in Record Document 840.

'finder...for the benefit of a third party in transactions involving the Corporation or its interests.'" (SOF, ¶ 47).

The SBA also found that Holmes "was at fault in utilizing a bulletin board set aside by the Company for official Union business to promote an outside firm...The bulletin board was not designated by [KCSR] as a site to be utilized by employees for any notices they wished to post." (SOF, ¶ 48). The SBA, though agreeing that rules and policies of the Company had been violated by Holmes, nevertheless reinstated her, without back pay, stating that "the time that [Holmes] has been withheld from service should be sufficient to impress upon her the seriousness of her actions." (SOF, ¶ 49). Holmes was off work from April 2006 until March 2007 prior to her reinstatement by the SBA. (SOF, ¶ 50).

Holmes' employment with KCSR ultimately ended on September 14, 2008 following a dispute regarding whether Holmes provided false information on her original application for employment with KCSR. A formal investigation was held, and ultimately, the SBA upheld Holmes' dismissal, stating as follows:

> It must be concluded that her employment with [KCSR] was obtained under false pretenses...In the final analysis, [KCSR's] decision was not arbitrary, capricious, or discriminatory. Its decision in regard to [Plaintiff] must stand.

(SOF, ¶ 68; Ex. 22, SBA Decision, 2nd Termination, p. 5).[3]

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is

---

[3]The Court notes that Holmes does not raise this second termination as an adverse employment action on which any of her claims are based.

entitled to judgment as a matter of law."[4] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## LAW AND ANALYSIS

### I. Discrimination Claim

Employers are prohibited from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A claim for discrimination may be proven with direct or circumstantial evidence. Nasti v. CIBA Specialty Chemicals Corp., 492 F.3d 589,593 (5th Cir. 2007). If a Plaintiff lacks direct

---

[4]The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

evidence to prove such a claim, courts are to implement a burden shifting analysis as established under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973); Nasti v. CIBA Specialty Chemicals Corp., 492 F.3d at 593. Because Holmes has not provided this Court with any direct evidence of discrimination, analysis under the McDonnell Douglas framework is appropriate. The Fifth Circuit has explained this framework as follows:

> Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of...discrimination. The employer then bears the burden of producing a legitimate, non-discriminatory reason for its actions. The employer is not required to convince the Court that it was actually motivated by this reason; it need only raise a genuine issue of fact as to whether or not it discriminated against the plaintiff. Once the employer offers a legitimate, nondiscriminatory reason for the plaintiff's treatment, the presumptions of the McDonnell Douglas framework dissipate, and the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant engaged in intentional discrimination. To satisfy this burden, a plaintiff must produce substantial evidence that the employer's proffered reasons for its actions were a pretext for discrimination. A plaintiff can establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'

Nasti, 492 F.3d at 593 (Internal citations omitted). Accordingly, Holmes must first establish a *prima facie* case of discriminatory discharge by showing: (1) she belongs to a protected class, (2) she was qualified for his position, (3) she suffered an adverse employment action, and (4) similarly situated employees were treated more favorably. See Id.

It is clear, based on the facts presented in the instant matter, that the Plaintiff meets the qualifications for the first three elements to establish a prima facie case of discrimination. Accordingly, the Court's decision will rest upon its determination of whether

the fourth element was violated. The Plaintiff bears the burden of proving that, among other things, she and her alleged comparators:

> (1) held the same job or had the same duties and responsibilities;
> (2) shared the same supervisor or had their employment status determined by the same person;
> (3) have essentially comparable violation histories; and
> (4) that their conduct resulting in employment action was nearly identical.

Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009); Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995); Perez v. Texas Dept. Of Criminal Justice, Institutional Div., 395 F.3d 206, 213 (5th Cir. 2004); Jenkins v. State of La., Through Dep't of Corrs., 874 F.2d 992, 997 (5th Cir. 1989), cert. denied, 493 U.S. 1059 (1990) ("At all times, Plaintiff bears the burden of proving that race was a 'but for' cause of the adverse employment decision.")

In her Third Supplemental Complaint, Holmes identifies two KCSR employees whom she believes were treated more favorably than herself: Sharon Scott ("Scott") and James Smith ("Smith"). However, neither of these individuals were similarly situated to Holmes. Smith held a variety of positions at KCSR, including stints in the following positions: Train Dispatcher, Assistant Trainmaster, Manager of Network Services and an Enterprise Workforce Management. (SOF, ¶ 123-126). Prior to working for KCSR, Smith served as a Train Dispatcher for Midsouth Rail. (SOF, ¶ 122). None of these positions were the same as the position held by Holmes, who served as an Extra Board Clerk, Crew Dispatcher, and later as a Clerk in the diesel shop. Therefore, in accordance with the Fifth Circuit precedent, Smith cannot be similarly situated to Holmes. See Lee, 574 F.3d at 259.

Scott is the other individual that Holmes claims is a similarly situated employee. Scott, like Holmes, served as a Crew Dispatcher while she was employed at KCSR.

However, Scott is distinguishable from Holmes. Scott was on a leave of absence in June 2004 and dismissed on September 23, 2004[5] during the time frame of Holmes' investigation and sixty-day suspension. (SOF, ¶ 114). Scott had three formal disciplinary actions during her tenure with KCSR, all of which occurred prior to 2003. (SOF, ¶ 115). One of these suspensions was for improperly marking off an employee, which is one of Holmes' violations. However, Scott was suspended for her action, and this violation occurred prior to the August 2004 written directives regarding "mark offs." (SOF, ¶ 116). For these reasons, the Court finds that Scott and Holmes are not "nearly identical" as required by the Fifth Circuit. Lee, 574 F.3d at 259.

Holmes' Fourth Supplemental Complaint makes the argument that "other employees" violated similar rules and were not discharged for their conduct. Even with the sworn affidavit of a fellow employee stating that other employees violated the rule but were not fired, the requirement as established in Lee is not met because a direct comparator is not named.

Because Holmes is unable to demonstrate that her duties, responsibilities or position or her misconduct and violations were "nearly identical" to her alleged comparators, she cannot demonstrate this element of proof to establish a *prima facie* case of discrimination by KCSR. Accordingly, the Court finds that Summary Judgment on this claim of discrimination is **GRANTED**.

---

[5]Scott was separated from KCSR's employ on September 23, 2004 for failure to return to service following sick leave, which weighs heavily against any allegation that Scott somehow was treated more favorably than Holmes. (SOF, ¶ 117). Scott was rehired in 2007, after Plaintiff's Termination in 2006, but resigned in 2008. However, she had no discipline in 2007 and 2008. (SOF, ¶ 119).

**III. Retaliation Claim**

Like her discrimination claim, Holmes is unable to meet the burden required under the McDonnell Douglas standard for a retaliation claim. In the instant matter, Holmes did not file a charge with the EEOC until December 2004, which was *after* her 2003 and 2004 disciplinary actions. (SOF, ¶ 84). Holmes asserted in her EEOC charge that she was retaliated against for exercising her rights under the applicable CBA to participate in a formal investigation. (Ex. 10, EEOC Charge, dated November 30, 2004). In making this unfounded assertion, Holmes fails to identify any protected activity for which there was allegedly retaliation. Indeed, Holmes did not engage in any protected activity, which is defined as "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII." Ackel v. National Commc'ns, Inc., 339 F.3d 376, 385 (5th Cir. 2003).

Holmes asserted in her Fourth Supplemental Compliant that she was dismissed on April 14, 2006, in retaliation for filing charges of discrimination and a lawsuit against KCSR. (SOF, ¶ 103). This allegation is a "protected activity," as established in Ackel, *supra*. However, Holmes fails to identify any evidence of a causal connection between the protected activity and her dismissal. Rather, the evidence proves a different story, as Holmes filed the suit in January 2005 but was not dismissed until April 2006. (SOF, ¶ 44 & 90). Additionally, a third-party neutral chair of the SBA found that Holmes violated KCSR rules and policies and affirmed a year-long unpaid suspension. (SOF, ¶ 48).

The Fifth Circuit has established that the "but-for" standard requires much more in the way of proof. Finnie v. Lee County, Miss., 541 Fed.Appx. 368 (5th Cir. 2013). Merely asserting that the alleged protected activity took place and that an adverse employment

action took place over a year later fails to create a causal connection. In this instance, Holmes fails to demonstrate any causal link whatsoever between any alleged protected activity and any adverse employment action. Holmes therefore fails to meet the "but-for" showing required under the standard established in <u>University of Texas Southwestern Medical Center v. Nassar</u>, 133 S. Ct. 2517, 2528 (2013). Accordingly, Summary Judgment is **GRANTED** on this claim.

### III. Hostile Work Environment Claim

In her opposition of summary judgment, Holmes fails to address any hostile work environment and failure to promote claims and therefore fails to meet her summary judgment burden. <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317. 333 n.3 (1986)**.** Accordingly, Summary Judgment is **GRANTED** on these claims.

### IV. State Law Claims

In her opposition of summary judgment, Holmes fails to address these claims at all and therefore, she fails to meet her summary judgment burden. <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317. 333 n.3 (1986)**.** Accordingly, Summary Judgment is **GRANTED** on all state law claims.

### V. Pending Motions to Strike Certain Exhibits

Also pending before the Court is a Motion to Strikes Certain Exhibits (2, 3, 4 and 7) Submitted by Group 16 Plaintiff, Michelle Holmes filed by KCSR. Record Document 847. The Motion is **DENIED**.

### CONCLUSION

Based on the foregoing analysis, the Court finds that Plaintiff Michelle Holmes

abandoned her hostile work environment and state law claims. Additionally, Holmes has failed to provide sufficient competent summary judgment evidence to raise a genuine dispute of material fact that Holmes endured discrimination and/or retaliation under the framework provided by the United States Supreme Court in <u>McDonnell Douglas Corp. V. Green</u>, 411 U.S. 792 (1973).

Accordingly, **IT IS ORDERED** that the foregoing Motion for Summary Judgment filed by Defendant KCSR [Record Document 836] be and is hereby **GRANTED.** All of Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Certain Exhibits Submitted by Group 16 Plaintiff Michelle Holmes in Opposition to KSCR's Motion for Summary Judgment [Record Document 847] be **DENIED**. The pending Motions in Limine [Record Documents 856-866] are hereby **DENIED AS MOOT**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 2nd day of June, 2014.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE