IUNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CLARENCE CARGO, ET AL. | CIVIL ACTION NO. 05-2010 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KANSAS CITY SOUTHERN RAILWAY COMPANY | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment on Plaintiff Tammye Stinson's ("Stinson") various employment discrimination claims (Record Document 874) filed by Defendant Kansas City Southern Railway Company ("KCSR"). The motion conveys reasons for KCSR seeking dismissal of all claims raised by Stinson. Stinson, in opposition to KCSR's Motion for Summary Judgment, replies "Plaintiff has established a *prima facie* case of retaliation/ failure to interview for promotion" under the McDonnell Douglas framework." Record Document 882 at 3. Stinson further argues she has established her hostile work environment claim. Id. at 4. Stinson concedes her state law claims. Id. at 8. For the reasons that follow, KCSR's Motion for Summary Judgment is **GRANTED.** Accordingly, all of Stinson's claims are **DISMISSED WITH PREJUDICE**.

**FACTUAL BACKGROUND**

Stinson is an African American female. Record Document 874-2 at 1. She began to work at KCSR as an Extra Board Clerk in Customer Service on December 30, 1996. On March 28, 1997, Stinson became a full time Customer Service Representative in the Customer Service Center (CSC). (SOF, ¶ 4).

As a Customer Service Representative in the CSC, Stinson's job duties and

responsibilities included handling customer calls and locating cars and the schedule of transport of specific cars about which customers inquire. (SOF, ¶ 6). As a Clerk in the CSC at KCSR, Stinson was a member of the Transportation Communications International Union ("TCIU"), who was a signatory to a Collective Bargaining Agreement ("CBA") with KCSR. (SOF ¶7).

KCSR had and has various rules and policies in place governing safety, operating procedures and the responsibilities and job performance of employees. (SOF, ¶ 20). KCSR also had rules and policies in place governing computer usage, prohibiting discrimination and harassment of employees on any basis whatsoever as well as safety which rules include but are not limited to the Use of Information Resources Policy, Anti-Harassment Policy, Business Ethics and Compliance Policy, Safety Through Awareness and Responsibility (STAR), the General Code of Operating Rules and General Responsibilities. (SOF, ¶ 21). Stinson received copies of various rules and policies in effect, at the time she was hired and at various times during her tenure with KCSR, including rules prohibiting harassment and retaliation, and she signed written acknowledgments confirming the receipt of these rules. (SOF, ¶ 27).

In the instant matter, Stinson was subject to formal discipline on one occasion. (SOF, ¶ 36). According to KCSR's records, the computer and email usage of some 300 employees were reviewed during the first round of email audits in the fall of 2002. (SOF, ¶ 37). According to KCSR records, Stinson was included in the employees reviewed in the 2002 Email Audit. (SOF, ¶ 39). On December 11, 2002, Stinson was notified, by letter, of a formal investigation scheduled for December 17, 2002, to ascertain her "responsibility, if any, in connection with: 1) [her] alleged improper use of company electronic mail; 2) [her]

alleged inappropriate behavior; 3) [her] alleged failure to devote [herself] to [her] duties; and 4) [her] alleged transmittal of sexually explicit and sexually suggestive material via KCS's electronic equipment." (SOF, ¶ 40). On December 12, 2002, Stinson signed a waiver and acknowledgment accepting full responsibility for this incident and admitting to violations of General Responsibilities Rules, Information Resources Acceptable Use Policy and the Anti-Harassment Policy, and waiving her right to a formal investigation. (SOF, ¶ 41). Pursuant to the acknowledgment and waiver, Stinson was issued a 30-day suspension. (SOF, ¶ 42). Stinson's email audit file included inappropriate and suggestive correspondence in violation of KCSR policies, an example of which is an email transmitted by Stinson entitled "MY SCORE WAS 72" which she forwarded to individuals within the KCSR email system. (Ex. 13, Stinson Email, D060336-D060340). This email refers to a game to play to "see how bad you are!!!" Id. The questions reference explicit sexual activities such as "oral sex," "screwed someone," "screwed something," and "had sexual fantasies" as well as other inappropriate subjects. (SOF, ¶ 43). Stinson admitted at her deposition that "sending or receiving sexually suggestive emails during this time period in time was a violation of Kansas City Southern's company policies." (SOF, ¶ 45).

Stinson was subject to some coaching via email from Amanda Jenson, Manager of Customer Service. In June of 2005, Ms. Jenson sent email correspondence to Stinson and three other employees regarding their missed calls with a ROMAN Monitor record showing that Stinson had three abandoned calls. (SOF, ¶ 48). In March of 2006, Stinson received email correspondence from Ms. Jenson regarding a work order that had not been completed and entered into the system. (SOF, ¶ 50). While coached, Stinson received no discipline for either of these violations. (SOF, ¶ 51).

Stinson remained employed with KCSR until the CSC department was transferred from Shreveport, Louisiana, to Kansas City, Missouri, at which point she declined to follow her position. (SOF, ¶ 5). Stinson was furloughed in April 2009 due to her decision. (SOF, ¶ 8). Stinson remained on furlough until such time as her union seniority expired under the CBA on June 10, 2011. (SOF, ¶ 9). Stinson filed a grievance and appealed the furlough, through the UTU, the Union in which she was a member, pursuant to the CBA and law, in an effort to retain her position in Shreveport, Louisiana, because she admittedly liked her job. (SOF, ¶ 10).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there

---

[1]The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

**LAW AND ANALYSIS**

### I. Failure to Promote and Discriminatory Discipline Claims

Stinson has filed claims based on failure to promote and discrimination based upon discipline received. There are two separate standards this Court must use in analyzing the claims. The Court will address the failure to promote claim first.

To establish a *prima facie* case of failure to promote under the McDonnell Douglas standard, Stinson must prove that: (1) that the employee is a member of [a] protected class; (2) that she sought and was qualified for the position; (3) that she was rejected for the position; and (4) that the employer continued to seek or promoted applicants with plaintiff's qualifications who was not in the protected class. Culbert v. Cleco Corp, 926 F.Supp.2d at 893-894 (citing, Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 317 (5th Cir. 2004)); see also Pegram v. Honeywell, Inc., 361 F.3d 272, 281 (5th Cir. 2004). It is clear, based on the facts presented in the instant matter, that Stinson meets the qualifications for the first element to establish a *prima facie* case. Accordingly, the Court's decision will rest upon its determination of whether the second, third, and fourth elements were violated.

*1999 "Hold Down" Position*

In her Third Supplemental Complaint, Stinson states that in 1999 a position opened with more favorable work hours (day shift with weekends off) and Stinson was passed over

despite having two years more seniority than Allen Ewing, a white male, who was awarded the position. Record Document 29-3. The position in question in 1999 was a "temporary hold-down," which KCSR has described as a temporary change in scheduled work hours. Record Document 874-1.

Title VII requires that there be an actionable adverse employment action in order for there to be a violation. See Thompson v. City of Waco, Texas, 764 F.3d 500, 508-09 (5th Cir. 2014). The summary judgment record establishes that "[T]he referenced 'hold down' position is not a promotion but merely a temporary change in scheduled work hours. The individual given a 'hold down' fills a known temporary vacancy for five days or more, for example, when a full time employee takes a vacation for five days or more." (SOF, ¶ 68). In order for there to be a failure to promote, there must be a promotion available. The fact that the "hold down" is a temporary change in scheduled work hours is not enough to constitute a promotion. Benningfield v. City of Houston, 157 F. 3d 369, 377 (5th Cir. 1998) (holding that merely changing an employee's working hours, without more, does not constitute an adverse employment action). Without there being a promotion available, Stinson cannot prove that KCSR failed to promote her in 1999.

*2003 Promotion*

Stinson additionally states that she applied for a promotion in 2003, when she had six or more years of experience and successful performance; however, the job was given to a younger white male who had worked for the company for less than a year. Id. KCSR stated in its Motion for Summary Judgment that it has no record showing Stinson applied for any promotion during her employment. Record Document 874-1. Stinson attached a copy of an email she claims to be an application for a promotion within KCSR. Record

Document 882-4. The first element having been satisfied, Stinson must show that she applied for and was qualified for the position. It is disputed whether Stinson actually applied for the "promoted position"; however, assuming she did apply, there is no evidence that she was qualified for the "promoted position." Third, Stinson must show that she was rejected for the position. KCSR argues that a person cannot be rejected if they did not apply for a job in the first place. With no record of Stinson's application for a promotion, the Court agrees she was never rejected. The final element is a showing that the employer continued to seek or promoted applicants with plaintiff's qualifications who were not in the protected class. It has been shown through KCSR records that the disputed position was filled by Mr. A.J. Randolph, who is African-American. Record Document 874-1. Stinson cannot overcome this fourth element because the individual who was ultimately given the promotion was a member of the same protected class as Stinson, African-American.

The court now moves to Stinson's discriminatory discipline claim. In order to meet her burden of establishing a *prima facie* case of unlawful discrimination based upon discipline, Stinson must show that KCSR gave preferential treatment to another similarly situated employee outside of her protected class under "nearly identical" circumstances. Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991) This requires that Stinson provide a comparator who was a similarly situated employee outside of her class who had a "nearly identical" circumstance. She has not offered any comparators who violated the KCSR IT policy. Without any comparators, she cannot establish a *prima facie* case of unlawful discrimination based upon discipline.

Even if Stinson were able to establish a *prima facie* case of discrimination, KCSR has provided a legitimate and non-discriminatory reason for her discharge. Stinson's

violation of KCSR's computer and email policy resulted in her being disciplined; however, Stinson's employment was terminated only after she chose not to relocate to Kansas City with her job, and her furlough expired. Stinson failed to present evidence linking her termination to anything other than her choice not to relocate with her job to Kansas City.

Under the McDonnell Douglas framework, the burden now shifts to Stinson to prove KCSR's reason for discharge was pretextual. The burden Stinson carries at this point in the Court's analysis is to show that this reason is "unworthy of credence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133,144, 120 S.Ct. 2097 (2000). Stinson fails to meet this burden. In this instance, Stinson does not put forth any evidence that the dismissal had a discriminatory purpose.

Stinson, therefore, has failed to prove the *prima facie* elements of her discrimination based upon discipline claim. She failed to show a similarly situated employee was treated more favorably than she was. Additionally, even if she had met her burden, KCSR has sufficiently proved a legitimate, non-discriminatory reason for Stinson's discharge. For this reason, summary judgment in favor of KCSR is appropriate.

Based on the foregoing, KCSR's motion for summary judgment is **GRANTED** as to Stinson's failure to promote and discriminatory discipline claims.

## II. Retaliation Claim

In order to establish a *prima facie* case of retaliation, Stinson must prove that: (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal link existed between the protected activity and the adverse employment action. McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir.2007).

Stinson asserted in her Third Supplemental Compliant that she filed complaints with the EEOC about discrimination against her in 2003 and 2004, and that following her not receiving the position in 1999, the EEOC deemed the action to be discrimination. (SOF, ¶ 82). This allegation qualifies as a "protected activity," as established in Ackel v. National Commc'ns, Inc., 339 F.3d 376, 385 (5th Cir. 2003). However, Stinson fails to identify any evidence of a causal connection between the protected activity and her dismissal. Rather, the evidence proves a different story, Stinson simply chose not to follow her job when it was relocated to Kansas City. (SOF, ¶ 8). Accordingly, Summary Judgment is **GRANTED** on this claim.

### III. Hostile Work Environment Claim

A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Stewart v. Mississippi Transport Commission, 586 F.3d 321 (5th Cir. 2009) (quoting National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)). To establish her claim for a hostile work environment, Stinson or a plaintiff must show that:

> 1) she belongs to a protected class; 2) she was subjected to unwelcome harassment; 3) the harassment was based on race; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action.

Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005). The alleged discrimination must have "created an environment that a reasonable person would find hostile or abusive." Id. Courts in this Circuit determine hostile environment considering the totality of the

circumstances. Factors to consider include: "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." Id.; see Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Although "[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive" to support evidence of a Title VII violation, DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir.1995), "simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges" that can survive summary judgment. Hockman v. Westward Communications, LLC, 407 F.3d 317, 328 (5th Cir.2004). A plaintiff's own subjective beliefs, however genuine, cannot form the basis of judicial relief. Nichols v. Lewis Grocer, 138 F.3d 563 (5th Cir.1998); Little v. Republic Refining Co., 924 F.2d 93, 95 (5th Cir.1991).

The jurisprudence of this Circuit establishes a very high burden for a plaintiff advancing a claim for a hostile work environment on racial grounds. From this Court's review of the summary judgment record, Stinson has failed to meet that burden. She rests her hostile work environment claim on five separate instances that she claims, in the aggregate, amount to a hostile work environment: 1) she was called to testify in investigations of other African-Americans at KCSR; 2) she was a witness to a name-calling incident involving Sharon Kennedy and was called to testify about an exchange between Sharon Kennedy and Jim Canada in which Kennedy was called names; 3) she has been repeatedly denied promotion based on race; 4) she applied for promotion in 2003 when she had 6 or more years of experience and successful performance, for a manager of customer services position and was denied; and 5) she filed complaints with the EEOC

about discrimination against her in 2003 and 2004.

In order for any of these five events to be probative for a hostile work environment claim, they must first be seen as harassment and the harassment must be based on Stinson's race. The first claim, regarding her having to "testify in investigations of other African-Americans at KCSR", provides no evidence that her having to testify was based on her race, and merely being asked to testify does not show evidence of harassment. For these reasons, it does not appear that Stinson being required to testify in the investigations of other African-Americans constituted harassment. Even if the court were to assume this constituted harassment, Stinson has offered no evidence that such harassment was based on her race. The second claim, that Stinson was a witness to name calling of Sharon Kennedy and was called to testify about an exchange she witnessed, is not probative either. Again, the Court finds that this event, as a matter of law, does not amount to harassment, but even if it qualified as harassment, Stinson has not even attempted to show how this "harassment" was tied to her race.

The third and fourth claims are related to Stinson being "repeatedly" denied a promotion based upon her race. This Court has addressed these claims previously in the instant ruling. Moreover, Stinson has failed to demonstrate how the denial of a promotion amounts to a hostile work environment, as defined in Fifth Circuit jurisprudence.

The fifth claim is that she filed complaints with the EEOC about discrimination against her in 2003 and 2004. Stinson provides no further evidence identifying what events caused her to file the complaints. Without more information, there is not sufficient evidence for this Court to conclude that there was harassment in the workplace. Once again, even if it qualified as harassment, Stinson has not shown how this "harassment" was tied to her

race.

Even if Stinson's claims were deemed to meet the requirements of a hostile work environment, they would have to be severe and pervasive. Stinson has provided no evidence that any of the above five events were severe and pervasive, under the Circuit's standard set forth above.

Therefore, without any evidence of how the above events are linked to her race, Stinson's hostile work environment claim must fail as she cannot meet her *prima facie* burden of proof.

### IV. State Law Claims

Stinson has conceded her state law claim. Accordingly, summary judgment is **GRANTED** on all state law claims.

### V. Pending Motions to Strike Certain Exhibits

Also pending before the Court is a Motion to Strike Certain Exhibits (1, 4, 5, 6 and 7) Submitted by Group 18 Plaintiff, Tammye Stinson filed by KCSR. Record Document 884. The Motion is **DENIED**.

### CONCLUSION

Based on the foregoing analysis, the Court finds that Plaintiff Tammye Stinson abandoned her state law claims. Additionally, Stinson has failed to provide sufficient competent summary judgment evidence to raise a genuine dispute of material fact that she was subjected to a hostile work environment and endured discrimination and/or retaliation under the framework provided by the United States Supreme Court in <u>McDonnell Douglas Corp. V. Green</u>, 411 U.S. 792 (1973).

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment filed by Defendant KCSR [Record Document 874] be and is hereby **GRANTED.** All of Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Certain Exhibits Submitted by Group 18 Plaintiff Tammye Stinson in Opposition to KSCR's Motion for Summary Judgment [Record Document 884] be **DENIED**.

Additionally, the pending Motions in Limine [Record Documents 893-904] are hereby **DENIED AS MOOT**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 4th day of December, 2014

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE